1  Raj V. Abhyanker, California SBN 233284
2  raj@legalforcelaw.com

3  LEGALFORCE RAPC WORLDWIDE, P.C.
   1580 W. El Camino Real, Suite 10
4  Mountain View, CA 94040
   Telephone:    (650) 965-8731
5  Facsimile:    (650) 989-2131

6
   Attorney for Plaintiff,
7  LegalForce RAPC Worldwide P.C.

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12

13  LEGALFORCE RAPC WORLDWIDE,        Case No. : 3:22-cv-03724-TLT
    P.C.
14                                    **FIRST AMENDED COMPLAINT FOR:**
                 Plaintiff,
15                                    1.  TRADEMARK INFRINGEMENT, 15
16       v.                              U.S.C. § 1114;
                                      2.  TRADEMARK INFRINGEMENT, 15
17  LEGALFORCE, INC., a Japanese         U.S.C. § 1125(a);
    corporation,                     3.  CYBERPIRACY, 15 U.S.C. § 1125(d);
18                                       and
                 Defendant.          4.  TRADEMARK INFRINGEMENT,
19                                       CALIFORNIA COMMON LAW.
20
21                                    **JURY TRIAL DEMANDED**
22

23

24

25

26

27

28

Plaintiff LegalForce RAPC Worldwide P.C. ("LegalForce", "Plaintiff"), a California Professional "S" corporation, by and through its counsel, for its Complaint against Defendant LegalForce, Inc. ("LegalForce", "Defendant"), a Japanese corporation, complains and alleges as follows:

## NATURE OF ACTION

1.  LegalForce brings this action to stop Infringing Brand's unlawful conduct of infringement of LegalForce's trademarks, which has caused LegalForce significant monetary damage and harm to LegalForce's brand and reputation, and has caused significant consumer confusion as to the commercial source of LegalForce's services.

## PARTIES

2.  LegalForce is a California S law firm having a principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040, and which operates both the www.legalforcelaw.com website and the www.legalforce.com websites for over a decade. LegalForce is a market leader in the field of legal automation technology, automated trademark search solutions, corporate legal services, trademark monitoring services, trademark law, intellectual property law, general legal information, and domain name registration services. LegalForce provides these services online at set prices, making them readily available and affordable to small businesses and general consumers across the United States. Since introducing its website in September 2009, LegalForce has grown to become the leading, nationally recognized trademark website for businesses, law firms and consumers.

3.  LegalForce, Inc. ("Infringing Brand") is a Japanese corporation having a principal place of business at the 6th floor, Toyosu Front, 3-2-20, Toyosu, Koto-ku, Tokyo 135-0061 founded on April 21, 2017. Infringing Brand competes with LegalForce in corporate legal services and legal automation services, and advertises in a competitive way as a company with a description "Researching, developing, managing, and maintaining software related to legal operations" https://en.legalforce-corp.com/#about.     It advertises as a global company, and has the mission "[m]anage all contract risks anywhere, anytime." (emphasis added).   Infringing Brand is now advertising for U.S. lawyers, hiring lawyers that are licensed in the U.S. State of California, to review English language contracts.[1] The businesses offer numerous similar services including the review of non disclosure agreements ("NDAs") and contracts for law firms and business customers.[2]   Infringing Brand has built its company on the likeness and brand recognition of

---

[1] *Id.* See *LegalForce-corp.com website --->Rercuit--->Join Us page→* ZEN-01 Lawyer
[2] Infringing Brand advertises its NDA service in English in this Twitter post dated December 19, 2019 https://twitter.com/rehownet2/status/1206384948871094273. LegalForce has offered NDA

LegalForce and has leveraged its goodwill to enter the United States market and unfairly compete with LegalForce.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States, and because it involves allegations regarding trademark violations.

5.  This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367 because it arises from the same nucleus of operative facts as the federal claims.

6.  This Court has general personal jurisdiction over Infringing Brand because Infringing Brand's has law firm and business customers who have offices in California, and in Santa Clara County.[3]    Particularly, Infringing Brand boasts it "provides services to a variety of entities, ranging from large multi-nationals to law firms" which includes "household names such as Fujitsu, Sojitz, and Suntor.[4]    Fujitsu and Sojitz have operations in California, contracts in California, employees in California, and more specifically in Santa Clara County.[5]    Among Fujitsu and Sojitz contracts include English language non-disclosure agreements (NDAs) with employees and business partners in Santa Clara County, all of which are processible through the Infringing Brand's licensed software.   Infringing Brand advertises its NDA service in English in this Twitter post dated December 19, 2019.[6]   LegalForce has offered NDA and contract review services to hundreds of businesses since 2010.   Moreover, Infringing Brand admits its executives visit California.[7]

7.    Moreover, Infringing Brand is recruiting employees who are licensed lawyers in

---

and contract review services to hundreds of customers since 2010.

[3] For example, Infringing Brand writes on their website "AI-enabled Contract Review Platform "LegalForce" Adopted by over 2,000 Customers, Acquiring more than 500 customers in 3 months" on April 7, 2022; just six months after launching their English language website. https://en.legalforce-corp.com/2943/

[4] Artificial Lawyer article, January 23, 2020, "Meet Legalforce – Japan's Legal AI Pioneer" https://www.artificiallawyer.com/2020/01/23/meet-legalforce-japans-legal-ai-pioneer/

[5] Fujitsu has numerous in this State and multiple office in Santa Clara County (For example : 350 Cobalt Way MS#160, Sunnyvale, CA 94085 & 1270 East Arques Avenue, #M1, Sunnyvale, CA 94085).    Sojitz also has an office in this State and particularly in Santa Clara County (Sojitz Corporation of America is located at 226 Airport Pkwy, San Jose, CA 95110).

[6] *Twitter*, "[t]he contract review support software "LegalForce" supports automatic review of English confidential agreements (NDA). https://re-how.net/tokyo/324447/" https://twitter.com/rehownet2/status/1206384948871094273

[7] "LegalForce employees have been to California on only two occasions," Decl. of Nozomu Tsunoda, Dkt. 22-1 filed on October 20, 2022 at ¶ 40.

FIRST AMENDED COMPLAINT
CASE NO.: 3:22-cv-03724-TLT

California[8] and has hired employees in California.[9]  Infringing Brand hired its first employee in California on or about January 2021, a Mr. Yukata Okura ("Okura").[10]  Mr. Okura admits on his LinkedIn profile that he resides in San Francisco, California in this district :



**Yutaka Okura**
San Francisco, California, United States
3K followers  ·  500+ connections                        [11]

8.   Mr. Okura admits that his title as the North American Regional Head of the Infringing Brand, and the employee who was "[r]esponsible for the first footprint deployment of a highly renowned Japanese LegalTech startup in the US market."[12]  On his Linkedin profile, Okura further admits that he supports "strategy, business development and operations" of the Infringing Brand, which he describes as "LegalForce (en.legalforce-corp.com) etc."[13]

 **North America Region Head**
株式会社LegalForce · Full-time
2021 - 2022 · 1 yr
Tokyo | San Francisco Bay Area

Responsible for the first footprint deployment of a highly renowned
Japanese LegalTech startup in the US market.
https://en.legalforce-corp.com/                        [14]

