B. Brett Heavner (*pro hac vice*)
b.brett.heavner@finnegan.com
Yinfei Wu (*pro hac vice*)
yinfei.wu@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:     (202) 408-4000
Facsimile:     (202) 408-4400

Morgan E. Smith (SBN 293503)
morgan.smith@finnegan.com
Matthew C. Samet (SBN 311865)
matthew.samet@finnegan.com
Daniel R. Mello (SBN 325714)
daniel.mello@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:     (650) 849-6600
Facsimile:     (650) 849-6666

Naoki Yoshida (*pro hac vice*)
naoki.yoshida@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
  **GARRETT & DUNNER, LLP**
33rd Floor, Shiroyama Trust Tower
3-1, Toranomon 4-chome
Minato-ku, Tokyo 105-6033 Japan
Telephone:     011-813-3431-6943
Facsimile:     011-813-3431-6945

Attorneys for Specially Appearing Defendant
LEGALFORCE, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C., | CASE NO. 3:22-cv-03724-TLT |
| Plaintiff, | **SPECIALLY APPEARING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| LEGALFORCE, INC., | |
| Defendant. | Judge:        Hon. Trina L. Thompson |
| | Crtrm.:       9 |
| | Hearing Date: February 7, 2023 |
| | Time:         2:00 p.m. |
| | Action Filed: June 24, 2022 |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 7, 2023 at 2:00 p.m. PT or as soon thereafter as the matter may be heard before Judge Thompson in Courtroom 9 of the above-entitled courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Specially Appearing Defendant LegalForce, Inc. ("Defendant")—appearing for the limited purpose of challenging subject matter jurisdiction, personal jurisdiction, and the sufficiency of the First Amended Complaint—will and does hereby move the Court for dismissal of this action pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion").

This Motion is made on the grounds that this Court lacks subject matter jurisdiction over Counts 1, 2, and 4 because Defendant has never used the LEGALFORCE mark in commerce in the United States.  With respect to all counts, this Court lacks both general and specific personal jurisdiction over Defendant because it is not a citizen or resident of the State of California and does not have sufficient contacts in California.  There are no facts to establish the requisite minimum contacts with California.  Finally, absent any trademark use in the United States, Plaintiff failed to plausibly plead Counts 1, 2, and 4.  It also failed to adequately plead Count 3 because Defendant has no bad faith intent to profit from the marks it rightfully owns in Japan.  Because amendment would be futile, this Court should dismiss Plaintiff's First Amended Complaint without leave to amend.

This Motion is made and based upon this Notice; the authorities cited in the accompanying Memorandum of Points and Authorities; the supporting declaration of Nozomu Tsunoda; the supporting declaration of Morgan E. Smith and its accompanying exhibits; all other papers and pleadings on file; and such additional arguments and evidence as may be presented to the Court at or before a hearing on this Motion.

Dated:  November 7, 2022

Respectfully submitted,

By: ___/s/ Morgan Smith_____
Morgan E. Smith
Matthew C. Samet
Daniel R. Mello
**FINNEGAN, HENDERSON, FARABOW,**

**GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:      (650) 849-6600
Facsimile:      (650) 849-6666

B. Brett Heavner (*pro hac vice*)
Yinfei Wu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:      (202) 408-4000
Facsimile:      (202) 408-4400

Naoki Yoshida (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
33rd Floor, Shiroyama Trust Tower
3-1, Toranomon 4-chome
Minato-ku, Tokyo 105-6033 Japan
Telephone:      011-813-3431-6943
Facsimile:      011-813-3431-6945

*Attorneys for Specially Appearing Defendant
LEGALFORCE, INC.*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    ARGUMENT ....................................................................................................... 4

        A.      The Court Lacks Subject Matter Jurisdiction Over Counts 1, 2, and 4 Because There Is No Case or Controversy.................................................................... 4

        B.      The Court Lacks Personal Jurisdiction Over Defendant—A Japanese Corporation with No Forum Contacts................................................................ 6

                1.      This Court Lacks General Jurisdiction Over Defendant................................ 7

                2.      This Court Lacks Specific Jurisdiction Over Defendant Because Defendant Has No Suit-Related Forum Contacts........................................... 12

                        a.      Defendant Did Not Purposefully Direct Any Tortious Act at California or the United States............................................................. 13

                                i.      Intentional Act........................................................................ 13

                                ii.     Express Aiming ....................................................................... 14

                                iii.    Foreseeable Harm .................................................................. 15

                        b.      Plaintiff's Claims Do Not Arise Out of Defendant's Alleged Forum-Related Activities ..................................................................... 16

                        c.      Exercising Jurisdiction Over Defendant Is Not Reasonable or Fair ..................................................................................................... 17

        C.      Counts 1-4 Should Be Dismissed for Failure to State a Claim ...................... 18

                1.      Plaintiff Failed to State a Claim as to Claims 1, 2, and 4 Because Defendant Does Not Use LEGALFORCE in United States Commerce.................................................................................................. 19

                2.      Plaintiff Fails to State a Claim as to Claim 3 Because Defendant Has No Bad Faith Intent................................................................................. 21

        D.      Leave to Amend Would Be Futile ................................................................. 22

IV.     CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)................................................................................ 19

*AirWair Int'l Ltd. v. Schultz*,
  73 F. Supp. 3d 1225 (N.D. Cal. 2014)..............................................................13, 14, 15

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020)............................................................................... 13

*Americopters, LLC v. FAA*,
  441 F.3d 726 (9th Cir. 2006)................................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 19

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ..............................................................................13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 19

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)............................................................................................ 7

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005).................................................................................. 21

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
  137 S. Ct. 1773 (2017)........................................................................................ 7, 16

*Bugarin v. All Nippon Airways Co.*,
  513 F. Supp. 3d 1172 (N.D. Cal. 2021) ..................................................................... 4

*Calder v. Jones*,
  465 U.S. 783 (1984) ...........................................................................................13, 14

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010)............................................................................... 4, 6

*Combe Inc. v. Dr. Aug. Wolff GmbH & Co. KG Arzneimittel*,
  309 F. Supp. 3d 414 (E.D. Va. 2018) ........................................................................ 6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .............................................................................................. 7

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
 557 F.2d 1280 (9th Cir. 1977)........................................................................... 6

*DocuSign, Inc. v. Clark*,
 No. 21-CV-04785-WHO, 2022 WL 2136071 (N.D. Cal. June 14, 2022).................... 7

*Fayer v. Vaughn*,
 649 F.3d 1061 (9th Cir. 2011) (per curiam)........................................................ 19

*Freeconference.com, Inc. v. Power*,
 No. C07-01306 CW, 2007 WL 9735454 (N.D. Cal. July 2, 2007)............................ 10

*Freestream Aircraft (Bermuda) Limited v. Aero Law Group*,
 905 F.3d 597 (9th Cir. 2018)............................................................................. 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ................................................................................... 7, 16

*Green v. Brightestyoungthings.com*,
 No. LACV1401447JAKSSX, 2014 WL 12569350 (C.D. Cal. Sept. 24, 2014) .......... 11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
 328 F.3d 1122 (9th Cir. 2003)....................................................................6, 13, 17

*Harrods Ltd. v. Sixty Internet Domain Names*,
 302 F.3d 214 (4th Cir. 2002)............................................................................ 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984) ....................................................................................... 12

*Iglesia Ni Cristo v. Cayabyab*,
 Case No. 18-CV-00561, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) .................. 19

*Innospan Corp. v. Intuit, Inc.*,
 No. C 10-04422, 2011 WL 856265, at *3 (N.D. Cal. Mar. 9, 2011) ......................... 23

