Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:     (650) 965-8731
Facsimile:      (650) 989-2131

Attorney for Plaintiff,
LegalForce RAPC Worldwide P.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.<br><br>Plaintiff,<br><br>v.<br><br>LEGALFORCE, INC., a Japanese corporation,<br><br>Defendant. | Case No. : 3:22-cv-03724-TLT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LEGALFORCE, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        November 7, 2023<br>Time:       2:00 PM<br>Dept.:       Courtroom 9<br>Judge:      Honorable Trina L. Thompson |

# TABLE OF CONTENTS

**I. INTRODUCTION**                                                              **3**

**II. PROCEDURAL BACKGROUND**                                                    **3**

**III. RELEVANT LAW**                                                           **4**

**IV. ARGUMENT**                                                                 **6**

A. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant used the Plaintiff's LEGALFORCE trademark within commerce in the United States while advertising and selling $100 million dollars of securities to American investors.                    6

B. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant filed for a U.S. trademark for the LF LegalForce brand, and demonstrated an imminent plan to launch within the United States using the LegalForce brand.                             8

C. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant admitted through a Press Release it commissioned on April 24, 2023 that it has customers in the United States including in this District.                                                  10

D. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant admitted in depositions as alleged in the second amended complaint to significant activities within the United States.                                                               11

E. Plaintiff's has a valid basis to Allege Infringement Based on use of the LegalOn mark because of the visual similarity, the contextual similarity, and inference similarity within the same software and legal technology trade channels.                               14

F. The USPTO has recently determined that the LEGALON mark is possibly confusingly similar with the Plaintiff's registered marks.                                           18

G. Plaintiff has established that this Court has Personal Jurisdiction over the Defendant.    19

H. The cyber piracy cause of action pleaded in the Second Amended Complaint does not require use in commerce by the Defendant.                                             21

**V. CONCLUSION**                                                               **23**

Plaintiff's Opposition To Defendant LegalForce, Inc.'s Motion To Dismiss Plaintiff's Second  Amended Complaint;
Memorandum Of Points And Authorities In Support Thereof
Case No.:3:22-cv-03724-TLT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

      Defendant's motion to dismiss the Plaintiff's second amended complaint asks the Court

4

to review and consider evidence beyond the second amended complaint (declarations attached

5

thereto) without converting the motion to dismiss into a motion for summary judgment under

6

Rule 12(b)(1) by attaching three declarations.[1]

7

      In addition, the Defendant claims there is a lack of personal jurisdiction over the

8

Defendant in this case.  However, this narrative is refuted by the fact that the Defendant has

9

filed a LF trademark in the United States, the Plaintiff's two declarations attached hereto, and

10

the factual allegations in this opposition.

11

**II.    PROCEDURAL BACKGROUND**

12

      On June 24, 2022, Plaintiff filed suit against Defendant for: (1) trademark infringement

13

pursuant to 15 U.S.C. § 1114(a); (2) trademark infringement under 15 U.S.C. § 1125(a); (3)

14

cyberpiracy pursuant to 15 U.S.C. § 1125(d)(1)(A); and (4) trademark infringement pursuant to

15

California Common Law. ECF No. 1.

16

      After Defendant filed a motion to dismiss the original Complaint on October 22, 2023,

17

ECF No. 22, Plaintiff responded by filing its First Amended Complaint ("FAC") on October

18

23, 2023, ECF No. 32. Then, on November 7, 2022, Defendant filed a motion to dismiss the

19

FAC for: (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

20

12(b)(1); (2) lack of personal jurisdiction pursuant to Rule 12(b)(2); and (3) failure to state a

21

claim pursuant to Rule 12(b)(6). ECF No. 39.

22

      While the motion to dismiss the FAC was pending, the Court enabled the Plaintiff to

23

24

[1] The declaration of David A. Makman accompanying the Motion to Dismiss the second

25

amended complaint falsely states that the website of LegalOn US is at www.legalontechnologies.com.  Decl. of David A. Makman, ¶ 14]. In reality, there is no

26

website visible at this URL.Abhyanker Decl.¶ 6, 44; Ex. 7-8.  Plaintiff's counsel disputes Mr. Makman's characterizations of statements attributed to them in his declaration, including but

27

not limited to his distortions on factual allegations within the plain reading of the second amended complaint, to which support is cited in the attached Declaration of Abhyanker and

28

Tata, along with deposition transcript excerpts (Abhyanker-Decl-Ex. 2 and Abhyanker-Decl-Ex. 5).

1   engage in discovery on jurisdictional grounds despite objections from the Defendant at the

2   Initial Case Management Conference on November 3, 2022. ECF No. 38. Thereafter, Plaintiff

3   took depositions of Defendant's two senior executives including Nozomu Tsunoda (President

4   and Representative Director) and Jean-Pierre Biard (Head of Global Strategy) on January 25

5   and January 26, 2023, respectively.

6        On April 12, 2023, the Court dismissed the FAC in its entirety because it reasoned that

7   the Plaintiff had not fully demonstrated that its claims were ripe and why this Court had

8   personal jurisdiction over the Defendant. ECF No. 92.   Because of these foundational

9   questions, this court did not determine the plausibility of the Plaintiff's claims citing *Vermont*

10  *Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778–79 (2000).  The Court granted

11  Plaintiff leave to amend.[2] *Id*.

12       On April 25, 2023, Plaintiff filed the SAC. ECF No. 93.   On May 16, 2023, the

13  Defendant filed its Motion to Dismiss the SAC.  ECF No. 96.

14  **III.**   **RELEVANT LAW**

15      **A. 12(b)(1)**

16       Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction.

