Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile: (650) 989-2131

*Attorney for Plaintiff*
*LegalForce RAPC Worldwide P.C.*

David A. Makman (SBN 178195)
david@makmanlaw.com
**LAW OFFICES OF DAVID A. MAKMAN**
483 Seaport Court, Suite 103
Redwood City, California 94063
Telephone:   (650) 242-1560
Facsimile:    (650) 242-1547

Christopher Studebaker (admitted *pro hac vice*)
chris.studebaker@tkilaw.com
**TOKYO INTERNATIONAL LAW OFFICE**
Daido Seimei Kasumigaseki Bldg., 8F
1-4-2 Kasumigaseki, Chiyoda-ku
Tokyo 100-0013, Japan
Telephone:    011-81-(0)3-6273-3120
Facsimile:     011-81-(0)3-6273-3876

*Attorneys for Specially Appearing Defendant*
*Kabushiki Kaisha LegalOn Technologies, f/k/a*
*Kabushiki Kaisha LegalForce*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C., <br><br> Plaintiff, <br><br> v. <br><br> LEGALFORCE , INC., <br><br> Defendant. | CASE NO. 3:22-cv-03724-TLT <br><br> **JOINT LETTER BRIEF REGARDING DISCOVERY DISPUTE** <br><br> Judge:         Hon. Alex G. Tse <br> Crtrm.:        9 <br> Action Filed: June 24, 2022 |

### JOINT STATEMENT

- **ATTESTATION OF MEET AND CONFER**

Plaintiff LegalForce RAPC Worldwide, P.C. ("Plaintiff") and Specially Appearing Defendant *Kabushiki Kaisha* LegalOn, formerly known as *Kabushiki Kaisha* LegalForce ("Defendant") (collectively, the "Parties") exchanged email correspondence and met and

conferred beginning on June 29 2023, July 5, 2023 and then August 2, 2023, but could not reach an agreement on the discovery dispute submitted herein.

- **FACTUAL BACKGROUND**

On June 29, 2023, Plaintiff served discovery requests.  Plaintiff also sent an email to defense counsel on after hours on June 29, 2023, requesting their position.  The parties met and conferred on July 5, 2023.  Defendant then served responses and objections on July 29, 2023.  The Parties met and conferred again on August 2, 2023.  The Parties are an impasse as to whether discovery should proceed and if so, the scope of discovery.

- **THE PARTIES' POSITIONS**

  - **Plaintiff's Position**

The SAC alleges that "[s]pecifically, Defendant advertised infringing LegalForce marks to solicit American investors in the United States when advertising its equity shares for purchase within the United States in 2022 with the specific purpose of expanding the sales of its products and services within the United States from its early start in 2020. American investors including World Innovation Labs ("WiL"), Goldman Sachs, and Sequoia Capital actually purchased millions of dollars of Defendant's stock in response to its advertisements using the LEGALFORCE marks in the summer of 2022. Even the equity financing documents of Defendant, including the invoices in the form of stock purchase agreements demonstrate actual sales of equity shares in Defendant's company to American investors in 2022 advertised using the LEGALFORCE mark, with email body and supporting documents displaying the LEGALFORCE mark with the logo in the infringing '079 Application in conjunction with the sale of securities." [SAC, pg. 17-18, para. 44].

Plaintiff requests that the Defendant provide responsive documents to Discovery Request #94 requesting "Documents sufficient to show the amount of venture capital that You have raised from investors headquartered in the United States of America."  In addition, Plaintiff requests that the Defendant answer completely Interrogatory #25 "Please describe the amount of venture capital that You have raised from investors  headquartered in the United States of America."  The reason that these documents and interrogatory response are highly relevant is because they directly go to Defendant's jurisdictional defenses in light of the recently decided U.S. Supreme Court case of ***Abitron Austria GmbH v. Hetronic Int'l, Inc.***, U.S. Supreme Court, No. 21-1043, 2023 U.S. LEXIS 2789 (June 29, 2023).