9.   Mr. Okura further admits that his job title is "North America Region Head" for the years

---

[8] *Id.* See *LegalForce-corp.com website --->Rercuit--->Join Us page→ ZEN-01 Lawyer*
[9]  Under Main Requirement for its job opening Infringing Brand says "Bar admission in New York or California" https://herp.careers/v1/legalforce/RB4gPFCRjt5L  Also, "As a pioneer in this industry, let's work together to solve the problems and issues facing the legal industry by working together as a team to grow specific products from 0 to 1 and from 1 to 100 in the legal tech market, which is gaining more and more attention! We are looking for people who will create an innovation in the legal industry."
[10] See Linkedin profile of Yukata Okura https://www.linkedin.com/in/yutaca/ as of October 23, 2022.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

FIRST AMENDED COMPLAINT
CASE NO.: 3:22-cv-03724-TLT

2021 and 2022 for the Infringing Brand.[15]    In addition, Mr. Okura admits that his prior role at Google for over 6 years in Santa Clara County was as the "Head of Global Accounts."[16] LegalForce extensively advertises on Google and has spent millions of dollars in Google advertising over the years to build its brand.    Mr. Okura even admits that he volunteered his time as a "Football Scoreboard Operator" for the Los Altos High School in Santa Clara County between August 2015-2016.[17]  Therefore, a key witness in this case resides in this district.

10. Infringing Brand began actively talking to American press describing its entry into the United States in June 2022.  Specifically, in a Business Insider post on June 29, 2022, executive officers of Infringing Brand including Akira Oki and Nozuma Tsunoda admitted "[f]rom now on, we will expand into the United States" and "[w]e are planning to expand into the United States based on this funding" and "I recognize that there are few companies that review contracts in the United States, and they are as big as we do."[18]  [*translation*]  The company went on to talk to numerous other American publications while talking about its expansion into the United States.    For example, in ZDNet, Mr. Tsunoda admitted "[a]s a destination, we are thinking about English-speaking countries first, and they will expand mainly in the United States." [*translation*][19]    In an article on Yahoo News, corporate officers of Infringing Brand admitted that its capital raise was primarily for growth in the United States "[a]t the press conference held on the 23rd, it was also revealed that we will proceed with overseas expansion centered on the United States "[20]  [*translation*]

11.  Moreover between 2021 and 2022, while raising more than $100 million dollars in venture funding from major venture capitalists, Mr. Tsunoda created presentations in which he admitted the expansion of LegalForce Japan into the United States to American investors, press and potential customers.  In one such admission in a slide presentation, LegalForce's trade dress "orange" color theme is presented next to an American flag.  Immediately to the right of the flag

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] See *LegalForce's 13.7 billion yen procurement ``lowered the valuation and raised the amount'', some investors left due to the recession*'' [rough translation] in Business Insider Japan Jan article by writer Ikuko Takeshita,  June 22, 2022
https://www.businessinsider.jp/post-255964
[19] See *LegalForce raises 13.7 billion yen in Series D round–also reveals overseas expansion*,' [rough translation] in ZDNet Japan Jan article by writer Yuki Kawabe,  June 24, 2022
https://japan.zdnet.com/article/35189404/
[20] See *Yahoo News,*
*https://news.yahoo.co.jp/articles/4fc4d33e144c6be6341048ee9aa17c0995fda658 and*
*https://news.yahoo.co.jp/articles/2af24e4156705842a58bcbb4710b60d19b83a01d*

are shown words in LegalForce's trade dress, while showing the Infringing Brand immediately above and next to the Japanese flag. The words written in the orange color theme are roughly translated to "Powerful enterprises not here" admitting Infringing Brands knowledge of LegalForce's rights but bad faith intent to usurp the brand equity of LegalForce in the United States.



12. The orange color choice creates a false association with LegalForce because LegalForce's trade dress has included the various same shades of Orange in its trade dress, as shown below:

 

 

13. At approximately the same time that Infringing Brand was raising capital from venture capitalists using investor pitch decks falsely suggesting that it was somehow affiliated with, sponsored by, or endorsed by LegalForce, LegalForce was also seeking venture capital from the same circles of venture capitalists.    LegalForce was unsuccessful in raising venture capital, while Infringing Brand raised venture capital in part through its false association, upon information and belief.  This was despite LegalForce's brand equity and customer base being significantly greater than Infringing Brand.

14. Infringing Brand also started linking to coverage of its U.S. launch on its website, including coverage from Bloomberg and Law 360 - both primarily American publications that had extensively covered LegalForce in the past.

15. Both Bloomberg and Law360 are publications which primarily cater to American lawyers and legal professionals and not to Japanese legal professionals. Both articles were published by American journalists and in English. Despite this, Infringing Brand reposted these articles directly on its website creating brand confusion with LegalForce.

16. On the Law360 search results page for the search "LegalForce" is now depicted a header with the LegalForce brand "LegalForce RAPC Worldwide" but with results showing Infringing Brand.[23] LegalForce's coverage results have been pushed off the public page (only portion visible without a paid subscription on search results) as a direct result of Infringing Brand's interference of LegalForce's press coverage in trade channels including Law360 and other publications.[24] Law360's header makes clear that it is primarily targeted toward American audiences and U.K. audiences, and not Japanese audiences because it only has a U.K. link apart from an American primary site.[25] Law360's website has no articles written in Japanese or targeting Japanese customers. Despite this, Infringing Brand promotes this article and other English language articles directly on its homepage and press page.[26]

---

[22] See *LegalForce Press Page, https://en.legalforce-corp.com/news/* as of October 23, 2022.
[23] See *Law360 search results, Law360 : Search* as of October 23, 2022.
[24] *Id.*
[25] *Id.*
[26] *Id.*



17. Moreover, as of October 23, 2022, Infringing Brand is actively competing against LegalForce for engineering talent in the United States.[28]   Half of the job openings on Infringing Brand's website admit they are recruiting for "US entry" of Infringing Brand.[29]   For example:

---

[27] *Id.*

[28] See *LegalForce-corp.com website --->Rercuit--->Join Us page ,English の求人一覧 - 株式会社LegalForce (herp.careers)* as of October 23, 2022.

[29] *Id.*

18. In the description of each of these job openings, Infringing Brand admits to its entry into the United States, by describing its offerings in the United States as follows: "LegalForce has led the digital transformation of Japan's legal industry with its unique product "LegalForce" since 2019. We are expanding our operations into the US and are looking for talented engineers to be part of our Japan-based team dedicated to building our global product in close collaboration with the US team. Come help us revolutionize the way companies deal with contracts." and "[t]his position will involve collaboration and communication with US-based product manager and development team, as well as the US sales team and, at times, with customers."[31]

19. Tellingly, in these postings Infringing Brand admits it is "expanding our operations into the US" and admits that it employs persons in the United States by stating it is "dedicated to building our global product in close collaboration **with the US team**" (*emphasis added*).[32] The postings make clear that the team that Infringing Brand employs in the United States is

---

[30] *Id.*

[31] See *LegalForce-corp.com website --->Recruit--->Join Us page→ ZEN-04 Software Engineer, Back-end, US entry, ZEN-05 Infrastructure Engineer, US entry, and ZEN-06 Software Engineer, Front-end, US entry*

[32] *Id.*

extensive as the posting goes on to say that each "position will involve **collaboration and communication with US-based product manager and development team**." (*emphasis added*).[33]   The job postings further admit the presence of a sales team in the United States and customers within the United States when they state  "as well as **the US sales team and, at times, with customers.**" [34]

20. Furthermore, among these job postings is a posting for a Lawyer with "[b]ar admission in New York or California."[35]   Unlike other postings, this posting does not require working from Japan.   Other postings describe "*This is not a cross-border full-remote position, and you are required to come to Japan."[36]   However no such disclaimer requiring to come to Japan exists for this Lawyer position on the Infringing Brand's website as of October 23, 2022.[37]

21. Around the same time of this posting by Infringing Brand, LegalForce had numerous lawyer and engineering positions job openings posted, and sought hiring backend engineers, front end engineers, data scientists, corporate and infrastructure engineers which likely caused confusion among potential applicants.