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ......................................................................................... 6

*JGX, Inc. v. Handlery*,
 Case No. 17-cv-00287, 2018 WL 984856 (N.D. Cal. Feb. 20, 2018)...................... 4, 6

*Juicy Couture Inc. v. Bella Int'l Ltd.*,
 930 F. Supp. 2d 489 (S.D.N.Y. 1989) ................................................................ 21

*Lang v. Morris*,
 823 F. Supp. 2d 966 (N.D. Cal. 2011) ................................................................ 14

*Leadsinger, Inc. v. BMG Music Publ'g*,
 512 F.3d 522 (9th Cir. 2008)............................................................................. 22

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) ............................................................................................... 4

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) (en banc) ............................................................... 22

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010).......................................................................... 20, 21

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011)................................................................... 6, 7, 8, 11

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007)................................................................................ 16

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
   795 F.3d 1124 (9th Cir. 2015) ........................................................................... 4, 19

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) .................................................................................. 18

*Nelson v. Fluoropharma Med., Inc.*,
   No. 12-CV-2674 BEN (WVG), 2013 WL 12097687 (S.D. Cal. May 7, 2013) ......... 10

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998)........................................................................... 15, 18

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
   897 F. Supp. 2d 856 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013) .............. 21

*Quatrewave LLC v. de Stefano*,
   No. CV2007237MWFPJWX, 2020 WL 10758648 (C.D. Cal. Dec. 2, 2020)........................ 21

*Richardson v. City & Cnty. of Honolulu*,
   124 F.3d 1150 (9th Cir. 1997)................................................................................. 5

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ............................................................................................... 4

*Rupert v. Bond*,
   68 F. Supp. 3d 1142 (N.D. Cal. 2014), *aff'd*, 771 F. App'x (9th Cir. 2019) .............. 13

*Ryan v. Microsoft Corp.*,
   147 F. Supp. 3d 868 (N.D. Cal. 2015)..................................................................... 22

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   325 F. Supp. 3d 1088 (S.D. Cal. 2018)............................................................... 16, 17

*Saul v. United States*,
   928 F.2d 829 (9th Cir. 1991)................................................................................ 23

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004).......................................................................................... *passim*

*Sec. Alarm Fin. Enters., L.P. v. Nebel*,
  200 F. Supp. 3d 976 (N.D. Cal. 2016)...................................................................................... 7

*Selhorst v. Alward Fisheries, LLC*,
  No. C-11-3266, 2011 WL 4974568 (N.D. Cal. Oct. 19, 2011)...................................................... 9

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990).................................................................................................. 6

*Silicon Econ., Inc. v. Fin. Acct. Found.*,
  No. 10-CV-01939-LHK, 2010 WL 4942468 (N.D. Cal. Nov. 24, 2010)................................... 12

*Sinatra v. Nat'l Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988)...........................................................................................17, 18

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
  769 F.2d 1393 (9th Cir. 1985)...........................................................................................20, 21

*Steele v. Bulova Watch Co.*,
  344 U.S. 280 (1952) ............................................................................................................... 20

*Stohl v. Magic Mountain, LLC*,
  No. 17-cv-01858, 2019 WL 498993 (E.D. Cal. Feb. 8, 2019)....................................................... 9

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  No. C 11-4991 CW, 2013 WL 4528539 (N.D. Cal. Aug. 23, 2013), *amended in part*, No. C 11-4991 CW, 2013 WL 6157208 (N.D. Cal. Nov. 22, 2013), *and aff'd*, 650 F. App'x 473 (9th Cir. 2016), *on reh'g en banc*, 839 F.3d 1179 (9th Cir. 2016)........................................................................................................................................... 22

*Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*,
  No. C 13-575, 2013 WL 2355446 (N.D. Cal. May 29, 2013) ...................................................... 9

*Thompson Tank & Mfg. Co. v. Thompson*,
  693 F.2d 991 (9th Cir. 1982)................................................................................................... 19

*TIBCO Software Inc. v. GatherSmart LLC*,
  Case No. 20-cv-06422, 2021 WL 4477902 (N.D. Cal. Mar. 5, 2021) ...........................4, 5, 17, 19

*Trader Joe's Co. v. Hallatt*,
  835 F.3d 960 (9th Cir. 2016).................................................................................................... 20

*Urica, Inc. v. Pharmaplast, S.A.E.*,
  Case No. CV 11-02476, 2013 WL 12123305 (C.D. Cal. Jan. 10, 2013) ...................................... 9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................................................12, 14, 16

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................................... 6

**Statutes**

15 U.S.C. §§ 1114, 1125(a) .................................................................................. 19

15 U.S.C.§ 1125(d)(1)(A) ..................................................................................... 21

Cal. Civ. Proc. Code § 410.10 ............................................................................... 6

**Other Authorities**

Rule 4(k)(2) ............................................................................................................ 6

Rule 12(b)(1) .......................................................................................................... 4

Rule 12(b)(2) ...................................................................................................... 4, 7

Rule 12(b)(6) .................................................................................................... 4, 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Plaintiff LegalForce RAPC Worldwide, P.C. ("Plaintiff") brings premature and speculative

4 trademark infringement and cybersquatting claims against Specially Appearing Defendant

5 LegalForce, Inc. ("Defendant").  Plaintiff's trademark infringement claims (Counts 1, 2, and 4) hinge

6 on a predicate "fact" that does not exist—Defendant's use of the allegedly infringing mark

7 LEGALFORCE in the United States.  *See* ECF No. 22 at 1.  But Plaintiff did not, because it cannot,

8 plead in the First Amended Complaint ("FAC") (ECF No. 31)[1] that Defendant uses the

9 LEGALFORCE mark in the United States.  Thus, Plaintiff's FAC all but admits that it seeks an

10 unlawful advisory opinion about a mark that may never be used in United States commerce.  Counts

11 1, 2, and 4 therefore fail to meet the case or controversy requirement under Article III and should be

12 dismissed for lack of subject matter jurisdiction.

13

Those counts should similarly be dismissed for failure to state a claim because Plaintiff has

14 not, and cannot, allege the essential element of its claims that Defendant used LEGALFORCE in

15 United States commerce.  Nor did Plaintiff allege sufficient facts to establish extraterritorial

16 application of the Lanham Act in this case.  Count 3 must also be dismissed for failure to state a claim

17 because Defendant has no bad faith intent to profit from the marks it rightfully owns in Japan.

18

Furthermore, this Court lacks personal jurisdiction over Defendant.  Defendant is a *Japanese*

19 corporation with its principal place of business in *Tokyo, Japan*.  *See* ECF No. 31 ¶ 3.  All of

20 Defendant's employees work and reside in Japan and Defendant's scope of business occurs wholly

21 within Japan.  Plaintiff identifies only negligible contacts with the forum that are insufficient to confer

22 jurisdiction over Defendant.  Because this Court lacks personal jurisdiction over Defendant, it must

23 dismiss the FAC in its entirety.

24

Finally, Plaintiff has already tried and failed to cure the above shortcomings.  Thus, the Court

25 should grant Defendant's motion to dismiss without leave to amend because further amendment would

26 be futile.

27

28

---

[1] Plaintiff filed the FAC twice (ECF Nos. 31 and 32).  The second filing appears to have been in error, and Defendant treats ECF No. 31 as the operative pleading.

II.    **FACTUAL BACKGROUND**

Defendant was founded in Japan on or about April 21, 2017.  Declaration of Nozomu Tsunoda ("Tsunoda Decl.") ¶ 9.  Defendant researches, develops, manages, and maintains legal operations software for its clients including, in particular, artificial intelligence-powered document review and analysis software.  *Id.* ¶ 10; *see also* ECF No. 31 ¶ 3.