17  Fed. R. Civ. P. 12(b)(1). As such, "lack of Article III standing requires dismissal . . . under

18  Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th

19  Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must

20  have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

21  defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*

22  *v. Robins*, 578 U.S. 330, 338 (2016). These three elements are referred to as injury-in-fact,

23  causation, and redressability, respectively. *Planned Parenthood of Greater Was. & N. Idaho v.*

24  *U.S. Dep't of Health & Human Servs*., 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as

25

26

---

27  [2] The Plaintiff requests and understands that the leave to amend is provided under 15(d) given
    the acts of the Defendant of forming a U.S. entity, hiring staff for that U.S. entity, renaming its

28  business, having the U.S. employees come to Japan for onboarding, the subsequent press
    releases, and more, all of which transpired after the filing of the initial complaint, and some of
    which transpired after the first amended complaint.

the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338.

A Rule 12(b)(1) jurisdictional attack may be factual or facial. See *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id*.

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B. 12(b)(6)**

Under Rule 12(b)(2), a court must dismiss an action where it does not have personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (citing Cal. Civ. Proc. § 410.10 (West 2004)). Under the Constitution, personal jurisdiction is permitted by a long-arm statute that does not violate federal due process. *Id*. Due process requires sufficient minimum contacts with the forum that "do[] not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation marks omitted). Personal jurisdiction takes two forms: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

1

2

3

4

5

6

7

8

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. However, this demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). As the Ninth Circuit noted, "we may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations and quotations omitted).

9

**C. 12(b)(6)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting Twombly, 550 U.S. at 556). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678.

25

**IV.   ARGUMENT**

26

27

28

**A. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant used the Plaintiff's LEGALFORCE trademark within commerce in the United States while advertising and selling $100 million dollars of securities to American investors.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant advertised infringing LegalForce marks to solicit American investors in the United States when advertising its equity shares for purchase within the United States in 2022 with the specific purpose of expanding the sales of its products and services within the United States from its early start in 2020. Complaint ¶ 18. American investors including World Innovation Labs ("WiL"), Goldman Sachs, and Sequoia Capital actually purchased millions of dollars of Defendant's stock in response to its advertisements using the LEGALFORCE marks in the summer of 2022. *Id.*  Even the equity financing documents of Defendant, including the invoices in the form of stock purchase agreements demonstrate actual sales of equity shares in Defendant's company to American investors in 2022 advertised using the LEGALFORCE mark, with email body and supporting documents displaying the  LEGALFORCE mark with the logo in the infringing '079 Application in conjunction with the sale of securities. *Id.*  The Defendant does not dispute this allegation in its motion to dismiss the second amended complaint.

The Plaintiff alleges that this conduct of advertising and then duping American investors into purchasing equity shares in a Japanese company using infringing American trademarks constitutes use in commerce within the definition of the Lanham Act and under the relevant case law because the alleged violations create a significant effect on American foreign commerce and the effect is sufficiently great to present cognizable injury to the Plaintiff under the Lanham Act, and the interests of and like to American foreign commerce are sufficiently strong to justify an assertion of extraterritorial authority when a Defendant purposefully and intentionally files U.S. trademarks with an imminent intent to expand into the United States and sold equity shares to American investors using the infringing trademark as a business name.   *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612-13 (9th Cir. 2010) (citing *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,* 769 F.2d 1393, 1395 (9th Cir. 1985)).   It would be absurd for example if an American startup company TOYOTA went to Japan, with a specific intent to use the term TOYOTA in Japan by filing a Japanese trademark with the TOYOTA design mark, and successfully raised funds from Japanese investors in Japan while known as TOYOTA, only to change names after being caught in the months after being sued by the

1   Japanese automotive conglomerate to escape liability and continued to keep the ill-gotten gains

2   of equity capital from its bad acts.   The converse cannot be said to be unfair.

3   Notwithstanding, such activity of raising $100 million dollars from investors in the United

4   States using the trademark of the Plaintiff is more the mere operation of a website. See *TIBCO*

5   *Software Inc. v. GatherSmart LLC*, No. 20-cv-06422, 2021 WL 4477902, at *3 (N.D. Cal. Mar.

6   5, 2021).   Therefore, the Defendant indeed has used its infringing LEGALFORCE marks in

7   the United States within commerce.

8   **B. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant filed for
    a U.S. trademark for the LF LegalForce brand, and demonstrated an imminent plan to
9   launch within the United States using the LegalForce brand.**

10      Apart from this, Mr. Tada is a California licensed attorney and a licensed attorney in

11  Japan. Tada Decl. ¶ 1-46. He is a fluent communicator in both English and Japanese.   *Id* at ¶ 8.

12  Mr. Tada testifies that Defendant had imminent plans on using Plaintiff's trademarks within the

13  United States at the time of filing of the Complaint "in connection with a sale of goods or

14  services." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). (Tada Decl. ¶

15  1-46).   Specifically, Mr. Tada explains that the Defendant filed a U.S. trademark application

16  with the USPTO with serial number No. 79347079 for the "LF" LegalForce design mark on

17  December 20, 2021. *Id* at ¶ 8, Tada-Ex. 10.   Notably this LF Legalforce design trademark is

18  filed with the USPTO in the name of the Japanese entity, not the U.S. entity. *Id.* Therefore, the

19  Defendant has purposefully availed itself to U.S. jurisdiction.  Mr. Tada goes on to explain that

20  the Defendant's "LF" LegalForce trademark was active in the United States until just February

21  7, 2023, more than seven months after the Complaint in the instant proceeding was filed.  *Id*

22  By filing a U.S. intent to use trademark application, Defendant admits a bona fide intent to use

23  the LF LegalForce brand in the territory of the United States by operation of law.