*Abitron* did not directly rule on whether using the mark in a fundraising context is "use in commerce." Moreover, Justice Jackson's example of the use in commerce as described in her concurring opinion provides this court wider latitude to demonstrate that LegalForce Japan's conduct demonstrates use in commerce within the United States consistently with the *Abitron* holding.  And that Defendant points to no case law to support the idea that offering stock or some portion of a business for sale - which is what you do when fundraising - is not use in commerce.

Plaintiff does point out that the LegalForce Japan did raise the $100 million dollars in its Series D fundraise in the Summer of 2022 for the specific purpose of expansion in to the United States, and raised at least significant portions of these funds from American investors using the LEGALFORCE mark in the United States, created and distributed collateral and investor

presentations using the LEGALFORCE mark during its fundraise in the United States to both investors and the American press, and therefore its conduct of selling securities itself was a source identifying function in the United States (and not in Japan), consistent with the holding that the conduct relevant to the Lanham Act's focus occurred in United States territory as held in the *Abitron* case.

It should be noted that LegalForce Japan is not a cash flow positive, profit-making enterprise whose $100 million dollar fundraise for U.S. expansion in 2022 is justifiable based on a revenue or cash flow based capitalization. Rather, LegalForce Japan amassed and is spending $100 million venture capital for the specific purpose of dominating its U.S. competitors like Plaintiff by dumping cash into U.S. marketing, advertising, and capital investments through its shell, single-enterprise company, the Defendant, that dwarf the capacities of businesses like Plaintiff that seek to legitimately compete based on profitable, cash-flow positive business models. The primary goal of businesses like LegalForce Japan is to market, sell, and increase the price of its securities (to their real customers - venture capitalists and investors), not to grow first organically based on cash flow based profits before seeking growth capital. Therefore, the primary item that LegalForce Japan sells is its securities, not its artificial intelligence products.

Defendant did not provide a single responsive document to Discovery Request #94 requesting "Documents sufficient to show the amount of venture capital that You have raised from investors headquartered in the United States of America", or any responsive answers to Interrogatory #25 seeking "Please describe the amount of venture capital that You have raised from investors headquartered in the United States of America" and instead served objections in **Exhibit A**. The Interrogatory response did not even correctly paste in the question asked in Interrogatory #25 when serving its Objections.

With respect to the Objections, Plaintiff responds to defining "venture capital" as meaning any investment funds received in the form of debt, equity, or convertible notes from an investor into the Defendant's business from a bank account located in the United States of America. In addition, this definition includes xx investment funds received in the form of debt, equity, or convertible notes from an investor into the Defendant's business from a bank account located outside of the United States of America if the principal place of business of the investor is in the United States of America. "Headquartered" is to mean where a principal place of business of a U.S.x IT parent corporation of any foreign subsidiary providing the investment ur funds to Defendant is located, when that address is the United States of America. None of this information should be confidential, as most of it was already reported to news outlets by the Defendant and is included on the Defendant's self maintained Crunchbase profile:

:https://www.crunchbase.com/organization/legalforce-japan/company_financials.

For the sake of clarity, Sequoia Capital "China" as the Defendant listed on its Crunchbase page qualifies as an entity for the amount of funding disclosure is sought from Defendant, as it is a merely a branch organization of a U.S. venture capital fund, whose profits, limited partners, investors, returns, resources is the same as of 2022. Only as recently as June 2023 has Sequoia Capital sought to separate out its China entity as recently reported in the Economist on June 8, 2023, see article titled "Why Sequoia Capital is sawing off its Chinese branch." ("By March 2024 the entities will no longer share investors or returns, as they have done for years.", Economist, June 8, 2023), and "Venture Capital Giant Sequoia Spins Off China and India Units", New York Times, June 6, 2023 (quoting partner Roelof Botha, ""Increasingly, we deal with

portfolio conflicts across entities because founders really now have global ambitions," Mr. Botha said. "And the brand confusion was just starting to chafe at everybody.").