22. In the first half of July 2022, executives of Infringing Brand visited California and the Bay Area for the primary purpose of soliciting customers, partners, and business development for Infringing Brand.  At all times during these meetings, Mr. Tsunoda and his deputy referred to their business using the LEGALFORCE Marks and by no other name.  Mr. Tsunoda and his deputy handed out printed collateral, business cards, and/or gave presentations with the LEGALFORCE Marks upon information and belief.    On or about July 13, 2022, Mr. Tsunoda met with one of LegalForce's founding shareholders, Wilson Sonsini Goodrich & Rosati (WSGR).  Specifically, Mr. Tsunoda met with WSGR's Chief Innovation Officer David Wang in person, creating actual confusion by Mr. Wang with LegalForce.  Mr. Tsunoda and his deputy's visit to WSGR was for the primary purpose of soliciting feedback and seeking a commercial partnership/sales opportunity exploration with WSGR.

23. Therefore, venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b) because Infringing Brand has solicited customers in this

---

[33] *Id.*

[34] *Id.*

[35] *Id.* See *LegalForce-corp.com website --->Rercuit--->Join Us page→* ZEN-01 Lawyer

[36] See *LegalForce-corp.com website --->Rercuit--->Join Us page→* ZEN-04 Software Engineer, Back-end, US entry, ZEN-05 Infrastructure Engineer, US entry, *and* ZEN-06 Software Engineer, Front-end, US entry

[37] *Id.* See *LegalForce-corp.com website --->Rercuit--->Join Us page→* ZEN-01 Lawyer

district as late as July 2022.

## FACTUAL ALLEGATIONS

### A. The LEGALFORCE Marks

24. LegalForce is the owner of three U.S. federal trademark registrations:

| Marks | Reg. No. Reg. Date | Serial No. Filing Date | Goods/Services |
|---|---|---|---|
| LegalForce | Reg: 4227650 Oct. 16, 2012 | 85483252 Nov. 30, 2011 | Legal services, namely, law firm services specializing in administrative, transactional, litigation, civil and criminal matters; legal document preparation and research services for attorneys; providing general information in the field of legal services via a global computer network. (45) |
| LegalForce | Reg: 4346898 June 4, 2013 | 85785842 Nov. 21, 2012 | Legal services; security services for the protection of property and individuals; personal and social services rendered by others to meet the needs of individuals. (45) |
| LegalForce Trademarkia | Reg: 5642937 Jan 1, 2019 | 87924397 May 24, 2018  First Use in Commerce: Apr. 13, 2012 | Providing temporary use of on-line non-downloadable software for trademark searching and managing trademark matters; Computer services, namely, providing search engines for obtaining trademark data from publicly available sources. (42) |

25. The mark LegalForce was declared incontestable through Reg. No. 4346898.

26. The marks "LegalForce", "LEGALFORCE" and "LegalForce Trademarkia" are collectively referred to as the "LEGALFORCE Marks."

27. As a result of LegalForce's exclusive, extensive, continuous and nationwide use of the LEGALFORCE Marks, the marks have come to signify the leading provider of legal automation, business law, corporate law, and IP law services for businesses and consumers and have achieved such widespread public recognition and major press coverage from leading publications including Bloomberg, FastCompany, TechCrunch, The World Trademark Review, Wall Street Journal, and in the ABA Journal.

28. As an industry leader, LegalForce has invested well over ten million dollars promoting the brand to corporate and business customers worldwide, and advertising and promoting the LEGALFORCE Marks.

29. In order to build and maintain its status as the leading nationally-recognized brand, LegalForce has promoted the LEGALFORCE Marks through advertising across the media of video, radio, and the Internet.

30. This lawsuit is necessitated by the fact that Infringing Brand is seeking to trade on the LEGALFORCE Marks' fame and goodwill by entering the United States market using the https://en.legalforce-corp.com/ and www.legalforce-cloud.com ("Infringing Websites") to advertise Infringing Brand's services over the Internet.      Infringing Brand boasts on its website:

*Not only corporations, but also law firms are increasingly using "LegalForce."*

https://legalforce-cloud.com/

31.  The Infringing Websites appear to be hosted in Seattle, Washington with Amazon web services, and its ownership is masked with Privacy Guard. Even the logo of the Infringing Brand borrows from the logo of LegalForce.   See comparison below:

| **LegalForce Mark** | **Infringing Brand** |
|---|---|
|  |  |

Both stylized logos contain a capital "F" and the logo portions both contain the letters "LF" and are surrounded by a polygon shape.

32. Upon information belief, Infringing Brand consciously and willfully registered https://en.legalforce-corp.com/, and designed a logo which is intentionally similar to the LEGALFORCE Marks, in a deliberate attempt to capitalize on the goodwill associated with the LEGALFORCE Marks. By offering similar services over the same channels of commerce to the same group of customers under confusingly similar marks, Infringing Brand is intentionally attempting to capitalize on the hard-earned fame and reputation of the LEGALFORCE Marks. Defendant's actions are willful and unlawful, are calculated to deceive consumers, and will irreparably harm the valuable goodwill LegalForce has built up over almost the past decade as a result of hard work and considerable investment of time and money.

33. Infringing Brand intentionally misleads consumers into thinking that they are going to LegalForce's website when they enter https://en.legalforce-corp.com/ (confusingly similar to LegalForce.com and the "LegalForce" mark), or that Infringing Brand has acquired or merged

with LegalForce, or that Infringing Brand and LegalForce are affiliated. By these acts Infringing Brand intentionally trades on LegalForce's fame and goodwill in defiance of the law.  Infringing Brand markets its services using LegalForce, and its primary product is "LegalForce Cabinet."

34. Accordingly, Defendant must be ordered to stop its infringing activities, to pay damages to LegalForce in an amount to be determined at trial, and to disgorge any profits it has made as a result of its willful and bad faith infringement of the LEGALFORCE Marks.

35. As a direct result of Infringing Brand's infringing conduct, LegalForce suffered lost revenue and market share, reduced asset value and increased advertising costs.

C. **LegalForce's Efforts of Achieving Fame in LEGALFORCE Marks.**

36. The LegalForce Trademarkia website, available at www.LegalForce.com, was in continual use by the Plaintiff at least since 2008, and has continually been used since.  The LegalForceLaw.com website went live sometime around 2012.