Defendant is a Japanese corporation organized under the laws of Japan and is headquartered and has a principal place of business in Tokyo, Japan.  Tsunoda Decl. ¶ 9; ECF No. 31 ¶ 3.  Defendant is not incorporated in California or the United States; nor is it qualified to do business in California or the United States.  Tsunoda Decl. ¶ 11.  Defendant has no branch offices or comparable facilities in California or the United States and has no telephone listing or mailing address in California or the United States.  *Id.* ¶ 12.  Defendant does not maintain a registered agent for service in California or elsewhere in the United States.  *Id.* ¶ 13.  Defendant has no bank accounts or other tangible personal or real property in California or the United States.  *Id.* ¶ 18.  In short, Defendant has no physical presence in California or the United States.  *Id.* ¶ 19.

Defendant does not recruit in California or the United States.  *Id.* ¶ 14.  Each of Defendant's employees resides outside the United States and Defendant hires no employees in California or the United States.  *Id.* ¶¶ 15, 17.  Defendant has no officers, directors, or employees residing or domiciled in California or the United States.  *Id.* ¶ 16.  Mr. Yukata Okura was no exception.  Defendant hired Mr. Okura on March 15, 2022 through a Japanese employment agency and an online application written entirely in Japanese.  *Id.* ¶¶ 48-49.  The application did not target California or United States residents.  *Id.* ¶ 50.  Mr. Okura's official position title was "Project Leader of the U.S. Market Entry Project" and he was hired to lead an *exploratory* project analyzing and assessing a *potential* foreign expansion into the United States.  *Id.* ¶ 51.  Mr. Okura's work was entirely exploratory.  *Id.* ¶ 52. Neither he nor Defendant had, nor were they actively setting up a California or United States office location during his employment.  *Id.*  Immediately on hiring, Mr. Okura went to Defendant's Tokyo office for training.  *Id.* ¶ 53.  Pursuant to the terms of Mr. Okura's employment agreement, Mr. Okura was to train in Japan and stay in Japan during his employment.  *Id.* ¶ 54.  Mr. Okura was expected to work full-time out of the Japanese office, as was specified in his employment agreement.  *Id.* ¶ 55.

However, at the beginning of June 2022, less than three months after training in Tokyo, Mr. Okura terminated his employment with Defendant and may have moved back to the United States at that time. *Id.* ¶ 56.

Defendant does not use and has not applied to register the LEGALFORCE trademark in the United States. *Id.* ¶ 20. Defendant has not sought to enforce its LEGALFORCE mark in commerce in the United States. *Id.* ¶¶ 21-22. Nor does Defendant have any plans to imminently offer, sell, transport, distribute, market, or advertise any products or services bearing the LEGALFORCE mark in the United States. *Id.* ¶¶ 21, 64. Defendant's primary domains—https://legalforce-corp.com and legalforce-cloud.com—are public-facing, accessible worldwide, and are in Japanese. *Id.* ¶ 23-24. All services offered through Defendant's website are advertised specifically toward Japanese residents. *Id.* ¶ 25. The website is available in Japanese and English and loads by default in Japanese. *Id.* ¶ 26. The English language version of Defendant's website, https://en.legalforce-corp.com/, is not directed or aimed at California or United States residents. *Id.* ¶ 27. It is aimed at English speaking customers in Japan, which is made apparent by the images containing Japanese characters, relating specifically to Japanese contracts, and using interfaces most familiar to Japanese customers. *Id.* ¶¶ 28-29.

Defendant has no clients in California or the United States. *Id.* ¶ 30. Defendant has no business contacts with California or the United States and has not entered into any contracts for rendering services in California or the United States. *Id.* ¶¶ 31-32. Defendant does not direct any of its advertising specifically toward California or United States residents, nor does it advertise in any publications that are primarily directed at California or United States residents. *Id.* ¶ 33.

Defendant's website references third-party news websites that have recognized Defendant's trailblazing work and success in the Japanese legal market. *Id.* ¶ 57. Those articles relate to a June 23, 2022 press conference held in Tokyo. *Id.* ¶¶ 58-59. At the press conference, Defendant gave precatory remarks about Defendant's wish to expand its business internationally in the future. *Id.* ¶ 60. Defendant also spoke about the opportunities and pitfalls of expanding to countries like the United States. *Id.* ¶ 61. Defendant did not claim that it presently operated in the United States or sold services in the United States under the LEGALFORCE trademark, because it does not. *Id.* ¶¶ 62-63. Nor did

Defendant indicate that it would expand its services to the United States using the LEGALFORCE trademark. *Id.* ¶ 64. The *very next day*, Plaintiff filed this lawsuit.

### III.   ARGUMENT

"[J]urisdiction generally must precede merits in dispositional order." *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1180 (N.D. Cal. 2021) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). "Only if the Court is satisfied that it has both subject matter jurisdiction and personal jurisdiction may it proceed to address [the defendant's] merits arguments under Rule 12(b)(6)." *Id.* Thus, the court should first review a Rule 12(b)(1) challenge, followed by a Rule 12(b)(2) challenge, and then a Rule 12(b)(6) challenge. *See id.* Here, each of these rules provides an independent basis to dismiss the FAC.

### A.   The Court Lacks Subject Matter Jurisdiction Over Counts 1, 2, and 4 Because There Is No Case or Controversy

Article III of the United States Constitution authorizes federal courts to adjudicate "only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The court is allowed to consider facts and need not assume the truthfulness of a complaint in deciding a Rule 12(b)(1) motion. *See Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

Plaintiff's claims are unripe (i.e., "premature for review") if the purported injury is "too speculative" or "may never occur." *Chandler*, 598 F.3d at 1122. "Ripeness is peculiarly a question of timing, and the Court's role is to adjudicate live cases or controversies rather than to issue advisory opinions or declare rights in hypothetical cases[.]" *TIBCO Software Inc. v. GatherSmart LLC*, Case No. 20-cv-06422, 2021 WL 4477902, at *4 (N.D. Cal. Mar. 5, 2021) (internal citations omitted).

Trademark infringement is unripe for resolution absent any "actual or imminent infringement." *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1133 (9th Cir. 2015); *JGX, Inc. v. Handlery*, Case No. 17-cv-00287, 2018 WL 984856, at *3 (N.D. Cal. Feb. 20, 2018) ("A plaintiff's claims may be 'unripe' if they rest on anticipated future trademark infringement,

in the absence of an imminent threat of use of the mark.").  "The central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (internal quotation omitted).  Mere exploratory activity is insufficient.  *See, e.g.*, *Combe Inc. v. Dr. Aug. Wolff GmbH & Co. KG Arzneimittel*, 309 F. Supp. 3d 414, 423-425 (E.D. Va. 2018) (finding use in commerce not imminent, and thereby declining to exercise subject matter jurisdiction, where "defendant, at one time, took preparatory steps to enter the United States market" but had since  "put its preparations on hold" and had sold no products in United States commerce).

Plaintiff cannot allege sufficient facts at this juncture to establish actual or imminent infringement.  Counts 1, 2, and 4 are therefore unripe.  Defendant has never used that mark in the United States, nor does it have any imminent plans to do so.  Tsunoda Decl. ¶ 21.  Defendant specifically rejected that any possible future expansion to California or the United States would be tied to use of the LEGALFORCE mark in United States commerce.  *Id.* ¶ 64.  And Plaintiff *never once* alleges that Defendant has actually used the LEGALFORCE mark in the United States, despite amending its complaint *after* reviewing these arguments in Defendant's first motion to dismiss.  *See generally* ECF No. 31 ¶¶ 50-64; ECF No. 22.