24      Moreover, Mr. Tada describes that the Defendant's website continues to display a

25  confusingly similar  version of the Plaintiff's registered marks as late as May 24, 2023 after the

26  Defendant's Motion to Dismiss the Second Amended Complaint was filed in this case on May

27  16, 2023:

28

*Id* at ¶ 34-37, Tada-Ex. 11.

Mr. Tada further testifies that the characters L and F in the design mark portion, and the alphanumeric characters LEGALFORCE are purely in Roman characters, not in Japanese characters are advertised on Defendant's English version website.  *Id* at ¶ 38.

In addition, Mr. Tada describes that the Defendant admits that Defendant raised venture capital funds for the purpose for expansion into the United States when it filed a Japanese lawsuit against the Plaintiff on January 20, 2023.   *Id* at ¶13-14, Tada-Ex. 1.  Specifically, Mr. Tada translates from the Japanese lawsuit from Japanese to English as follows:

> "The Defendant [the Plaintiff in the instant proceeding] filed this lawsuit in the U.S on June 24, 2022, the day after the Plaintiff [the Defendant in the instant proceeding] issued a press release regarding financing for expansion into the U.S."

*Id* at ¶ 14, Red-outline ▫ section, Tada-Ex. 1.

Mr. Tada goes on to explain that Defendant has admitted to having a specific plan to expand into the United States.  *Id* at ¶16, Tada-Ex. 2.  Mr. Tada explains that the Defendant's CEO Nozumu Tsunoda admitted to having a "particular focus on the United States" and to "create a product that is adapted to the U.S. market and contractual practices" as he translates from the Japanese trade press   *Id* at ¶ 17, Red-outline ▫ section, Tada-Ex. 2.   Mr. Tada also explains that the Defendant's executive officer Mr. Akira Ohki admitted that Defendant plans on using the funds raised to expand into the United States.  *Id* at ¶ 21, Red-outline ▫ section, Tada-Ex. 3.  Mr. Tada explains that the Defendant's CEO Nozumu Tsunoda told trade press that it wants to expand to the U.S. market by March 2023.  *Id* at ¶ 24, Red-outline ▫ section, Tada-Ex. 4.

For at least these reasons, Defendant had imminent plans on using Plaintiff's trademarks

1   "in connection with a sale of goods or services." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d

2   672, 677 (9th Cir. 2005) within the United States at the time of filing of the Complaint.

3   **C. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant**
    **admitted through a Press Release it commissioned on April 24, 2023 that it has customers**
4   **in the United States including in this District.**

5

6        Mr. Abhyanker is a California licensed attorney, attached herewith a declaration.

7   Abhyanker Decl.¶ 1-5.  Mr. Abhyanker begins by describing an Press Release by the

8   Defendant published on BusinessWire dated April 24, 2023 months after the depositions he

9   conducted in Japan. *Id*. at ¶ 8-11, Abhyanker-Decl-Ex. . 1.   The Press Release is made on

10  behalf of the Defendant, and not the separate U.S. entity based on a statement that the issuer of

11  the Press Release has a global headquarters in Tokyo, Japan. *Id*. at ¶ 8, Abhyanker-Decl-Ex. .

12  1.   In this press release by the Defendant, the Defendant admits that its customers in the

13  United States include  Turo, OnNeck IT Solutions, ScribeAmerica, and Hans Kim. *Id*. at ¶ 8,

14  Abhyanker-Decl-Ex. . 12.

15       Turo admits through its Senior Contract Manager Alenda Martin that she uses

16  Defendant's products consistently and that the AI picks up critical issues and a public search

17  reveals that Turo is headquartered in San Francisco California at 111 Sutter St, San Francisco,

18  CA  94104; and  does  not  appear  to  have  any  presence  in  Japan. *Id*. at  ¶  13-14,

19  Abhyanker-Decl-Ex. . 1.

20       OnNeck IT Solutions admits through its Director of Legal Affairs Chad Perlov that

21  Defendant's products are used in their contract review process and a public search shows that

22  the company appears to be based in multiple states in the United States, including in Arizona,

23  Colorado, Iowa, Minnesota, Nebraska, Oregon, and Wisconsin but nowhere in Japan.  *Id*. at ¶

24  15-16, Abhyanker-Decl-Ex. . 1.

25       ScribeAmerica admits through its Associate General Counsel Josh Schmand that

26  Defendant's products are used to identify risky terms and helps him edit contracts and a public

27  search reveals that ScribeAmerica  appears to be based in Fort Lauderdale, Florida; but again

28  nowhere in Japan.   *Id*. at ¶ 17-18, Abhyanker-Decl-Ex. . 1.

Hans Kim admits that Defendant's review technology is an implementation that he has seen, and based on his California state bar profile. Hans Kim is a California licensed attorney in Palo Alto, California at 25 Alannah Ct, Palo Alto, CA 94303-3009. https://apps.calbar.ca.gov/attorney/Licensee/Detail/255049.                *Id*.  at  ¶  19-20, Abhyanker-Decl-Ex. . 1.