- **Defendant's Position**

On April 12, 2023, the Court dismissed this action brought against Defendant. EFC No. 92 (the "Order"). This Court found that, as pled, Plaintiff had failed to establish either subject matter jurisdiction or personal jurisdiction, and as such, had failed to establish any right to seek relief. Further, the Court held that: (1) the trademark claims are not ripe, Order at 5:23-24; (2) general jurisdiction is lacking, *id*. at 6:27-28; and (3) specific jurisdiction is lacking, *id*. at 8:7-10. Because Plaintiff had been granted leave to take jurisdictional discovery, and had done so, the Court gave Plaintiff leave to amend saying that "this shall be Plaintiff's final opportunity to amend its pleading." *Id*. 8:27-28.

Plaintiff amended. In response, Defendant again moved to dismiss. The Motion to Dismiss is fully briefed, and a hearing is set for October 3, 2023. ECF No. 116. However, pending the Court's decision on whether Plaintiff's final complaint is sufficient to establish that this Court has any jurisdiction over either the dispute or this Defendant, Plaintiff served discovery requests on June 29, 2023. The document request and interrogatory seek discovery to support his claim that selling shares purportedly constitutes "use in commerce" under the Lanham Act.

Defendant served responses and objections on July 29, 2023. Defendant objects, *inter alia*, because leave to amend was not properly granted under Ninth Circuit precedent and the period for jurisdictional discovery closed with the filing of the third and final complaint. Further, Defendant objects because the Court had already ruled that selling shares does not constitute "use in commerce" under the Laham Act. As such, additional discovery is unwarranted.

*First*, under Ninth Circuit precedent, leave to amend was not available here and, if the Court chooses to proceed, any and all actions of the Court subsequent to the dismissal could be held invalid on appeal. Specifically, under *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 855 F.2d 1376, 1381 (9th Cir. 1988), the Ninth Circuit held that where a case is dismissed for lack of subject matter jurisdiction, a court does not have the power to grant leave to amend under Article III. As such, the portion of the Court's order granting leave to amend here should be vacated.

The objection that the Court does not have subject matter jurisdiction due to lack of standing can be raised at any time in a lawsuit—meaning that, even if the Court were to rule that leave to amend was properly granted here, that ruling would be subject to challenge on appeal. Thus, if the case were to go forward through trial and appeal, the resultant judgment might be vacated and/or nullified pursuant to *Morongo*. This also means that, even if the Court issues a protective order here, that order could be nullified after documents are produced in reliance on it.[1]

Aside from briefing the issue in its Motion to Dismiss, Defendant briefed *Morongo*'s implications pursuant to an order to show cause on why this action and the one against LegalOn Technologies, Inc. ("LO-US") should not be coordinated ("OSC"). ECF Nos. 110, 120. Given the serious situation, discovery should be stayed until the *Morongo* issue is fully resolved.

---

[1] Plaintiff has threatened to disclose information learned in discovery on his blog, and, if the protective order is ultimately held to be null and void, Defendant cannot rely on him to respect Defendant's privacy rights or of third parties who might be asked to produce discovery in this action.

*Second*, even if the Court were to rule that *Morongo* does not apply, jurisdictional discovery ended when Plaintiff filed his third and final complaint. None of the discovery that Plaintiff now seeks could be used to amend because the Second Amended Complaint has *already* been filed and the Court has *already* ruled that was Plaintiff's last opportunity.

In that context, Plaintiff knows that he has already filed the last amendment that he is entitled to file and is not looking for jurisdictional discovery to use in this action. Rather, Plaintiff has stated that he plans to file a new complaint alleging tortious interference with prospective economic advantage. Even if this case were dismissed, he has threatened to pursue a new case and wants discovery now for that cause of action. (If this case is not dismissed, presumably he will try to consolidate the new claim into the existing action.). This plan makes Plaintiff's motion to compel even more inappropriate.