37. Since that time, LegalForce has assisted more than 100,000 (one-hundred thousand) businesses through its legal automation and legal services.   Among these are hundreds of lawyers and law firm customers and users of LegalForce for its technology and docketing services, as well as for automated and semi-automated NDA reviews since at least 2010. LegalForce has employed advanced artificial intelligence and machine learning technologies for search and conflicts management and has offered these services to its law firm, enterprise, and small business customers.   In addition, LegalForce has marketed its services worldwide including to Japanese speakers and has dozens of customers in Japan as well as in all 50 states.

38. Almost from LegalForce's inception, the LEGALFORCE Marks have been featured and discussed in publications and on television programs and Internet websites all over the United States, including but not limited to on Bloomberg, FastCompany, TechCrunch, The World Trademark Review, Wall Street Journal,  and in the ABA Journal.

39. For nearly a decade, LegalForce has advertised extensively over the Internet and other advertising channels. It advertises in markets throughout the country, including large consumer markets such as Boston, New York, Chicago, San Francisco and Los Angeles.

40. The LegalForce websites generate hundreds of thousands of hits per week. The LEGALFORCE Marks are prominently displayed on LegalForce webpages.

41. LegalForce has achieved fame and recognition for its LEGALFORCE Marks through the following innovations:

    a.  *Docketing system.* LegalForce has aggregated trademark data from nearly a dozen countries and indexes tens of millions of trademarks daily for updates, including through the utilization of automated contract drafting, artificial intelligence, and

predictive analysis of intellectual property records. It has become a "docketing system" for the world, enabling, for free, thousands of entrepreneurs to be kept up to date on deadlines for trademarks, oppositions, renewals and more. Previously, access to such tools were reserved for wealthy corporations with access to sophisticated tools from LexisNexis, Thomson Reuters, and others. LegalForce has made these tools free to the world.

b.  *Search Technology.* LegalForce has helped to answer the basic question that many entrepreneurs have, which is "is my business name available to trademark", by making a knockout search from its databases of millions of trademarks, refreshed daily, freely accessible from its home page, through a search engine-like search box with little commercial advertising on its home page using an advanced AI powered search algorithm. As a result, LegalForce attracts about 23.2 million page views and approximately 9.4 million visitors to its websites each year, making it one of the Internet's largest legal-oriented websites.

c.  *Competitive and Breaking News.* LegalForce automatically publishes free alerts for millions of trademarks in various countries making it a leading and primary news source for breaking business news whenever new products are soon to be released and whenever new marketing campaigns launch across the world.

d.  *Catalog of American ingenuity and corporate history.* LegalForce was the first to publicly index trademark data as old as the year 1872, making it a deep and rich repository of American history and corporate evolution. As a result, LegalForce is cited as a trusted source for corporate history and branding in at least 750 Wikipedia pages for leading brands including Coca Cola, Budweiser, Kellogg, and hundreds of iconic brands.

e.  *Innovative logo search engine.* LegalForce has built what is the Internet's largest logo search engine based on artificial intelligence and design code identification of trademarks, spanning over 4 million logos that can be deeply searched by "what is inside" each logo for creative inspiration and brand development, free of charge. As a result, thousands of branding agencies and entrepreneurs use LegalForce.com each month to find and discover new inspiration for their brands.

f.  *Keeping trademark bullies accountable.* LegalForce has built what is the Internet's first catalog of large company trademark bullies, hecklers, and their victims based on the number of trademarks they oppose, threaten to oppose, and are challenged by, through its annual rankings of those companies that actively

overextend their trademark rights. This data is offered for free through automated annual rankings based on government data and published annually by LegalForce.

g. *Reducing infringement of trademarks when registering domains.* LegalForce has built the world's first domain registration service for businesses that automatically checks for availability of trademark rights when registering domains, to assist in reducing cyber-piracy claims and reducing wasteful federal litigation, free of charge.

h. *Global automated trademark docketing reports.* LegalForce has built automated and semi-automated trademark reports for most of the 100+ countries through which LegalForce offers trademark filings. As a result, companies and entrepreneurs around the world can uniquely and centrally harmonize trademark portfolio management and access global trademark protection markets through a single website.

i. *Trademark opposition window tracking.* LegalForce has enabled businesses and law firms to easily track their 30-day opposition window for trademarks filed with the USPTO in real time through its free opposition watch service. Prior to LegalForce, such tools were reserved for rich corporations using expensive enterprise software by companies such as Thomson Reuters, Wolters Kluwer, and LexisNexis.

j. *Bifurcated Supply Chain Management.* LegalForce applied best manufacturing practices to legal services by taking all non-attorney work off of attorneys' plates and globalizing it to improve quality while reducing costs.

42. The LEGALFORCE Marks were enormously famous and distinctive at the time of Infringing Brand's first infringing use in 2017, and continues to be through this day. Prior to Infringing Brand's first use of the LEGALFORCE Marks, thousands of social media posts and tweets on Facebook and Twitter mentioned LegalForce websites in popular culture and fashion as the source for leading brand information.

43. LegalForce had become a leading news indicator, often cited by major media and television as a source for breaking news prior to 2017 because it was the first to index USPTO's trademark records through static URLs and breadcrumb structures. Through this technique, LegalForce transformed the status changes of trademark applications into breaking news across all markets.

44. Before any new movie, book or song is released, the owner invariably secures brand rights to the movie name through trademark protection. Fans may gravitate toward movies of

their favorite actors, studios, and sequels. The information of such newly filed trademark applications are therefore newsworthy and such information associated with status changes is automatically watched and monitored by LegalForce. Thus, status changes of trademark applications in real time can be transformed into national or international breaking news because, for example, the general public would want to know beforehand the name of the next Star Wars® movie. Because LegalForce is the first to disseminate such news to the fans and the consuming public, the LEGALFORCE Marks have achieved widespread fame across the United States and internationally.

45. The LEGALFORCE Marks achieved this widespread fame across the United States, and across many different industries and popular culture - for many years before Infringing Brand's first infringing use. LegalForce owned websites have become among the largest websites in the United States, whose LegalForce Trademarkia had website traffic approaching some of the largest websites on the Internet by 2017, and has attracted millions of page views and unique visitors to its LegalForce websites in the years prior.