Instead, Plaintiff's trademark infringement allegations hinge on Defendant's operation of an English-language version of its website.  *See* ECF No. 31 ¶¶ 50-62, 65-72, 94-99.  But the operation of a website "standing alone, without advertising, marketing, or selling trademarked goods or services in connection with its website does not constitute use of the mark in commerce."  *TIBCO Software Inc.*, 2021 WL 4477902, at *3.  Plaintiff also cites to several precatory statements made by Defendant at a June 23, 2022 press conference held in Japan.  ECF No. 31 ¶ 63.  But Defendant never indicated that it would use the LEGALFORCE mark in the United States.  Tsunoda Decl. ¶ 64.  And Defendant certainly had not started using the LEGALFORCE mark in the United States by the time Plaintiff filed this action *the very next day*.  *See* ECF No. 31; Tsunoda Decl. ¶ 65.

Defendant does not actually or imminently advertise, market, or sell services under the LEGALFORCE mark in the United States.  *See* Tsunoda Decl. ¶ 21.  Plaintiff's claims therefore involve only hypothetical uses that "may never occur" and are "too speculative" to permit Plaintiff to

1    proceed with this lawsuit.  *See Chandler*, 598 F.3d at 1122; *see also JGX, Inc.*, 2018 WL 984856, at

2    *3.  At this stage, it is premature for the Court to adjudicate any trademark claims relating to the

3    LEGALFORCE mark and the Court should accordingly dismiss Counts 1, 2, and 4 for lack of subject

4    matter jurisdiction.  *See Combe Inc.*, 309 F. Supp. 3d at 423-425.

5          **B.    The Court Lacks Personal Jurisdiction Over Defendant—A Japanese
                  Corporation with No Forum Contacts**

6

7          Plaintiff, as the party seeking to invoke the jurisdiction of the federal court, carries the burden

8    of establishing that jurisdiction exists and cannot "simply rest on the bare allegations of its complaint."

9    *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Where, as here,

10   there is no applicable federal statute governing personal jurisdiction, the law of the state in which the

11   district court sits applies."  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122,

12   1129 (9th Cir. 2003).  To determine the propriety of asserting personal jurisdiction over a defendant,

13   the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute

14   and comports with the demands of federal due process.  *Id.* (determining scope of California's long-

15   arm statute and examining federal due process requirements); *see also Sher v. Johnson*, 911 F.2d 1357,

16   1361 (9th Cir. 1990); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977).[2]

17         For a court to exercise personal jurisdiction over a defendant consistent with due process, that

18   defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance

19   of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v.*

20   *Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted).  In addition, "[t]he defendant's

21   'conduct and connection with the forum State' must be such that the defendant 'should reasonably

22   anticipate being haled into court there.'"  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)

23   (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

24

25

26   ─────────────
     [2] California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process
27   requirements, and therefore the jurisdictional analyses under state law and federal due process are the
     same.  *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  And
28   although Plaintiff did not plead nationwide jurisdiction under Rule 4(k)(2), the Rule 4(k)(2) analysis
     collapses into due process and is therefore addressed with Plaintiff's other jurisdictional claims.

1    Courts "recognize[] two types of personal jurisdiction: 'general' (sometimes called 'all-
2    purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers
3    Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting
4    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).

5    In its original complaint, Plaintiff only alleged general jurisdiction over Defendant. *See* ECF
6    No. 1 ¶¶ 6-7.  Defendant specifically pointed out this omission in its first motion to dismiss. *See* ECF
7    No. 22 at 5-6.  Plaintiff continues to only allege general jurisdiction over Defendant in the FAC. *See*
8    ECF No. 31 ¶¶ 6-22.  Thus, this Court should consider *only* general jurisdiction and *not* specific
9    jurisdiction over Defendant. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (considering
10   only the type of jurisdiction alleged by the plaintiff and refusing to consider the other type of
11   jurisdiction) (internal citations omitted); *see also DocuSign, Inc. v. Clark*, No. 21-CV-04785-WHO,
12   2022 WL 2136071, at *3 n.1 (N.D. Cal. June 14, 2022) (same); *Sec. Alarm Fin. Enters., L.P. v. Nebel*,
13   200 F. Supp. 3d 976, 983 (N.D. Cal. 2016) (same).

14   Nevertheless, the Court has neither general nor specific personal jurisdiction and Plaintiff's
15   First Amended Complaint (Counts 1-4) must therefore be dismissed pursuant to Rule 12(b)(2).

16   ### 1.    This Court Lacks General Jurisdiction Over Defendant

17   General jurisdiction exists where a defendant is physically present in the state or where a
18   defendant's activities in the state are so "continuous and systematic" such that the contacts
19   "'approximate physical presence' in the forum state." *See Schwarzenegger*, 374 F.3d at 801 (internal
20   citation omitted).  "But 'only a limited set of affiliations with a forum will render a defendant amenable
21   to' general jurisdiction in that State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (internal citation
22   omitted).  General jurisdiction is typically reserved for entities incorporated or with a principal place
23   of business in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("The paradigm all-
24   purpose forums for general jurisdiction are a corporation's place of incorporation and principal place
25   of business.").  "To determine whether a nonresident defendant's contacts are sufficiently substantial,
26   continuous, and systematic, [a court considers] their '[l]ongevity, continuity, volume, economic
27   impact, physical presence, and integration into the state's regulatory or economic markets.'" *Mavrix*
28   *Photo, Inc.*, 647 F.3d at 1224 (internal citation omitted).

Here, Defendant is not physically present in California or the United States.  As Plaintiff states in the FAC, Defendant "is a Japanese corporation," organized under the laws of Japan, headquartered and "having a principal place of business" in Tokyo, Japan.  ECF No. 31 ¶ 3; *see* Tsunoda Decl. ¶ 9. Defendant's only physical presence is at its business address in Tokyo, Japan.  *See* Tsunoda Decl. ¶¶ 9, 11-13.  Defendant is not incorporated anywhere in the United States, is not qualified to do business in California or the United States and does not maintain a registered service agent in California or the United States.  *Id.* ¶¶ 11, 13.  Defendant has no branch offices or comparable facilities in California or the United States and has no telephone listing or mailing address in California or the United States.  *Id.* ¶ 12.  Defendant has no officers, directors, or employees residing or domiciled in California or the United States.  *Id.* ¶ 16.  Defendant hires no employees in the United States or California.  *Id.* ¶ 17.  Defendant has no bank accounts or other tangible personal or real property in California or the United States.  *Id.* ¶ 18.  In short, Defendant has no physical presence in California or the United States.  *Id.* ¶ 19.

Nor has Plaintiff pled contacts "so 'continuous and systematic'" so as to approximate Defendant's physical presence in the forum.  ECF No. 31 at ¶¶ 6-22.

First, Plaintiff alleges general jurisdiction over Defendant based on the fact that Defendant "has law firm and business *customers*" who have offices, operations, contracts, employees, and business partners in California.  *Id.* ¶ 6 (emphasis added).  None of these *third-party contacts* establishes that *Defendant* is "at home" in the forum.  For example, in *Mavrix Photo*, the Ninth Circuit held that the defendant's use of third parties to "advertise jobs, hotels, and vacations in California on its website," "sell tickets to California events on its website[,]" and "design its website," in addition to the defendant's "business relationships with a California-based national news organization, an Internet advertising agency, and a wireless provider" were insufficient to establish general jurisdiction where defendant had "no offices [] or staff in California," was "not registered to do business in the state," had "no registered agent for service of process," and paid "no state taxes."  647 F.3d at 1225. In fact, the jurisdictional facts presented in *Mavrix* were *stronger* than those here because, unlike the defendant in that case, Defendant here has *no* business relationships with California-based organizations.