For at least these reasons, the Defendant has personal jurisdiction in the United States, and more specifically in this county because it has admitted to having customers in the United States, and more specifically in this district.

**D. Plaintiff's Allegations have Factual Basis and are Ripe because the Defendant admitted in depositions as alleged in the second amended complaint to significant activities within the United States.**

Mr. Abhyanker conducted the depositions of Nozomu Tsunoda (President and Representative Director) and Jean-Pierre Biard (Head of Global Strategy) on January 25 and January 26, 2023 in Tokyo Japan, respectively.   Mr. Abhyanker attaches excerpts of these depositions to his declaration (Abhyanker-Decl-Ex. . 2 for Tsunoda, and Abhyanker-Decl-Ex. . 5 for Mr. Biard).   These excerpts support the factual allegations in the  SAC. ECF No. 93.

Specifically, the defendant's CEO, Nozuma Tsunoda admitted that Oki Akira prepared slides for investors during the middle of 2022. *Id*. at ¶ 22, Abhyanker-Decl-Ex. . 2, pg. 58, line 25; pg. 59, lines 1-12. 20-24.   Mr. Tsunoda admitted to recognizing slides that were distributed to the media in conjunction with its fundraising from investors in the middle of 2022 showing a U.S. flag, and a bar chart showing growth to the right both in orange color:




1   *Id* at ¶ 22-23, Abhyanker-Decl-Ex. . 2, pg. 60, lines 21-25; pgs 61, lines 1-25; pg 62,

2   lines 1-24; Ex. 3.

3       When confronted, the Head of Global Strategy Jean-Pierre Biard could not explain why

4   there was an American flag in the slide on Abhyanker-Decl-Ex. . 3. (Abhyanker-Decl-Ex. . 5.,

5   pg. 131, lines 11-25; pg. 132 lines 1-25).   Defendant advertised infringing LegalForce marks

6   to solicit American investors in the United States when advertising its equity shares for

7   purchase within the United States in 2022 with the specific purpose of expanding the sales of

8   its products and services within the United States.  [Abhyanker-Decl-Ex. . 2., pg. 60, lines

9   21-25; pgs 61, lines 1-25; pg 62, lines 1-24, Decl. of Hirofumi Tada, ¶ 18-21, Tada-Ex3].

10      Most of the five U.S. employees of Defendant were recruited and hired while the

11  business was called LegalForce before the name change to LegalOn, and the only exception is

12  the biological son of one of the LF-USA employees, and Defendant began recruiting U.S.

13  licensed lawyers in July 2022 while the business was called LegalForce.  [Abhyanker-Decl-Ex.

14  . 5., pg. 42, lines 20-25; pg. 43 lines 1-8, pg. 35 lines 2-21, pg. 37 lines 18-21, pg. 111 lines

15  7-16; Abhyanker-Decl-Ex. . 2., pg. 37 line 12 to page 43 line 24].

16      The CEO of LF-USA Daniel Lewis was hired when the company was called LegalForce

17  and is supervised by an executive JP Biard at Defendant. [Abhyanker-Decl-Ex. . 5., pg. 52,

18  lines 13-23].   Four out of five employees of LF-USA came to Japan as part of onboarding new

19  employees. [Abhyanker-Decl-Ex. . 5., pg. 42, lines 11-17; pg. 50 lines 7-22].   At all times,

20  Defendant's sole expansion outside of Japan was to the United States  "because the US leads

21  the world in the contract market." [Abhyanker-Decl-Ex. . 5., pg. 143, lines 9-20; pg. 50 lines

22  7-22; pg. 90 lines 22-25, pg. 91 lines 1-18].

23      Defendant leases office space "part of the Japanese entity's contract" at WeWork in San

24  Francisco.      [Abhyanker-Decl-Ex. . 5., pg. 74, lines 12-18].   Defendant's CEO Nozumu

25  Tsunoda has admitted that it has raised not a single dollar of venture funding after the name

26  change to LegalOn (including LegalOn the defendant here), and all of its $130 million funding

27  was raised while the name of Defendant was called LegalForce.    [Abhyanker-Decl-Ex. . 2.,

28  pg. 20, lines 17-25; pg. 21 lines 1-3].  In fact, most of the Defendant's employees were hired

when the Defendant's corporate name was called LegalForce. [Ex. 5., pg. 42, lines 20-25; pg. 43 lines 1-8, pg. 35 lines 2-21, pg. 37 lines 18-21, pg. 111 lines 7-16; Abhyanker-Decl-Ex. . 2., pg. 37 line 12 to page 41 line 6; pg. 41 lines 16-19; pg. 42 lines 1-4].   Nozuma Tsunoda admitted that "English " refers to "American" contracts, and not contracts of the United Kingdom or elsewhere.   [Abhyanker-Decl-Ex. . 2., pg. 40, lines 14-20].