Defendant has already spent hundreds of thousands of dollars responding to jurisdictional discovery. As such, Defendant needs protection from further excessive litigation costs. Plaintiff would not be prejudiced if the Court were to deny Plaintiff's motion pending resolution of the dispositive jurisdictional issues because the Motion to Dismiss can be decided without this additional discovery. *See, e.g.*, *Cellwitch, Inc. v. Tile, Inc.*, Case No. 4:19-CV-01315, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (staying discovery because dismissal motion "has the potential to be dispositive"); *In Re Nexus 6p Prods. Liability Litig.*, Case No. 17-cv-02185-BLF, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (granting stay where "the pending motions to dismiss are fully briefed, and can be decided without additional discovery."). Specifically, the question of whether a capital raise is actionable at all under the causes of action asserted by Plaintiff is at issue, so the actual amount of the capital raise that took place in the United States is irrelevant. Moreover, the requests call for speculation as to the location of the headquarters of third parties and are, therefore, extra irrelevant.

Rather, Defendant would be prejudiced and further subject to abuse of process if Plaintiff's motion is granted. *See* Fed. R. Civ. P. 26(c)(4) (court can limit discovery if it would create "annoyance, embarrassment, oppression, or undue burden or expense"). That Defendant would be prejudiced is underscored by the fact that Plaintiff even in this Joint Letter makes baseless, inflammatory, and speculative assertions that are not supported by the record evidence, were never raised in his complaint and/or are contradictory to the complaint's allegations.[2] Defendant should not be subject to Plaintiff's further "fishing expedition," especially given the outstanding dispositive issues and Plaintiff's threats to file a new case and/or claims.

*Finally*, Plaintiff's interpretation of *Abitron* is wrong. Plaintiff seeks to characterize *Abitron* to allow him to compel discovery relating to the sale of shares so that he can file another complaint. However, *Abitron* holds that 15 U.S.C. §1114(1)(a) and 15 U.S.C. § 1125(a)(1)—the trademark infringement statutes relied on by Plaintiff—are **not** extraterritorial. *Abitron Austria GmbH v. Hetronic Int'l Inc.,* No. 21-1043, 2023 U.S. Lexis 2789 at *24 (June 29, 2023). *Abitron* establishes both that Defendant's conduct in Japan is not actionable and that selling shares is not a form of trademark infringement since shares are not sold "in the ordinary course of trade."

For the above reasons, Defendant respectfully requests that the Court deny Plaintiff's motion to compel, rule that the period for jurisdictional discovery has closed, or, at a minimum,

---

[2] By way of illustration, Plaintiff claims that "the primary item that LegalForce Japan sells is its securities, not its artificial intelligence products." This is untrue and Plaintiff knows this. Nor is there any support in the record to his claim that the U.S. entity is a "shell," or that "LegalForce Japan amassed and is spending $100 million venture capital for the specific purpose of dominating its U.S. competitors like Plaintiff by dumping cash into U.S. marketing, advertising, and capital investments through its shell, single-enterprise company."

that discovery is stayed pending a determination from the Court regarding Article III jurisdiction and the pending Motion to Dismiss.

Dated: August 8, 2023

By: ___/Raj Abhyanker/_____
Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE, P.C.**
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone: (650) 965-8731
Facsimile: (650) 989-2131

*Attorney for Plaintiff*
*LegalForce RAPC Worldwide P.C.*

By: ___/s/_____

Christopher Studebaker (admitted *pro hac vice*)
chris.studebaker@tkilaw.com
**TOKYO INTERNATIONAL LAW OFFICE**
Daido Seimei Kasumigaseki Bldg., 8F
1-4-2 Kasumigaseki, Chiyoda-ku
Tokyo 100-0013, Japan
Telephone:    011-81-(0)3-6273-3120
Facsimile:     011-81-(0)3-6273-3876

*Attorney for Specially Appearing Defendant*
*Kabushiki Kaisha LegalOn Technologies, f/k/a*
*Kabushiki Kaisha LegalForce, Inc.*

## ATTESTATION FOR SIGNATURE

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Chris Studebaker, Counsel for Defendant LegalForce, Inc..

Dated: August 8, 2023