46. Moreover, the LEGALFORCE marks have been protected globally by LegalForce. Specifically, in at least the following countries and regions around the world :

| SL # | MARK NAME | CLASS | COUNTRY | FILING DATE | APPLN # | CURRENT STATUS |
|------|-----------|-------|---------|-------------|---------|----------------|
| 1 | LEGALFORCE (word) | 45 | USA | Nov. 30, 2011 | 85483252 | Registered |
| 2 | LEGALFORCE (logo) | 45 | USA | Nov. 21, 2012 | 85785842 | Registered |
| 3 | EGALFORCE TRADEMARKIA - WORD | 042 & 045 | USA | May.16, 2018 | 87924397 | Registered |
| 5 | LEGALFORCE (word) | 45 | India | Mar. 07, 2012 | 2295736 | Registered |
| 6 | LEGALFORCE (word) | 035, 042 & 045 | EU | Mar. 07, 2019 | 18033044 | Registered |
| 7 | LEGALFORCE (logo) | 035 & 045 | EU | May. 18, 2012 | 10894772 | Registered |
| 10 | LEGALFORCE (logo) | 035 & 045 | UK cloned | May. 18, 2012 | UK00910894772 | Registered |
| 11 | LEGALFORCE (word) | 035, 042 & 045 | UK cloned | Mar. 07, 2019 | UK00918033044 | Registered |
| 12 | LEGALFORCE (word) | 45 | Canada | March. 09, 2012 | 1567942 | Registered |
| 13 | LF LEGALFORCE | 45 | Australia | Feb. 06, 2019 | 1604629 | Registered |
| 15 | LEGALFORCE RAPC (word) | 035, 042 & 045 | New Zealand | Feb. 14, 2019 | 1113664 | Registered |
| 16 | LEGALFORCE (logo) | 035, 042 & 045 | New Zealand | Feb. 14, 2019 | 1113666 | Registered |
| 17 | LEGALFORCE (word) | 035, 042 & 045 | Australia | Oct. 30, 2018 | 1965611 | Registered |
| 19 | LEGALFORCE (word) | 035 & 042 | India | Feb. 07, 2019 | 4080128 | Registered |

47. Similarly, the LEGALFORCE marks are embodied in domain names protected by LegalForec globally including in the countries/domains below.

| SL # | DOMAIN NAME | STATUS |
|------|-------------|--------|
| 1 | legalforce.com | Registered |
| 2 | legalforcelaw.co.uk | Registered |
| 3 | legalforcelaw.com | Registered |
| 4 | legalforce.jp | Registered |
| 5 | legalforce.biz | Registered |
| 6 | legalforce.us | Registered |
| 7 | legalforce.de | Registered |
| 8 | legalforce.es | Registered |
| 9 | legalforce.fr | Registered |
| 10 | legalforce.info | Registered |
| 11 | legalforce.mobi | Registered |
| 12 | legalforce.eu | Registered |
| 13 | legalforce.ca | Registered |
| 14 | legalforce.it | Registered |
| 15 | legalforce.co | Registered |
| 16 | legalforce.tw | Registered |
| 17 | legalforce.net | Registered |
| 18 | legalforce.co.uk | Registered |
| 19 | legalforce.cn | Registered |
| 20 | legalforce.nz | Registered |
| 21 | legalforce.in | Registered |
| 22 | legalforcelaw.com | Registered |
| 23 | legalforcefh.com | Registered |
| 24 | legalforcetrademarkia.com | Registered |

48. The LEGALFORCE Marks are of material importance to LegalForce.  LegalForce has used the LEGALFORCE Marks continuously for nearly a decade and has spent large amounts of money promoting those marks.  This is true worldwide, including in Japan.  The only reason Infringing Brand has a registered trademark in Japan is because LegalForce chose not to file its trademark in that country.   LegalForce has evidence that it used the LEGALFORCE Marks in Japan years before Infringing Brand.  Therefore, Infringing Brand's rights even within Japan are not superior to those of LegalForce.

49. Because of the invaluable goodwill that the LEGALFORCE Marks represent, and its importance to the company, LegalForce aggressively protects the LEGALFORCE Marks.

**<u>FIRST CLAIM FOR RELIEF</u>**
<u>TRADEMARK INFRINGEMENT</u>
<u>15 U.S.C. § 1114</u>

50. LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

51. Plaintiff's marks LegalForce and LEGALFORCE are valid, protectable trademarks that are registered on the principal register at the USPTO.

52. In April 2017, Infringing Brand began using the Infringing Brand in Japan. Sometime thereafter, on a date on or around October 4, 2021, Infringing Brand created an English language website on Infringing Domain https://legalforce-corp.com/ to further advertise customers in the United States, started recruiting U.S. lawyers as employees, started reviewing contracts for U.S. companies and subsidiaries in English, and made an English version of the Infringing Websites which contains Plaintiff's mark LegalForce.[38] The domain name is confusingly similar to Plaintiff's own website, LegalForceLaw.com and LegalForce.com.

53. Infringing Brand's use of Plaintiff's trademark as a domain name to identify Infringing Brand's website in a manner that is likely to cause confusion and/or mistake among internet users as to the source or sponsorship of Plaintiff's services constitute trademark infringement.

54. LegalForce first discovered Infringing Brand's infringing use in the English language shortly before filing this Complaint.

55. Infringing Brand's infringing use not only created likelihood of confusion, but also has created actual confusion from customers of LegalForce upon information and belief as the names are exactly identical.

56. Infringing Brand's logo is stylized with a capital F in "LegalForce" and is prominently displayed on its websites in manners that are confusingly similar to LegalForce. This creates even more likelihood of confusion to business consumers.

57. LegalForce extensively advertises the LEGALFORCE Marks daily since 2012. Millions of LegalForce's users and thousands of LegalForce customers know LegalForce's services by these marks and they search the LEGALFORCE Marks online to reach LegalForce's websites.

58. LegalForce is the sole and exclusive owner of the LEGALFORCE Marks. It has overseen, controlled, and directed goods and services marketed, advertised, promoted, and sold under the LEGALFORCE Marks.

59. LegalForce has priority of use in commerce for the LEGALFORCE Marks over Infringing Brand.

60. Infringing Brand's infringing use as alleged herein was done without the authorization or consent of LegalForce.

---

[38]See Twitter tweet dated October 4, 2021 :
https://twitter.com/legalforce_jp/status/1444981538836205574

FIRST AMENDED COMPLAINT
CASE NO.: 3:22-cv-03724-TLT

61. Such use is likely to cause initial interest confusion of consumers who are in fact searching solely for LegalForce and/or LegalForce's registered trademarks  and is highly likely to cause confusion, mistake and deception among the general public as to the origin of Infringing Brand's goods and services and/or as to the sponsorship by, affiliation with, and/or connection to LegalForce.

62. By using LegalForce's registered trademarks, and by selling, offering for sale, distributing, or advertising goods and services to the general public in connection with LegalForce's registered trademarks, for profit, Infringing Brand has caused and, unless enjoined by this Court, will continue to cause likelihood of confusion and deception of members of the public, and additional injury to LegalForce's exclusive right to control, and benefit from, its registered trademarks, as well as LegalForce's goodwill and reputation as symbolized by the LEGALFORCE Marks.

63. Infringing Brand's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with LegalForce's registered trademarks to LegalForce's great and irreparable injury.  The following statements in the Declaration filed in this Proceeding by Infringing Brand's President Mr. Tsunoda under penalty of perjury are false and misleading representations to this Court upon information and belief in Dkt. 22-1 filed on October 20, 2022.