Second, Plaintiff states that Defendant "advertises its NDA service in English" on Twitter. ECF No. 31 ¶ 6. A single Tweet untethered to any specific geography does not make Defendant "at home" in California or the United States. *See Stohl v. Magic Mountain, LLC*, No. 17-cv-01858, 2019 WL 498993, at *4–5 (E.D. Cal. Feb. 8, 2019) (defendant's "nationwide advertising presence" and "website and social media platforms that are accessible" in the forum were "insufficient to establish general jurisdiction as they do not render [d]efendant 'at home'" in the forum); *see also Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C 13-575, 2013 WL 2355446, at *3 (N.D. Cal. May 29, 2013) (advertisements in national magazines, a passive website, and accounts on Facebook and Twitter did not constitute "substantial" nor "continuous and systematic" contacts).

Third, Plaintiff alleges that Defendant's "executives visit California" for business trips and events. ECF No. 31 ¶ 6. Defendant can identify only two trips made to California by its employees. *See* Tsunoda Decl. ¶ 40. This is insufficient to conclude that Defendant is essentially a California resident. *See Urica, Inc. v. Pharmaplast, S.A.E.*, Case No. CV 11-02476, 2013 WL 12123305, at *5 (C.D. Cal. Jan. 10, 2013) (finding six business trips insufficient because "[o]ccasional business trips to a state do not constitute the type of continuous and systematic contacts required for a court to exercise general jurisdiction over a defendant.").

Fourth, Plaintiff claims that Defendant is "recruiting employees who are licensed lawyers in California" and points to Mr. Okura's hiring. ECF No. 31 ¶¶ 7-9. However, recruitment alone does not confer general jurisdiction. *See Selhorst v. Alward Fisheries, LLC*, No. C-11-3266, 2011 WL 4974568, at *3 (N.D. Cal. Oct. 19, 2011) (rejecting plaintiff's argument that "[d]efendant's recruitment of [p]laintiff in 2007, 2008, and 2009" subjected defendant to general jurisdiction in California because "other than the recruitment of [p]laintiff from California, [p]laintiff cannot point to any other contacts between [d]efendants and California."). As Plaintiff states in the FAC, Defendant's job postings[3] contained the express disclaimer: "This is not a cross-border full-remote position, and you are required to come to Japan." ECF No. 31 ¶ 20. Each job opening expressly identified the "Location" of employment (also denoted by "Place of Work") as Defendant's Tokyo

---

[3] The one posting that lacked the disclaimer expressly stated that the "Location"/"Place of Work" is Defendant's Tokyo headquarters. ECF No. 31 ¶ 20 n.35.

headquarters.  *Id.*  Mr. Okura was hired by a third-party, Japanese employment agency and pursuant to an online application written entirely in Japanese and containing these disclaimers.  Tsunoda Decl. ¶¶ 48-49.  Mr. Okura was hired to lead an *exploratory* project analyzing and assessing a *potential* foreign expansion into the United States.  *Id.* ¶ 51.  Mr. Okura's work was entirely exploratory.  *Id.* ¶ 52.  Neither he nor Defendant had, nor were they actively setting up, a California or United States office location during his employment.  *Id.*  On hiring, Mr. Okura traveled to and worked out of Defendant's Tokyo office for the entirety of his three-month tenure.[4]  *Id.* ¶ 53.  Pursuant to the terms of his employment agreement, Mr. Okura was expected to work full-time out of the Japanese office.  *Id.* ¶ 54.  Mr. Okura's pre-employment residence and work in Santa Clara County and his post-employment alleged residence in San Francisco (per LinkedIn) are grossly insufficient to make Defendant "at home" in California.  *See Nelson v. Fluoropharma Med., Inc.*, No. 12-CV-2674 BEN (WVG), 2013 WL 12097687, at *3 (S.D. Cal. May 7, 2013) (finding no general jurisdiction where, during the relevant period, (1) defendant's executive and three members of defendant's advisory board were California residents, (2) a couple of board and/or business development meetings were held in the business executive's home, (3) defendant's website was accessible to Californians, (4) an extension to an existing agreement was executed in California, and (5) defendant's CEO planned to attend an industry conference in California).

Fifth, Plaintiff claimed that Defendant "extensively advertises on Google and has spent millions of dollars in Google advertising over the years to build its brand."  ECF No. 31 ¶ 9.  This is insufficient to establish general jurisdiction.  *See Freeconference.com, Inc. v. Power*, No. C07-01306 CW, 2007 WL 9735454, at *4 (N.D. Cal. July 2, 2007) ("Signing up over the internet with Google for ad placement services is too tenuous and insubstantial a contact to support general jurisdiction").

Sixth, Plaintiff cites to several statements made by Defendant at a June 23, 2022 press conference held in Japan.  ECF No. 31 ¶ 10.  At the press conference, Defendant gave precatory remarks about Defendant's wish to someday expand its business internationally in the future.  Tsunoda Decl. ¶ 60.  Defendant also spoke about the opportunities and pitfalls of expanding to countries like

---

[4] Mr. Okura has apparently failed to update his LinkedIn profile to account for his departure.  Mr. Okura was only employed from March to June 2022.  Tsunoda Decl. ¶¶ 48, 56.

SPECIALLY APPEARING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT
CASE NO. 3:22-CV-03724-TLT

the United States.  *Id.* ¶ 61.  Defendant did not claim that it presently operated in the United States or sold services in the United States under the LEGALFORCE trademark, because it does not.  *Id.* ¶¶ 62-63.  Nor did Defendant indicate that it would expand its services to the United States using the LEGALFORCE trademark.  *Id.* ¶ 64.  These statements demonstrate that Defendant was *not* present in California or the United States as of June 23, 2022 and was only *considering* a possible *future* expansion into the United States (and not necessarily under the LEGALFORCE mark).  This is insufficient to establish jurisdiction.  *See Green v. Brightestyoungthings.com*, No. LACV1401447JAKSSX, 2014 WL 12569350, at *3 (C.D. Cal. Sept. 24, 2014) (declining to find general jurisdiction where defendant's co-founder stated "we toy with expansion (and have done events In Baltimore, LA, and some other locations)" because "[o]ne statement made by the co-founder of BYT during an interview that it hosted an event in Los Angeles, does not meet the high standards for exercising general jurisdiction").

Seventh, Plaintiff claimed that Defendant "began actively talking to American press describing its entry into the United States in June 2022."  ECF No. 31 ¶ 10-11.[5]  Third-party activity by independent news organizations is insufficient to confer general jurisdiction.  *Mavrix Photo, Inc.*, 647 F.3d at 1225.  And all of the press identified by Plaintiff in the FAC (whether depicted on Defendant's website or separately located by Plaintiff) recognized Defendant's *Japanese* market success.  *See* ECF No. 31  ¶¶ 10 n.18-20, 14, 15 n.22, 16.  Specifically, each article reported on the same June 23, 2022 press conference that took place in *Tokyo* and resulted in several reputable, international venture capital groups (including SoftBank, Sequoia – China, Goldman Sachs, World Innovation Lab, Mizuho

---

[5]  Plaintiff's citations are inherently unreliable.  Plaintiff cited to Japanese articles published exclusively in Japanese, yet Plaintiff provides no authenticated or official translations and does not state the basis for the translations provided in the FAC.  Several of the quoted sentences in the FAC do not appear in the Google-translated version of these websites.  Declaration of Morgan Smith ("Smith Decl.") ¶¶ 2-5.  Moreover, several of the quoted sentences in the FAC appear to be characterizations, rather than direct quotes.  *See, e.g.*, ECF No. 31 ¶¶ 11 (where the quoted "orange" is not coming from any source), 17 (where the quoted "US entry" is not present in the cited webpage).