Tsunoda and Biard also admitted that the product names continue to be called LegalForce and LegalForce Cabinet after   December 1, 2022.   [Abhyanker-Decl-Ex. . 5., pg. 92, lines 5-8; pg. 93 lines 17-22; pg. 95 lines 19-22, pg. 96 2-7; Decl. of Hirofumi Tada, ¶ 29-30, Tada-Ex6].   Continuously throughout this period, and at least since February 13, 2019, Defendant's CEO Nozumu Tsunoda has known about Plaintiff's superior rights in the United States because he was aware of the Plaintiff's opposition filed in Japan.   [Abhyanker-Decl-Ex. . 2., pg. 65, lines 18-25; pg. 66 lines 1-3].   Defendant infringed the Plaintiff's LEGALFORCE marks by advertising for sale within interstate commerce software products (e.g., then called "LegalForce" and "LegalForce Cabinet") starting around July 1, 2020 for use with American contracts and sought to hire California or New York licensed attorneys.   [Abhyanker-Decl-Ex. . 2., pg. 38, lines 4-21].

Mr. Tsunoda accompanied Mr. Biard on his trip to the San Francisco Bay Area in July 2022 was for business meetings to confirm potential for a US expansion while the business was called LegalForce, Inc. and the LEGALFORCE was being used, "LegalForce" business cards were handed out, presentations given, and this trip included  meeting with actual and potential customers and investors, as well as recruiting a full time attorney Jeffrey Shimamoto who later accepted full time work at Defendant's company.     [Abhyanker-Decl-Ex. . 5., pg. 53, lines 10-25; pg. 54, lines 1-6; pg. 55 1-25;  pg. 56 1-25; pg. 57 1-25; pg. 58 1-4, 12-25; pg. 64 2-11; pg. 75 22-25; pg. 78 9-25].

JP Biard admitted in their deposition to coming to the United States numerous times for business that included talking to potential partners, users, investors, and employees. [Abhyanker-Decl-Ex. . 5., pg. 72, lines 13-25; pg. 43 lines 21-24].

For at least these reasons, the Defendant has personal jurisdiction in the United States,

and more specifically in this District because it does not offend traditional notions of fair play and substantial justice, because the Defendant has sufficient minimum contacts within this forum, and because the factual allegations in the second amended complaint has at least a plausible chance of success.

**E. Plaintiff's has a valid basis to Allege Infringement Based on use of the LegalOn mark because of the visual similarity, the contextual similarity, and inference similarity within the same software and legal technology trade channels.**

The Defendant does not dispute that it has used its LegalOn mark within the United States. Six out of the seven characters of LegalOn are in the Plaintiff's registered trademarks for LegalForce.  Indeed, the Defendant has filed numerous LEGALON trademarks within the United States. Abhyanker Decl. ¶43, Ex. 6.  Both LEGALFORCE and LEGALON start with the word "Legal."  It is further observed that the names "On" and "Force" are dictionary words and capitalized similarly as second words when used in conjunction with "Legal."  Therefore the visual impression of Defendant's "LegalOn" is confusingly similar to Plaintiff's incontestable rights in "LegalForce."  Moreover, the words "force" and "on" are related in that they both have to do with exerting power or influence.

Force is the physical power to do something, while on is the state of being active or operating. When we say that someone is "forcing" something, we mean that they are using their power to make it happen. When we say that something is "on," we mean that it is active or operating.

In a legal context, the words "on" and "force" can be similar in the sense that they are both frequently used when discussing laws, regulations, and legal actions.  For example, the words "on" and "force" are similar when used in a legal context in that they can both be used to describe the exertion of power or strength.  For example, one might say that a strong wind "forced" the door open, or that you "turned on" the faucet to let the water flow. In both cases, the word "on" is used to indicate that something is being activated or energized.

In another example, a court might order someone to "turn on" their computer so that it can be searched, or a police officer might "force" someone to open their door during a search. In both cases, the words "on" and "force" are used to indicate that someone is being compelled to

do something against their will.

Therefore, both words "on" and "force" are similar when used in a legal context in that they can both be used to describe the exertion of power or strength.  When used in the context of legal software, the words "on" and "force" can have some similarities in terms of their application and functionality. Here's how they can be similar:

- "On" in legal software: In legal software, the word "on" often indicates the status or activation of a feature or function. For example, you may turn "on" or activate certain features like document tracking, version control, or electronic signatures in legal software. It signifies that a particular function or capability is operational or enabled within the software system.

- "Force" in legal software: Similarly, the term "force" in legal software often relates to the effect or implementation of actions within the software. It can refer to initiating or executing specific actions with impact or effectiveness. For example, you might use the term "force" when applying changes to a document, pushing updates to multiple users, or enforcing compliance rules in the software system.

In both cases, "on" and "force" are used to describe the status or execution of features or actions within the legal software. They indicate that a function is active or that an action is being carried out with a certain level of effectiveness or impact.

The words "on" and "force" are often used together in legal context to describe the legal requirements for a particular action. For example, a contract might state that "the buyer is on the hook for all costs associated with the sale" or that "the seller is required to use all reasonable force to protect the property." In these cases, the word "on" indicates that the party has a legal obligation to do something, while the word "force" indicates that the party must take action with some degree of intensity or urgency.

In other cases, the words "on" and "force" can be used to describe the legal consequences of a particular action. For example, a law might state that "anyone who commits a crime on another person will have to go on trial and will be forced to a mandatory prison sentence." In this case, the word "on" indicates that the person is legally responsible for their actions, while

the word "force" indicates that the punishment will be severe.

Ultimately, the meaning of the words "on" and "force" in a legal software context are confusingly similar because both words can be used to describe the legal requirements, obligations, and consequences of a particular action.

Here are some examples of how the words "force" and "on" can be used together:

- The police used force to break up the protest.
- The teacher turned on the lights in the classroom.
- The engine was on, but the car wouldn't start.
- The pressure cooker was on high heat, and the steam was starting to build up.
- The politician forced her way through the crowd of reporters.