**Mr. Tsunoda's Top 10 Lies**

|    | **False Statements by Mr. Tsunoda's Statement Under Oath** | **¶** | **Why False, Misleading or Prejerous** |
|----|----|----|----|
| 1. | "I conduct no business in California or the Unite*d States with LEGALFORCE trademark"* | ¶ 5 | Mr. Tsunoda's trip to the San Francisco Bay Area in July 2022 was to conduct business in California and within the United States using the LEGALFORCE trademark, including his solicitation that month with WSGR, a founding shareholder of Plaintiff LegalForce's previous entity. |
| 2. | *"I have no business interests or assets in California or the United States"* | ¶ 6 | Mr. Tsunoda's trip to the San Francisco Bay Area in July 2022 demonstrated his business interest in California and the United States when meeting with WSGR, and his distribution of the investor decks that he circulated to investors with operations and significant funds investing in California.<br><br>Moreover, Mr. Tsunoda admitted to |

business interests in United States to Business Insider "[f]rom now on, we will expand into the United States" and "We are planning to expand into the United States based on this funding" and "I recognize that there are few companies that review contracts in the United States, and they are as big as we do."[39] [*translation*]. Moreover, Mr. Tsunoda admitted to ZDNet "[a]s a destination, we are thinking about English-speaking countries first, and they will expand mainly in the United States." [*translation*][40]

Moreover, Mr. Tsunoda's website admits to business interests which describe "dedicated to building our global product in close collaboration **with the US team**" (*emphasis added*).[41]

In contrast to Mr. Tsunoda's representations to this Court, his own website currently refutes his own Declaration by showing business interests while describing "**collaboration and communication with US-based product manager and development team**." (*emphasis added*).[42]

The job postings further admit business interests through the presence of a sales team in the United States and customers within the United States when Mr. Tsunoda's website state "as well as **the US sales team and, at times, with customers**"

---

[39] See *LegalForce's 13.7 billion yen procurement ``lowered the valuation and raised the amount'', some investors left due to the recession*" [rough translation] in Business Insider Japan Jan article by writer Ikuko Takeshita,  June 22, 2022
https://www.businessinsider.jp/post-255964
[40] See *LegalForce raises 13.7 billion yen in Series D round–also reveals overseas expansion*,' [rough translation] in ZDNet Japan Jan article by writer Yuki Kawabe,  June 24, 2022
https://japan.zdnet.com/article/35189404/
[41]  See *LegalForce-corp.com website --->Rercuit--->Join Us page→ ZEN-04 Software Engineer, Back-end, US entry, ZEN-05 Infrastructure Engineer, US entry, and ZEN-06 Software Engineer, Front-end, US entry*
[42] *Id.*

| | | | |
|---|---|---|---|
| | | | in direct contrast to Mr. Tsunoda's sworn Declaration to this Court. [43] |
| 3. | *"LegalForce does not recruit in California or the United States."* | ¶ 14 | Mr. Tsunoda's website advertises for a Lawyer with "[b]ar admission in New York or California." Unlike other postings, this posting does not require working from Japan. Other postings describe "*This is not a cross-border full-remote position, and you are required to come to Japan." However no such disclaimer requiring to come to Japan exists for this Lawyer position on the Infringing Brand's website as of October 23, 2022 in direct contrast to Mr. Tsunoda's sworn Declaration to this Court. |
| 4. | *"Each of LegalForce's employees resides outside the United States."* | ¶ 15 | In contrast to Mr. Tsunoda's representations to this Court, his own website currently refutes his own Declaration by showing business interests while describing "**collaboration and communication with US-based product manager and development team**." (*emphasis added*).[44]

 The job postings further admit business interests through the presence of a sales team in the United States and customers within the United States when Mr. Tsunoda's website state "as well as **the US sales team and, at times, with customers**" in direct contrast to Mr. Tsunoda's sworn Declaration to this Court. [45] |
| 5. | *"LegalForce has not used the LEGALFORCE mark in commerce in the United States."* | ¶ 21 | Mr. Tsunoda's trip to the San Francisco Bay Area in July 2022 used his infringing LEGALFORCE trademark in commerce in the United States, including his solicitation that month of WSGR, a founding |

[43] *Id.*

[44] *Id.*

[45] *Id.*

| | | | |
|---|---|---|---|
| | | | shareholder of Plaintiff LegalForce's previous entity. |
| 6. | *"Nor has LegalForce taken any steps to imminently offer, sell, transport , distribute, market, or advertise any products or services bearing the LEGALFORCE mark in the United States."* | ¶ 21 | Mr. Tsunoda's trip to the San Francisco Bay Area in July 2022 demonstrated that he took steps to imminently offer, sell, distribute, market and advertise services bearing the LEGALFORCE mark when meeting with WSGR, and his distribution of the investor decks that he circulated to investors with operations and significant funds investing in California.

Moreover, Mr. Tsunoda admitted to active steps to imminently offer in United States to Business Insider "[f]rom now on, we will expand into the United States" and "We are planning to expand into the United States based on this funding" and "I recognize that there are few companies that review contracts in the United States, and they are as big as we do."[46] [*translation*].  Moreover, Mr. Tsunoda admitted to ZDNet "[a]s a destination, we are thinking about English-speaking countries first, and they will expand mainly in the United States." [*translation*][47]

Moreover, Mr. Tsunoda's website admits to active steps to imminently offer which describes "dedicated to building our global product in close collaboration **with the US team**" (*emphasis added*).[48]

In contrast to Mr. Tsunoda's representations |

[46] See *LegalForce's 13.7 billion yen procurement ``lowered the valuation and raised the amount'', some investors left due to the recession*" [rough translation] in Business Insider Japan Jan article by writer Ikuko Takeshita,  June 22, 2022 https://www.businessinsider.jp/post-255964

[47] See *LegalForce raises 13.7 billion yen in Series D round–also reveals overseas expansion*,' [rough translation] in ZDNet Japan Jan article by writer Yuki Kawabe,  June 24, 2022 https://japan.zdnet.com/article/35189404/

[48]  See *LegalForce-corp.com website --->Rercuit--->Join Us page→ ZEN-04 Software Engineer, Back-end, US entry, ZEN-05 Infrastructure Engineer, US entry, and ZEN-06 Software Engineer, Front-end, US entry*

| | | | |
|---|---|---|---|
| | | | to this Court, his own website currently refutes his own Declaration by showing active steps to imminently offer while describing "**collaboration and communication with US-based product manager and development team**." (*emphasis added*).[49]<br><br>Moreover job postings on Infringing Brand's own website further admit actual customers in the United States when Mr. Tsunoda's website states "as well as **the US sales team and, at times, with customers**" in direct contrast to Mr. Tsunoda's sworn Declaration to this Court. [50] |
| 7. | *"The English language version of LegalForce's website is aimed at English speaking customers in Japan."* | ¶ 28 | In direct contrast to Mr. Tsunoda's Declaration, Infringing Brand reposted coverage of its fundraise in Bloomberg and Law 360, both publications that extensively covered LegalForce on its press page on its English website. Both Bloomberg and Law360 are American publications which primarily cater to American lawyers and legal professionals and not to Japanese legal tech professionals. Both articles were published by American journalists and in English. Law360's header makes clear that it is primarily targeted toward American audiences and U.K. audiences, and not Japanese audiences. Law360's website has no articles in Japanese or targeting Japanese customers. |
| 8. | *"LegalForce has no clients in California or the United States clients"* and *"LegalForce has not entered into any contracts for rendering services in California or the United States"* | ¶29, ¶32 | In direct contrast to Mr. Tsunoda's Declaration, Infringing Brand's own lawyers admit that Infringing Brand does have clients in California with respect to Fujitsu and Sojitz, but only argue that these customers do not demonstrate continuous or systematic contacts making California a |