Capital, and Mitsubishi UFJ Capital) investing in Defendant's *Japanese* business through Series D financing.[6]  *See id.*

Eighth and finally, Plaintiff alleged that Defendant created and delivered presentations to investors that contained slides featuring the color orange.[7]  *Id.* ¶¶ 11-12.  These presentations were delivered from Defendant's Tokyo office (Tsunoda Decl. ¶ 59) and, in any case, the delivery of a single PowerPoint presentation in the forum will not confer general jurisdiction.  *See Silicon Econ., Inc. v. Fin. Acct. Found.*, No. 10-CV-01939-LHK, 2010 WL 4942468, at *3 (N.D. Cal. Nov. 24, 2010) ("The fact that [defendant's] representatives sometimes travel to California to give presentations or to host meetings is not a sufficient basis to establish general jurisdiction.").

In sum, none of Plaintiff's allegations confer general jurisdiction over Defendant.

### 2.   This Court Lacks Specific Jurisdiction Over Defendant Because Defendant Has No Suit-Related Forum Contacts

Just as this Court lacks general jurisdiction over Defendant, the Court also lacks specific jurisdiction.  Specific jurisdiction is proper when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  Whether a court has specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal quotations omitted).

The Ninth Circuit has adopted a three-prong test requiring the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair.  *Schwarzenegger*, 374 F.3d at 802.  It is the plaintiff's burden to plead allegations satisfying the first two prongs.  *Id.*  Even

---

[6] Plaintiff alleged that two Yahoo! – Japan articles related to the same "press conference held on [June 23, 2022]," but the links included in the FAC are broken and direct to pages that do not or no longer exist.  *See* ECF No. 31 ¶ 10, n.20; Smith Decl. ¶¶ 4-5.

[7] Plaintiff has not pled any trade dress infringement claims or the requisite showing of ownership and secondary meaning required to have rights in its alleged orange trade dress.  *See generally* ECF No. 31.  Plaintiff's arguments relating to Defendant's activities involving the color orange are wholly irrelevant to the underlying claims in the FAC and therefore insufficient to confer jurisdiction.

if the plaintiff satisfies that burden, jurisdiction must still be denied if the exercise of personal jurisdiction would not be reasonable and fair. *Id.* The test is conjunctive, and thus the Court may hold that no specific jurisdiction exists if Plaintiff fails to prove either of the first two prongs.

As mentioned above, Plaintiff does not plead specific jurisdiction and therefore concedes that no specific jurisdiction exists over Defendant. *See* Section III.B *supra*. Nevertheless, specific jurisdiction is absent here because Plaintiff cannot show purposeful direction or that its claims arise out of or relate to Defendant's forum-related activities. In addition, the exercise of jurisdiction would not be reasonable or fair.

### a. Defendant Did Not Purposefully Direct Any Tortious Act at California or the United States

Courts often use "purposeful availment" as shorthand to refer to the first prong, but this test includes both purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802 (citing *Harris Rutsky & Co.*, 328 F.3d at 1130). "A purposeful availment analysis is most often used in suits sounding in contract" and "purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* "Trademark infringement is treated as tort-like for personal jurisdiction purposes . . . ." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020)).

To determine purposeful direction, the Court engages in a three-part effects test, first articulated in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant in question: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014), *aff'd*, 771 F. App'x (9th Cir. 2019) (internal quotations omitted). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Id.*

### i. Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). Some examples of intentional acts under Ninth Circuit law include:

1    "engaging in sales transactions," "advertising a product," or "selling an allegedly infringing product."

2    *Id.*  Here, Plaintiff pleaded that Defendant intentionally set up its English-language website with intent

3    to infringe Plaintiff's trademarks.  *See, e.g.*, ECF No. 31 ¶ 52.  However, Plaintiff failed to plead that

4    each of the remaining jurisdictional allegations—e.g., Defendants' clients' customers and contracts in

5    California, a single Tweet, two business trips, recruitment efforts, a Japanese press conference, and

6    retention of client with California attorneys—constituted intentional acts.  Failure to plead Defendant's

7    intent as it related to these remaining acts is sufficient to reject personal jurisdiction based on those

8    activities.  *See AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1232 ("It is the plaintiff's burden to plead

9    allegations satisfying the first two pongs."); *Lang v. Morris*, 823 F. Supp. 2d 966, 969–70 (N.D. Cal.

10   2011) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions

11   unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.") (internal

12   quotations omitted).

13                              **ii.        Express Aiming**

14        "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to

15   have harmed resides in or has strong ties to the forum, because 'the plaintiff cannot be the only link

16   between the defendant and the forum.'"  *Ayla, LLC*, 11 F.4th at 980 (citing *Walden*, 571 U.S. at 285).

17   The "express aiming" analysis "depends, to a significant degree, on the specific type of tort or other

18   wrongful conduct at issue."  *Schwarzenegger*, 374 F.3d at 807.  "For instance, the delivery or

19   consumption of products in the forum state that are 'random,' 'fortuitous,' or 'attenuated' do not

20   satisfy the express aiming analysis."  *AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1233.  "[S]omething more—

21   conduct directly targeting the forum—is required to confer personal jurisdiction."  *Ayla, LLC*, 11 F.4th

22   at 980 (internal quotations omitted) (modification in original).  Put another way, where the forum state

23   is the "focal point both of the [conduct] and of the harm suffered," jurisdiction is proper.  *Calder*, 465

24   U.S. at 789.

25        None of Plaintiff's alleged jurisdiction-establishing acts fulfill the "express aiming"

26   requirement and each is too "random, fortuitous, or attenuated" to meet this burden.

27        First, Plaintiff's claim that the acts of *third parties* (including Defendant's clients' activities,

28   activities by independent online news publishers, and the unidentified law firm clients with California-

SPECIALLY APPEARING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT
CASE NO. 3:22-cv-03724-TLT

licensed attorneys) are too attenuated and shine no light on whether *Defendant* specifically took aim at California or the United States for the purported trademark infringement and cybersquatting.

Second, Defendant's Twitter post and Google pay-per-click advertising are equally attenuated. The Twitter post was not geographically restricted to California or United States and was not by its express language directed or aimed at California or United States residents.  Tsunoda Decl. ¶¶ 34-35. And Defendant's Google ad placement occurred wholly within Japan, not California or the United States.  *Id.* ¶ 66.

Third, Defendant could only identify two trips made to California by its employees, both of which were unrelated to the LEGALFORCE brand, did not involve the promotion or advertisement of the LEGALFORCE mark, did not use or display the LEGALFORCE mark or logo, and were not for the purposes of entering any contracts or soliciting business with Californian individuals or entities. *Id*. ¶ 40-42.  These trips do not constitute express aiming.

Fourth, Plaintiff claimed that Defendant is "recruiting employees who are licensed lawyers in California."  ECF No. 31 ¶ 7.  Like the other jurisdictional facts, this recruitment was also too random, fortuitous, or attenuated to be relevant.  Defendant lists open positions online and sometimes applicants from parts of the world outside Japan will apply.  Tsunoda Decl. ¶ 43.  Defendant expects all of its employees, including new hires, to reside in Japan, work at the Tokyo office, and provide services to Japanese clients.  *Id.* ¶ 44.