In each of these examples, the word "force" is used to describe the use of power or influence. The word "on" is used to describe the state of being active or operating.  The words "force" and "on" can also be used together in more figurative ways. For example, we might say that someone is "forcing their will" on someone else, or that they are "turning on the charm." In these cases, the words are not being used literally to describe physical force or power. Instead, they are being used to describe the use of influence or persuasion.

In addition, in many idiomatic expressions, the word "on" can be used to convey a sense of coercion, pressure, or influence, which is confusingly similar to the term "force" in a contextual sense. For example:

- "Put pressure on": This phrase can imply exerting force, influence, or insistence on someone to achieve a desired outcome. It can be used in situations where someone is being pushed or persuaded to take a particular action.
- "Impose on": This expression suggests enforcing or requiring someone to comply with something, often against their will or preferences. It can imply a sense of force or obligation being placed on someone.
- "legal force on": Analogous to  "Put pressure on", the legal force on phrase can imply exerting legal force, influence, or insistence on someone to achieve a desired outcome through a legal means. It can be used in situations where someone is being pushed or

persuaded to take a particular action through the operation of law.

Here are some examples of how the phrase "legal force on" can be used in a sentence:

- The new legislation will have **legal force on** January 1st, 2024.
- The court ruling had a significant **legal force on** future cases involving similar circumstances.
- The contract imposes **legal force on** both parties, ensuring compliance with the agreed-upon terms.
- The international treaty carries **legal force on** member countries, requiring them to abide by its provisions.
- The Supreme Court decision established a precedent that holds **legal force on** lower courts.
- The government implemented new regulations that will have **legal force on** the entire industry.
- The constitutional amendment has been ratified and now has **legal force on** all citizens.
- The judge's decision carries considerable **legal force on** the outcome of the trial.
- The executive order will have immediate **legal force on** government agencies, mandating their compliance.

Lastly the phrase "force on" can be used together to describe imposing something on someone or something against their will.  This has a likelihood to create a negative impression of the term LegalForce.  For example, when these two words are used together it can lead a reasonable consumer to think that there is an association between LegalForce and LegalOn and the company  is "forcing its will on the people" by through operation of law.  A reasonable consumer may think that Legalforce  through LegalOn is "forcing their opinions on you" as if the businesses are related and trying to make consumers believe something that they don't want to believe.

- The hurricane exerted immense **force on** the coastal towns, causing widespread destruction.
- The boxer unleashed a powerful punch, delivering a tremendous **force on** his opponent's

jaw.

- The gravitational pull of the moon exerts a significant **force on** the tides.
- The terms and conditions of the contract are in **force on** both parties.
- The strong winds exerted **force on** the sails, propelling the sailboat forward.
- He applied **force on** the door to open it.
- The police officer used **force on** the suspect to restrain them.

In summary, in legal and contractual obligations: In legal or contractual contexts, "force on" can refer to the requirement or obligation imposed by a law, regulation, or agreement.    In addition, in the context of user interfaces or software, "force on" can refer to a feature or setting that needs to be enabled or activated by the user. For instance, you may encounter options like "force on dark mode" or "force on two-factor authentication."

Similarly, even the words "on force" are used together in legal contexts.  Here are some examples of how the phrase "on force" can be used in a sentence in the legal and context:

- The police officer relied **on force** to apprehend the suspect.
- The military had to rely **on force** to maintain control in the war zone.
- Negotiations failed, and the parties resorted to relying **on force** to settle the dispute.
- The army relied heavily **on force** to secure victory in the battle.
- The self-defense instructor emphasized the importance of relying **on force** only when absolutely necessary.

Therefore, a reasonable jury could easily conclude that Defendant's "LegalOn" is confusingly similar to Plaintiff's incontestable rights in "LegalForce," especially in view of the prior history of the names and companies and the legal meaning and inference of the terms.

**F. The USPTO has recently determined that the LEGALON mark is possibly confusingly similar with the Plaintiff's registered marks.**

Earlier this month of May 2023, USPTO agreed with the Respondent that LegalOn and LegalForce may be confusingly similar. (Abhyanker Decl. ¶ 41; Ex. 6)  Specifically, the USPTO has agreed that four of the Defendant's trademarks (each with the literal characters LEGALON) may be confusingly similar with the Applicant's trademarks. *Id.* The USPTO's

entered Memorandums to File in the prosecution history of Defendant's LegalOn trademarks: LEGALON TECHNOLOGIES Serial Nos. 97799088;  LegalOn Technologies 97799217, LEGALON 97799167, and LEGALONTECH 97799239 for likelihood of confusion in view of the Plaintiff's LegalForce trademarks U.S. Registration Nos. LEGALFORCE TRADEMARKIA 5642937, LF LEGALFORCE  LegalForce 4346898, and LEGALFORCE 4227650. *Id.*

In the prosecution history of the U.S. trademark application for LEGALON 97799167, Elizabeth O'Brian, Attorney Advisor at the USPTO's Office of the Deputy Commissioner for Trademark Examination Policy has considered evidence included with the Plaintiff's letter of protest, that there is evidence that is relevant to grounds for refusal on May 18, 2023 based on possible likelihood of confusion with Plaintiff's U.S. Registration Nos. LEGALFORCE TRADEMARKIA 5642937, LF LEGALFORCE  LegalForce 4346898, and LEGALFORCE 4227650. *Id.*