[49] *Id.*
[50] *Id.*

| | | | |
|---|---|---|---|
| | | | home forum. (See Dkt. 22, ¶ 15 of 26, lines 5-12). Moreover job postings on Infringing Brand's own website further admit actual customers in the United States when Mr. Tsunoda's website states "as well as **the US sales team and, at times, with customers**" in direct contrast to Mr. Tsunoda's sworn Declaration to this Court.[51] |
| 9. | *"Defending a lawsuit in California or the United States would cause LegalForce hardship"* and *"The 12+ hours in travel from Tokyo to San Francisco to participate in this litigation would cause financial and emotional burden on LegalForce."* and *"The 16-hour time difference between California (PDT) and Japan would interfere with LegalForce's ability to communicate effectively with its counsel."* | ¶39 | Mr. Tsunoda admits to coming to the United States seven times in pg. 3 of his declaration, and therefore does not seem to have hardship traveling to the United States. Moreover, Infringing Brand has raised over $100 million in venture capital and should therefore have no financial burden in participating in this litigation in this forum, especially in view of its at least five lawyers at Finnegan representing it within this instant proceeding, a law firm which has offices both in Tokyo[52] and in California.[53] |
| 10. | *"LegalForce employees have been to California on only two occasions. Those visits were unrelated to the LEGALFORCE brand and did not involve any* | ¶40, ¶41, ¶42 | Mr. Tsunoda's trip to the San Francisco Bay Area in July 2022 was directly related to the LEGALFORCE trademark, including his solicitation that month of WSGR, a founding shareholder of Plaintiff |

---

[51] *Id.*

[52] Infringing Brand's counsel Finnegan's website states "In 1988, we opened our Tokyo office to advise our Japanese clients more efficiently about the changing U.S. intellectual property laws and to assist our U.S. clients in transactions with Japanese companies. Our Tokyo office was one of the first foreign firms licensed to practice in Japan. Many of our attorneys have spent several years in the Tokyo office. Their experience and our continued presence in Japan provide us with ongoing insight into Japanese business motivations and policies and enhance our ability to communicate and practice more effectively." Tokyo | Finnegan | Leading IP Law Firm as of October 23, 2022.

[53] Infringing Brand's counsel Finnegan's website states "Situated amidst one of the highest concentrations of high-tech and biotech businesses in the world, our Palo Alto office opened in 1997. Our convenient location between San Francisco and San Jose brings us close to many of our clients and gives us easy access to the vast resources of local universities, including Stanford, UC Berkeley, and UC San Francisco." Finnegan | Palo Alto | Finnegan | Leading IP Law Firm as of October 23, 2022.

| | |
|---|---|
| *promotion, advertisement, display, or use in commerce of the LEGALFORCE mark or logo. Neither trip was for the purposes of entering any contracts with or soliciting business with Californian individuals or entities.*" | LegalForce's previous entity. |

64. Infringing Brand has caused and is likely to continue causing substantial injury to the public and to LegalForce, and LegalForce is entitled to injunctive relief and to recover all damages sustained as a result of Infringing Brand's infringing conduct, including but not limited to Infringing Brand's profits, disgorgement and transfer of all of Infringing Brand's raising of more than $100 million dollars of venture funding misdirecting LegalForce's trade dress and goodwill, LegalForce's actual damages, enhanced profits, treble damages, statutory damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## SECOND CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1125(a)

65. LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

66. Defendant used the LEGALFORCE Marks in connection with the sale and advertising of services in a manner that is likely to cause confusion, mistake, and/or deception among consumers as to the affiliation, connection, or association of Infringing Brand with LegalForce, or as to the origin, sponsorship, or approval of Infringing Brand's products and services by LegalForce.

67. Infringing Brand's adoption and use of the LEGALFORCE Marks has been made notwithstanding LegalForce's well-known rights in the famous LEGALFORCE Marks and with both actual and constructive notice of LegalForce's federal registration rights under 15 U.S.C. § 1072.

68. The Lanham Act prohibits any false or misleading description or representation, including words or other symbols tending falsely to describe or represent the same, made in connection with any goods or services entered into commerce.

69. Displaying Infringing Brand's homepage is likely to cause confusion or mistake, or to deceive as to the affiliation, connection or association of the Infringing Websites with LegalForce, or as to the origin, sponsorship, or approval by LegalForce.

70. Infringing Brand was aware of the Plaintiff's marks and reputation before engaging in its conduct as alleged herein. Infringing Brand deliberately redirected its website https://en.legalforce-corp.com/ to its home page for the purpose of harassing the Plaintiff, misappropriating its substantial goodwill, and causing confusion, mistake and deception among Internet users and the public.

71. As a direct and proximate result of Defendant's infringing activities, LegalForce has suffered irreparable injury to LegalForce 's business, reputation, and goodwill in its federally registered LEGALFORCE Marks and will continue to suffer such injury unless Defendant is enjoined by this Court from continuing its infringing activities.

72. Infringing Brand's wrongful conduct has been willful and malicious. Plaintiff is entitled to recover Infringing Brand's profits, disgorgement and transfer of all of Infringing Brand's raising of more than $100 million dollars of venture funding misdirecting LegalForce's trade dress and goodwill, as well as LegalForce's actual damages, enhanced profits and all damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1117.

## THIRD CLAIM FOR RELIEF
### CYBERPIRACY IN VIOLATION OF 15 U.S.C.A. § 1125(D)(1)

73.  LegalForce repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

74. Infringing Brand registered the Infringing Websites and used it to redirect visitors to ia website on which the LegalForce brand was displayed https://en.legalforce-corp.com/#about and https://legalforce-cloud.com/.

75. Infringing Brand attempts to profit from the Infringing Websites by appending query strings to the domain "-corp.com" to make it look officially connected to LegalForce.

76. Infringing Brand actively disseminated and marketed the Infringing Brand about one year. WayBackMachine archives show that Infringing Brand included the Infringing Website in English https://en.legalforce-corp.com/#about as early as July 1, 2021, and was registered on April 28, 2021.     Also the Infringing Website https://legalforce-cloud.com/ contains English script for the Infringing Brand and appears to be registered on February 7, 2018.

77. The Infringing Websites' domain is nearly identical to and confusingly similar to Plaintiff's distinctive LEGALFORCE Marks, and to the Plaintiff's registered domains LegalForce.com and LegalForceLaw.com.

78. Infringing Brand has bad faith intent to profit from the Infringing Websites. Bad faith is evidenced by, inter alia, their registration of the domain only after the success of the Plaintiff's LegalForce business, and recently launching an English language website.

79. Infringing Brand's bad faith intent is further demonstrated by the following:

80. Infringing Brand has no trademark or IP rights in or to the LEGALFORCE Marks. The Infringing Websites incorporates the intellectual property rights in the trademarks and trade names "LegalForce" literally and exactly into the domain name.

81. Infringing Brand purchased the domain after the LEGALFORCE Marks were already distinctive, had achieved significant international fame, and were registered as U.S. trademarks.

82. Infringing Brand attempted to profit from relationships by tracking the URL when redirecting traffic from the Infringing Websites to its homepage.