### iii.        Foreseeable Harm

"The third and final prong of the purposeful direction inquiry is whether the defendant knew the brunt of the harm is likely to be suffered in the forum state."  *AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1237.  In a trademark infringement suit, where a plaintiff uses its trademark in a state, and the defendant subsequently infringes that trademark in the same state, it is foreseeable that "any infringement of those marks would create an injury which would be felt mainly in [that state]." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

Here, Plaintiff failed to establish the situs of any infringement or resulting confusion.  As discussed previously, Defendant uses its marks wholly in Japan and Plaintiff failed to plead that

Defendant has any use in commerce in the United States.  That any harm would occur in the United States was completely unforeseeable.

        **b.**        **Plaintiff's Claims Do Not Arise Out of Defendant's Alleged Forum-Related Activities**

Plaintiff bears the burden of demonstrating that Plaintiff's claims arise out of or relate to Defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d at 800, 802.  The United States Supreme Court has repeatedly reiterated that it is "the defendant's suit-related conduct [that] must create a substantial connection with the forum." *Walden*, 571 U.S. at 285.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *see also Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to those sales.*") (emphasis added).  The Ninth Circuit applies a "but for" test to analyze the "arises out of" requirement.  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).  Under this inquiry, a "plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred."  *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1101 (S.D. Cal. 2018) (quotation marks omitted).

Plaintiff's claims and injuries relate to a purported trademark infringement of LEGALFORCE occurring in California.  As a result, Plaintiff brought this action against Defendant alleging trademark infringement in violation of federal and California common law (Counts 1, 2, and 4) and cybersquatting in violation of federal law (Count 3).  ECF No. 31 ¶¶ 50-99.  Plaintiff failed to show how the claims arose out of Defendant's alleged forum contacts.

First, Plaintiff fails to connect Defendants' clients' (i.e., third-party) forum contacts to the underlying trademark infringement and cybersquatting claims.  These contacts, untethered to Plaintiff's causes of action, provide no basis for haling Defendant into court in California of the United States.  *Walden*, 571 U.S. at 285.

Second, Plaintiff failed to connect the Twitter post, Google advertising, or press coverage to its purported injury stemming from the alleged trademark infringement or cybersquatting occurring in

California or the United States.  The Ninth Circuit requires but-for causation, and this general pleading format is insufficient.  *San Diego Cty. Credit Union*, 325 F. Supp. 3d at 1101.

Third, Plaintiff failed to connect the alleged business trips to its infringement and cybersquatting claims.  *See Harris Rutsky & Co.*, 328 F.3d at 1130 ("The physical contacts—approximately forty business trips over a five-year period—do not of themselves weigh in favor of an exercise of specific jurisdiction because they are not related to the claims made against B & C.").

Fourth, and similar to the above points, Plaintiff does not connect Defendant's alleged recruiting to the infringement of its trademarks or to its cybersquatting claim.  Plaintiff can only point to the existence of an English version of Defendant's website (which loads by default in Japanese) as the source for its injuries under all claims.  ECF No. 31 ¶ 6, 52-53, 69-70, 74-78, 97.  But as discussed previously, Plaintiff cannot rely on Defendant's operation of a website alone to establish that Defendant used the LEGALFORCE mark in United States commerce.  *TIBCO Software Inc.*, 2021 WL 4477902, at *3.

### c.    Exercising Jurisdiction Over Defendant Is Not Reasonable or Fair

Under *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, the court must consider seven reasonableness factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  905 F.3d 597, 607 (9th Cir. 2018).  "No one of the factors is dispositive in itself.  Instead, we are to balance all seven."  *Harris Rutsky & Co.*, 328 F.3d at 1132.  All factors weigh in Defendant's favor or are neutral and therefore the exercise of jurisdiction is unreasonable and unfair.

First, the purposeful interjection factor is "analogous to the purposeful direction analysis discussed above."  *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).  Because Defendant did not purposefully direct its activities at California residents, this factor weighs in favor of Defendant.

Second, "[w]e examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Id.* "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* Here, defending a lawsuit in California or the United States would cause Defendant significant hardship. Tsunoda Decl. ¶ 37. The 12+ hours in travel from Tokyo to San Francisco to participate in this litigation would cause financial and emotional burden on Defendant. *Id.* ¶ 38. And the 16-hour time difference between California and Japan would interfere with Defendant's ability to communicate effectively with its counsel. *Id.* ¶ 39. This factor weighs in Defendant's favor.

Third, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Sinatra*, 854 F.2d at 1199. Defendant, as a Japanese entity, should not be haled into court in the United States given its lack of forum contacts.

Fourth, "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Sinatra*, 854 F.2d at 1200. Since California is Plaintiff's principal place of business, this factor would normally weigh in its favor. However, Plaintiff failed to establish a ripe case or controversy and therefore there is no infringement that requires redress. As a result, this factor is neutral.

Fifth, "[t]his factor focuses on the location of the evidence and witnesses." *Panavision Int'l, L.P.*, 141 F.3d at 1323–24. However, "[i]t is no longer weighed heavily given the modern advances in communication and transportation." *Id.* Therefore, this factor is neutral.

Sixth, maintaining a suit outside Japan would be inconvenient and costly for Defendant, a start-up business, for the reasons articulated in factor 2. This factor weighs in favor of Defendant.

Seventh and finally, Plaintiff "has not demonstrated the unavailability of an alternative forum" or that an alternative forum "would be costly and inconvenient" for it. *Panavision Int'l, L.P.*, 141 F.3d at 1324. This factor is neutral or weighs slightly in Defendant's favor.

### C.   Counts 1-4 Should Be Dismissed for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to plead enough facts to state a claim to relief that is plausible on its face. *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828,

835 (9th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, a plaintiff's factual allegations must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### 1.    Plaintiff Failed to State a Claim as to Claims 1, 2, and 4 Because Defendant Does Not Use LEGALFORCE in United States Commerce

An essential element of federal and common-law trademark infringement and unfair competition claims is that the defendant "used" the allegedly infringing mark "in commerce."  *See* 15 U.S.C. §§ 1114, 1125(a); *see also Iglesia Ni Cristo v. Cayabyab*, Case No. 18-CV-00561, 2019 WL 3997474, at *9 (N.D. Cal. Aug. 23, 2019) ("[P]laintiff must show that the defendant either used the trademark in interstate commerce – that is, caused goods or service interstate commerce – or that the defendant used the trademark in interstate commerce in a manner that affects interstate commerce.") (citing *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 993 (9th Cir. 1982)); *Name.Space, Inc.*, 795 F.3d at 1124 (federal trademark infringement and unfair competition claims both require a use in commerce).

Here, Plaintiff has not and cannot plead that Defendant used the LEGALFORCE mark in commerce in the United States.  *See generally* ECF No. 31; Tsunoda Decl. ¶ 21.  As discussed in Section III.B.2 above, Defendant's conduct occurs wholly within Japan.  Plaintiff's sole allegation that Defendant used the mark in the United States stems from the accessibility of Defendant's English language version of its website in the forum.  *See* ECF No. 31 ¶¶ 50-62, 65-72, 94-99.  But the mere operation of a website without more cannot amount to use in commerce in the United States and therefore cannot form the basis of trademark infringement or unfair competition claims.  *See TIBCO Software*, 2021 WL 4477902, at *3.