Separately, for U.S. trademark applications for LEGALON TECHNOLOGIES Serial Nos. 97799088;  LegalOn Technologies 97799217, and LEGALONTECH 97799239, a different USPTO attorney, John Dalier, Attorney Advisor at the USPTO's Office of the Deputy Commissioner for Trademark Examination Policy has considered evidence included with the Plaintiff's letters of protest, that there is evidence that is relevant to grounds for refusal based on possible likelihood of confusion with Plaintiff's U.S. Registration Nos. LEGALFORCE TRADEMARKIA 5642937, LF LEGALFORCE  LegalForce 4346898, and LEGALFORCE 4227650. *Id.*

Therefore, a reasonable jury could easily conclude that Defendant's "LegalOn" is confusingly similar to Plaintiff's incontestable rights in "LegalForce," in view of the position of the USPTO apart from the reasons described herein.

**G. Plaintiff has established that this Court has Personal Jurisdiction over the Defendant.**

Plaintiff has suffered an injury in fact because it has lost customers, investors, and opportunities for its services in the United States in this District as a direct result of Defendant using the LegalOn mark in commerce within the United States, and with at least imminent

plans on using the LegalForce mark. Complaint ¶ 38. That loss is fairly traceable to the challenged conduct of the defendant because Defendant solicited the same venture capitalists that Plaintiff was seeking investment from, and offered its services to the same American customers. *Id.* The alleged harm is likely to be redressed by a favorable judicial decision because Defendant would have to disgorge its ill gotten gains and transfer to the Plaintiff the LegalForce domains pirated from it. *Id.*

The Plaintiff has suffered an injury in fact because defendant misdirected customers and investors from Plaintiff to Defendant. *Id.* at ¶ 45. Moreover, Plaintiff has suffered a concrete and particularized harm that is actual and imminent especially in view of Defendant's filing of a LegalForce logo trademark in the United States in the form of the '079 Application. *Id.* This injury has resulted in the loss of sales, profits, or reputation of the Plaintiff resulting from the Defendant's trademark infringement and use of the LegalForce trademarks in the United States since at least July 2020 as pleaded herein. *Id.* Therefore, Plaintiff has suffered a real, tangible injury that can be traced back to the defendant's actions because of the defendant's infringement. *Id.* LegalForce can show that the defendant's alleged infringement of the LEGALFORCE Marks trademark was the cause of the plaintiff's injury, and there is a clear and direct causal connection between the Defendant's actions in selling its shares in its company then called LegalForce and the resulting harm suffered by Plaintiff's competitive position as a result. *Id.*

This Defendant can be sued in federal court in the United States in a trademark litigation because the Lanham Act, which governs trademarks in the United States, provides for jurisdiction over foreign defendants who have committed trademark infringement in the United States. *Id.* at ¶ 38. Moreover, the Plaintiff's injury is likely to be redressed by a favorable judicial decision: A court order prohibiting the defendant's infringing conduct including registering infringing domain names and filing trademarks with the LegalForce or LegalOn name would likely lead to the restoration of the plaintiff's lost sales, profits, or reputation, and such a court order is likely to provide meaningful relief and redress the harm suffered. *Id.* at ¶ 46.

1   Under the Lanham Act, a foreign defendant who has used a trademark in commerce within
2   the United States can be subject to personal jurisdiction in a U.S. court. *Id.*  This means that the
3   foreign defendant can be sued in a U.S. court for any claims arising out of the alleged
4   trademark infringement.  *Id.*  This Court has general and specific jurisdiction over Defendant
5   because it is physically present in California and in the United States, and Defendant provided
6   services to customers in California.  *Id.* at ¶ 48.  This Court has general personal jurisdiction
7   over Defendant because it has current and prospective customers who have offices in
8   California, and in this District. *Id.* This Court has personal jurisdiction over Defendant because
9   its forum contacts are admitted on its own Infringing Website descriptions therefore
10  establishing general and specific jurisdiction.  *Id.*

11  Defendant has intentionally and purposefully directed tortious acts expressly aimed at
12  California and the United States, with foreseeable harm to Plaintiff, and Plaintiff's claims arise
13  out of the Defendant's forum-related activities, and exercising jurisdiction over Defendant is
14  both reasonable and fair given the facts alleged in this complaint. *Id.*  Plaintiff alleges sufficient
15  facts to establish actual case in controversy because this amended complaint describes that
16  Defendant's own website describes its activities in the United States are extensive, including
17  selling to over 3000 customers, which includes customers in the United States such as the
18  car-sharing company Turo.com and lawyer Hans Kim  in this district.  *Id.* at ¶ 15.  For at least
19  these reasons, and additional reasons as stated in the second amended complaint and the
20  Declarations and exhibits hereto, the Plaintiff has established personal jurisdiction over the
21  defendant.

22  **H. The cyber piracy cause of action pleaded in the Second Amended Complaint does not**
23  **require use in commerce by the Defendant.**

24      A claim for cyberpiracy under 15 U.S.C. § 1125 does not require a showing of use in
25  commerce by the Defendant.  It only requires a bad faith intent to profit on the goodwill of the
26  Plaintiff by registering a domain that infringes the Plaintiff's trademark rights.  The second
27  amended complaint describes that the following domains have been registered for use in the
28  United States after the senior trademark rights of the Plaintiff in bad faith with an intent to

profit from Plaintiff's goodwill in the LEGALFORCE marks:

      a. **LegalForce-corp.com** was registered on April 28, 2021 in conjunction with defendant's sales in the United States with bad faith intent to infringe the Plaintiff's superior rights (e.g., website color theme in orange copied), and is hosted by an American hosting company, Amazon.com Inc. in Portland Oregon.

      b. **LegalForce-cloud.com** was registered on February 8, 2018, and is hosted by an American hosting company, Amazon.com Inc. in Portland Oregon.