83. Infringing Brand intended to harm the goodwill represented by the LEGALFORCE Marks for commercial gain. It intended to tarnish and disparage the LEGALFORCE Marks by creating a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of Infringing Websites by Plaintiff.

84. Infringing Brand intended to harm the goodwill represented by the LEGALFORCE Marks for commercial gain by intentionally utilizing LegalForce's "orange" trade dress when raising over $100 million dollars from Investors by creating confusion that somehow Infringing Brand's entrance in the United States was affiliated with or sponsored by LegalForce.

85. Infringing Brand intentionally misappropriated the LegalForce orange trade dress in its investor pitch decks to fraudulently secure venture capital for the specific purpose of entry into markets in the United States at the direct expense of LegalForce.

86. Infringing Brand's intentional conduct has harmed LegalForce's ability to raise venture capital for its own business.  Specifically, Infringing Brand utilized and misappropriated the "orange" trade dress of LegalFore in its investor presentations resulting in successfully securing over $100 million dollars while misidentifying Infringing Brand as being sponsored, affiliated, connected with, and endorsed by LegalForce.

87. Infringing Brand misled the public by concealing its ownership of the Infringing Websites shortly after it started to divert traffic to Infringing Websites.

88. Infringing Brand's actions constitute cyberpiracy in violation of the LegalForce's rights under 15 U.S.C. § 1125(d)(1). These actions have been knowing, deliberate, willful, intentional, and flagrantly malicious in light of the LegalForce's rights and global fame.

89. Pursuant to 15 U.S.C. § 1117, LegalForceis further entitled to treble damages and attorneys' fees and costs.

90. Infringing Brand's cyberpiracy in violation of 15 U.S.C. § 1125(d)(1) is a direct and proximate cause of Infringing Brand's unjust enrichment in an amount not yet ascertained.

91. Pursuant to 15 U.S.C. § 1117(d), LegalForce may elect, at any time before final

judgment is entered by the trial court, to recover, instead of actual damages and profits for Infringing Brand's violation of 15 U.S.C. § 1125(d)(1), disgorgement and transfer of all of Infringing Brand's raising of more than $100 million dollars of venture funding misdirecting LegalForce's trade dress and goodwill, an award of statutory damages up to $100,000 per domain name, as the Court considers just.

92. Accordingly, LegalForce is entitled to recover restitution for Infringing Brand's unjust enrichment in an amount to be determined at trial.

93. If Infringing Brand's cyberpiracy in violation of 15 U.S.C. § 1125(d)(1) is permitted to continue, LegalForce faces the risk of irreparable harm. Plaintiff's remedy at law is not by itself adequate to remedy Infringing Brand's actions, and irreparable harm suffered by LegalForce will continue unless this Court enjoins Infringing Brand. LegalForce therefore is entitled to protection by injunctive relief, including forfeiture or cancellation of the Infringing Websites domains or transfer of the Infringing Websites domain names to LegalForce.

## FOURTH CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT
### CALIFORNIA COMMON LAW

94. LegalForce repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

95. LegalForce is the sole and exclusive owner of the trademark rights in the LEGALFORCE Marks.

96. LegalForce has priority of use in commerce for the LEGALFORCE Marks over Infringing Brand.

97. By its acts as described above, Defendant has created a likelihood of confusion, mistake, and/or deception among consumers as to affiliation; connection, or association with LegalForce or as to the origin, sponsorship, or approval of Defendant's products and services by LegalForce and its trade dress.

98. Absent injunctive relief, LegalForce has no means by which to control Defendant's infringing activities. LegalForce is thus entitled to preliminary and permanent injunctive relief prohibiting Defendant from continuing to commit such acts.

99. In performing the conduct described herein, on information and belief, Defendant acted with oppression and malice, intending to injure LegalForce and to wrongfully advantage itself at LegalForce's expense. LegalForce is entitled to an award of compensatory and punitive damages against Defendant, in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Infringing Brand as follows:

A. That Infringing Brand and its respective agents, officers, employees, representatives, licensees, franchisees, successors, assigns, attorneys and all other entities and persons acting for, with, by through or under authority from Defendant, and each of them, be preliminarily and permanently enjoined from: (a) using the LEGALFORCE Marks, service marks, and trade names, or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in any other way similar to any of the LEGALFORCE Marks or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of LegalForce' s products or its connectedness to Defendant; (c) using any trademark or service mark that is confusingly similar to the distinctiveness of any of the LEGALFORCE Marks;

B. An order that Infringing Brand permanently abandon the registration of https://en.legalforce-corp.com/ Domain (and any other similar domains owned or acquired by Infringing Brand);

C. An order that Infringing Brand permanently abandon the registration of https://legalforce-cloud.com/ Domain (and any other similar domains owned or acquired by Infringing Brand);

D. That Infringing Brand be required to file with the Court and serve on LegalForce within thirty (30) days after entry of the injunction, a declaration under oath setting forth in detail the manner and form in which Infringing Brand has complied with the injunction;

E. That, pursuant to 15 U.S.C. § 1117, Infringing Brand be held liable for all damages suffered by LegalForce resulting from the acts alleged herein including compensatory and punitive damages against Infringing Brand in an amount to be proven at trial;

F. That, pursuant to 15 U.S.C. § 1117, Infringing Brand be compelled to disgorge and transfer its $100 million dollars in venture capital that Infringing Brand has raised through investor pitch decks fraudulently associating itself with the goodwill of LegalForce and creating a false association, sponsorship and connection with LegalForce.

G. That, pursuant to 15 U.S.C. § 1117, Infringing Brand be compelled to account to LegalForce for any and all profits derived by Infringing Brand from its illegal acts complained of herein;

H. That Plaintiff be awarded their costs and expenses of this action against Infringing Brand, including their reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

I.   That Plaintiff be awarded treble damages to the fullest extent available under the law.

J.   An award of Infringing Brand's profits from their infringing conduct;

K.   Award Plaintiff pre- and post-judgment interest at the applicable rates on all amounts awarded;

L.   An award of statutory damages up to $100,000 per domain name in violation of 15 U.S.C. § 1125(d)(1) per 15 U.S.C. § 1117(d) if elected by LegalForce instead of actual damages and profits, as the Court considers just;

M.   Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this Complaint;

N.   That the Court grant LegalForce any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under all applicable federal or state laws; and

O.   Order any other such relief as the Court deems appropriate.


Respectfully submitted this Sunday, October 23, 2022.


                    LEGALFORCE RAPC WORLDWIDE P.C.


                    By   /s/ Raj V. Abhyanker
                    Raj V. Abhyanker
                    California State Bar No. 233,284
                    Attorney for Plaintiff:
                    LegalForce RAPC Worldwide P.C.

1

## <u>**JURY TRIAL DEMAND**</u>

2

3
Plaintiff hereby requests a trial by jury on all issues so triable in this matter.

4

5
Respectfully submitted this Sunday, October 23, 2022.

6
                                    LEGALFORCE RAPC WORLDWIDE P.C.

7
                                    By   /s/ Raj V. Abhyanker

8
                                    Raj V. Abhyanker
                                    California State Bar No. 233,284
9
                                    Attorney for Plaintiff:
                                    LegalForce RAPC Worldwide P.C.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT
CASE NO.: 3:22-cv-03724-TLT