1    The only way for Plaintiff's claims to succeed is if it relies on Defendant's trademark use

2    occurring wholly outside the United States as the basis for its trademark infringement and unfair

3    competition claims.   The Lanham Act may, in limited circumstances, apply extraterritorially, if

4    "(1) the alleged violations [] create some effect on American foreign commerce; (2) the effect [is]

5    sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the

6    interests of and links to American foreign commerce [are] sufficiently strong in relation to those of

7    other nations to justify an assertion of extraterritorial authority."   *Love v. Associated Newspapers, Ltd.*,

8    611 F.3d 601, 612–13 (9th Cir. 2010) (citing *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d

9    1393, 1395 (9th Cir. 1985)).   However, successful extraterritorial application of the Lanham Act

10   generally involves at least some part of the defendant's activities occurring within the United States.

11   *See*, *e.g.*, *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) (defendant purchased watch parts in the

12   United States then assembled and sold counterfeit watches in Mexico); *Trader Joe's Co. v. Hallatt*,

13   835 F.3d 960 (9th Cir. 2016) (defendant's infringing acts in Canada were based on inventory acquired

14   in the United States).

15       The *Love* case is particularly instructive.   There, the Ninth Circuit affirmed dismissal of Love's

16   Lanham Act claims on the grounds that "the Lanham Act cannot be applied extraterritorially to

17   encompass acts committed in Great Britain."   *Id.* at 612.   The court held that "[t]he first two criteria"

18   of the *Star-Kist Foods* test "may be met even where all of the challenged transactions occurred

19   abroad," but only if there is "monetary injury in the United States to an American plaintiff."   *Id.* at 613

20   (internal citations omitted).   It was undisputed in *Love* that "all relevant acts occurred abroad" and that

21   "for the Lanham Act to apply, Love must have presented evidence that the complained of actions

22   caused him monetary injury in the United States."   *Id.*   The court found that Love's fact declaration

23   claiming confusion and lost ticket sales resulting from several allegedly infringing activities was

24   insufficient because "it is too great of a stretch to ask us, or a jury, to believe that such confusion

25   overseas resulted in the decreased ticket sales in the United States."   *Id.*   The court concluded that

26   "[b]ecause Love failed to present any evidence that the alleged Lanham Act violations affected United

27   States commerce in any way, we affirm dismissal of all three claims on that ground."   *Id.*   The court

28   did not reach the merits of the third criteria.

Here, Plaintiff did not (and cannot) allege sufficient facts to establish that extraterritorial application of the Lanham Act would be proper.  The first and second criteria cannot be met where no part of Defendant's actions occurred in or have a nexus to the United States, as discussed in detail above.  Under *Love*, this would require Plaintiff to establish actual monetary injury occurring within the United States, which Plaintiff has not done.

Even if the first and second criteria of the test could be met, Defendant fails to meet the third criterion.  Defendant has a valid trademark registration for LEGALFORCE in Japan. Tsunoda Decl. ¶ 47.  On November 19, 2018, Plaintiff attempted, and failed, to oppose the registration in Japan when the Japanese Patent Office upheld LegalForce's Japanese trademark registration on August 5, 2019. *Id.*  Japan has stronger authority here where there are ongoing, parallel disputes.  *See, e.g.*, *Star-Kist Foods, Inc.*, 769 F.2d 1393 (holding extraterritoriality inappropriate when Philippine courts were handling ongoing dispute relating to trademark rights there); *Juicy Couture Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489 (S.D.N.Y. 1989) (finding extraterritorial injunction improper where there was parallel trademark litigation in Hong Kong).

### 2.    Plaintiff Fails to State a Claim as to Claim 3 Because Defendant Has No Bad Faith Intent

Plaintiff failed to allege sufficient facts to support its claim that Defendant "registered and used [its domains] in bad faith."  ECF No. 31 ¶¶ 73-93.  The Anticybersquatting Consumer Protection Act requires a plaintiff plead that the defendant "(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name [that is confusingly similar to another's mark or dilutes another's famous mark]."  *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (citing 15 U.S.C.§ 1125(d)(1)(A)).  "A finding of 'bad faith' is an essential prerequisite to finding an ACPA violation." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 864 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013).  "The ACPA provides a non-exhaustive list of nine factors that a court may consider in determining whether a defendant acted with bad faith intent to profit." *Quatrewave LLC v. de Stefano*, No. CV2007237MWFPJWX, 2020 WL 10758648, at *5 (C.D. Cal. Dec. 2, 2020).  Of particular relevance here are the "prior use of the domain name," "intent to

divert consumers," and "offer to transfer or sell the domain name to the trademark owner for financial gain" prongs.  Each supports dismissal of Plaintiff's ACPA claim.

First, Defendant uses the domain names to conduct lawful business in Japan under Defendant's LEGALFORCE trademark—a mark that it owns in Japan.  Tsunoda Decl. ¶ 47; *see SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. C 11-4991 CW, 2013 WL 4528539, at *23 (N.D. Cal. Aug. 23, 2013), *amended in part*, No. C 11-4991 CW, 2013 WL 6157208 (N.D. Cal. Nov. 22, 2013), *and aff'd*, 650 F. App'x 473 (9th Cir. 2016), *on reh'g en banc*, 839 F.3d 1179 (9th Cir. 2016) (stating the prior use factor "recognizes that the legitimate use of the domain name in commerce is a good indicator of a good faith intent" and finding good faith prior use where "Defendants have used the websites for bona fide offerings of goods outside of the United States").  Second, Plaintiff's conclusory allegation that Defendant registered its website "to redirect" Plaintiff's potential market is insufficient to plead that Defendant intends to divert customers.  Defendant uses the domain names to conduct its Japanese business under a mark it owns in Japan.  Tsunoda Decl. ¶ 47.  Third, Plaintiff does not allege that Defendant sought to extort money from Plaintiff in exchange for the domain name, because Defendant never did.  Plaintiff has therefore failed to plead that Defendant registered its domains in bad faith and thus Claim 3 must be dismissed for failure to state a claim.

## D.     Leave to Amend Would Be Futile

When dismissing a complaint for failure to state a claim, a district court need not grant leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotation marks omitted).  Leave to amend is generally denied if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  The Court may deny leave to amend a complaint on a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."  *See Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896–97 (N.D. Cal. 2015) (dismissing first amended complaint with prejudice where the FAC "failed to cure the timeliness deficiencies" previously identified and leave to amend would "unduly prejudice [defendant] by requiring [defendant] to file repeated motions to dismiss on timeliness grounds.").

Plaintiff cannot remedy the issues detailed above by amending its complaint.  It has already tried and failed because Defendant has never used its LEGALFORCE mark in commerce, Defendant has not engaged in any activities that would signal that use is imminent, and Defendant is not subject to personal jurisdiction in this Court.  The facts that Plaintiff would have to plead to save the claims do not exist and leave to amend would therefore be futile.  As such, all Counts should be dismissed with prejudice.  *See Innospan Corp. v. Intuit, Inc.*, No. C 10-04422, 2011 WL 856265, at *3 (N.D. Cal. Mar. 9, 2011) ("Leave to amend may be denied, however, if the proposed amendment is futile or would be subject to dismissal." (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991))).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss without leave to amend.

Dated:  November 7, 2022                Respectfully submitted,


By:   */s/ Morgan Smith*
Morgan E. Smith
Matthew C. Samet
Daniel R. Mello
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:    (650) 849-6600
Facsimile:    (650) 849-6666

B. Brett Heavner (*pro hac vice*)
Yinfei Wu (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400

Naoki Yoshida (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP**
33rd Floor, Shiroyama Trust Tower
3-1, Toranomon 4-chome

SPECIALLY APPEARING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT
CASE NO. 3:22-cv-03724-TLT

Minato-ku, Tokyo 105-6033 Japan
Telephone:      011-813-3431-6943
Facsimile:       011-813-3431-6945

*Attorneys for Specially Appearing Defendant*
*LEGALFORCE, INC.*