*Id.* at ¶ 84-85.

Defendant was aware of the Plaintiff's marks and reputation before engaging in its conduct as alleged herein. Defendant deliberately redirected its website https://en.legalforce-corp.com/ to its "LegalOn" home page for the purpose of harassing the Plaintiff, misappropriating its substantial goodwill, and causing confusion, mistake and deception among Internet users and the public. *Id.* at ¶ 86. Both the https://en.legalforce-corp.com/#about and https://legalforce-cloud.com/ redirect now to websites displaying the LegalOn mark, creating confusion between LegalForce and LegalOn. . *Id.* Defendant attempted to profit from the Infringing Websites by appending query strings to the domain "-corp.com" to make it look officially connected to LegalForce. *Id.* Notably, the redirecting happens to the same https://en.legalontech.jp/ website in which Defendant advertises that it now has a CEO in the United States, Daniel Lewis on this page https://en.legalontech.jp/3048/ in which Defendant boasts, both in Japanese and English about its expansion into the United States and announces its"appointment of Daniel Lewis as US CEO." *Id.* Therefore, it cannot be said that Defendant solely redirects these domains to a Japanese website targeting Japanese customers. *Id.* Instead, Defendant refers to Daniel Lewis as "US CEO" and describes its over 3000 customers globally including in the United States on the LegalonTech.JP website, which redirects from LegalForce-Corp.com. *Id.*

Defendant registered the infringing domains and used it to redirect visitors to ia website on which the LegalForce brand was displayed https://en.legalforce-corp.com/#about and https://legalforce-cloud.com/. *Id.* at ¶ 87.

Defendant attempts to profit from the infringing domains by appending query strings to the domain "-corp.com" to make it look officially connected to LegalForce. *Id.* at ¶ 88.

Defendant actively disseminated and marketed infringing products bearing the LEGALFORCE marks for about one year. *Id.* WayBackMachine archives show that LegalOn included the Infringing Website in English https://en.legalforce-corp.com/#about as early as July 1, 2021, and was registered on April 28, 2021. *Id.* at ¶ 89 Also the Infringing Website https://legalforce-cloud.com/ contains English script for the Defendant and appears to be registered on February 7, 2018. *Id.* Defendant was aware of LegalForce's rights because on November 19, 2018, LegalForce attempted, and failed, to oppose the registration in Japan when the Japanese Patent Office upheld LegalForce's Japanese trademark registration on August 5, 2019. *Id.* Therefore, Defendant knew that when it registered the English language domains in 2021 of LegalForce's superior rights. *Id.* Defendant actively disseminated and marketed the LEGALFORCE domains after registering them in 2021. *Id.*

The Infringing Websites' domain is nearly identical to and confusingly similar to Plaintiff's distinctive LEGALFORCE Marks, and to the Plaintiff's registered domains LegalForce.com and LegalForceLaw.com. *Id.*

Defendant has bad faith intent to profit from the Infringing Websites. Bad faith is evidenced by, inter alia, the fact that the registration of after Defendant had actual knowledge of the Plaintiff's rights in February 2019, and the redirecting to LegalOn websites occurred after the formation of LegalOn in September 2022. *Id.* Moreover, as alleged in the second amended complaint, their registration of the domain only after the success of the Plaintiff's LegalForce business, and recently launching an English language website. *Id.* Also, bad faith is witnessed because the Defendant CEO has known about Plaintiff's superior rights at least since February 13, 2019. *Id.*

## V.   **CONCLUSION**

For all of the reasons herein, Defendant's Motion To Dismiss the SAC should be denied. If any causes are denied, Plaintiff respectfully requests that  this Court reconsider its position, and provide the Plaintiff a further opportunity for leave to amend under rule 15(d).

1

2

3  Respectfully submitted this May 30, 2023.

4

5                                        LEGALFORCE RAPC WORLDWIDE P.C.

6

7                                        /s/ Raj V. Abhyanker
                                         Raj V. Abhyanker
8                                        California State Bar No. 233,284
                                         Attorney for Plaintiff:
9                                        LegalForce RAPC Worldwide, P.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>SERVICE LIST</u>**

LegalForce RAPC Worldwide, Inc. vs. LegalForce, Inc.

*Attorneys for LegalForce, Inc.*

David A. Makman (SBN# 178195)
david@makmanlaw.com
Law Offices of David A. Makman
483 Seaport Court, Suite 103
Redwood City, CA 94063
Tel.: 650-242-1560

Christopher Studebaker
chris.studebaker@tkilaw.com
Daido Seimei Kasumigaseki Bldg. 8F
1-4-2 Kasumigaseki,Chiyoda-ku
Tokyo 100-0013, Japan
Tel: +81-3-6273-3120

Plaintiff's Opposition To Defendant LegalForce, Inc.'s Motion To Dismiss Plaintiff's Second  Amended Complaint;
Memorandum Of Points And Authorities In Support Thereof
Case No.:3:22-cv-03724-TLT