1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C., | Case No.  22-cv-03724-TLT |
| Plaintiff, |  |
| v. | **AMENDED ORDER GRANTING MOTION TO DISMISS** |
| LEGALFORCE, INC., | Re: ECF No. 95 |
| Defendant. |  |

Plaintiff LegalForce RAPC Worldwide, P.C. asserts four causes of action against Defendant LegalForce, Inc. in relation to Plaintiff's trademarks: (1) trademark infringement under the Lanham Act via (a) 15 U.S.C. § 1114 and (b) 15 U.S.C. § 1125(a); (2) cybersquatting under 15 U.S.C. § 1125(d); and (3) trademark infringement under California common law.  *See* ECF No. 93 ("SAC").  Before the Court is Defendant's motion to dismiss Plaintiff's second amended complaint.  *See* ECF No. 95 ("Mot.").  Having considered the parties' submissions, oral argument on October 3, 2023, and the record in this case, the Court **GRANTS** Defendant's motion to dismiss with prejudice.

I.      **BACKGROUND**

        A.      **Factual Background**

        Plaintiff is a California S corporation that operates two legal services websites, www.legalforcelaw.com and www.legalforce.com.  SAC ¶ 35.  Plaintiff owns three federal trademark registrations, "LegalForce," "LEGALFORCE," and "LegalForce Trademarkia." (collectively "LegalForce Marks").  *Id.* ¶¶ 1-3.  Defendant is a Japanese corporation with a principal place of business in Tokyo, Japan.  *Id.* ¶ 36.

        Based upon information and belief, Plaintiff asserts Defendant has infringed the

LegalForce Marks. *Id.* ¶¶ 12-34. Plaintiff asserts there was infringement based on Defendant's activities related to "LegalForce" and "LegalOn." *Id.* First, as to the LegalForce activities, Plaintiff asserts Defendant has advertised LegalForce products and services, specifically software products known as "LegalForce" and "LegalForce Cabinet," in the U.S. since July 1, 2020. *Id.* ¶ 12. Plaintiff also claims Defendant has infringed by advertising equity shares to U.S. investors in 2022. *Id.* ¶¶ 17-18. In addition, Plaintiff avers that Defendant filed a trademark for "LF" in the U.S. "with no concern for Plaintiff's rights." *Id.* ¶¶ 14-16. Second, as to the LegalOn activities, Plaintiff asserts infringement because Defendant changed its name from LegalForce, Inc. to LegalOn sometime in August or September 2022. *Id.* ¶¶ 19-20, 61. Lastly, Plaintiff alleges Defendant has violated cybersquatting statutes by purchasing two website domains in the U.S.: LegalForce-corp.com and LegalForce-cloud.com. *Id.* ¶¶ 22-23.

### B.    Procedural Background

Plaintiff filed suit against Defendant on June 24, 2022. *See* ECF No. 1. After Defendant moved to dismiss the complaint, Plaintiff filed a first amended complaint. *See* ECF Nos. 22, 31. The Court held a Case Management Conference and allowed jurisdictional discovery to commence. *See* ECF No. 38.

On November 7, 2022, Defendant filed a motion to dismiss Plaintiff's first amended complaint. *See* ECF No. 39. Plaintiff filed an opposition and Defendant filed a reply on November 13, 2022, and November 28, 2022, respectively. *See* ECF Nos. 43, 47. On April 12, 2023, the Court granted Defendant's motion to dismiss, but with leave to amend. *See* ECF No. 92.

Subsequently, on April 25, 2023, Plaintiff filed a second amended complaint. *See* SAC. Defendant filed the instant motion to dismiss for lack of subject matter jurisdiction, personal jurisdiction, and failure to state a claim. *See* Mot. The parties filed an opposition and reply in response. *See* ECF Nos. 100 ("Opp'n"), 106 ("Reply").

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "[L]ack of Article III standing requires dismissal

United States District Court
Northern District of California

United States District Court
Northern District of California

1  . . . under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067

2  (9th Cir. 2011).  The "irreducible constitutional minimum" of standing requires that a "plaintiff

3  must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

4  defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

5  *Robins*, 578 U.S. 330, 338 (2016).  These three elements are referred to as injury-in-fact,

6  causation, and redressability, respectively.  *Planned Parenthood of Greater Was. & N. Idaho v.*

7  *U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).  "The plaintiff, as the

8  party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as

9  here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each

10  element." *Spokeo*, 578 U.S. at 338.

11      A Rule 12(b)(1) jurisdictional attack may be factual or facial.  *See Safe Air for Everyone v.*

12  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "[I]n a factual attack, the challenger disputes the

13  truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* at

14  1038.  In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court

15  "may review evidence beyond the complaint without converting the motion to dismiss into a

16  motion for summary judgment." *Id.*  Moreover, the court "need not presume the truthfulness of

17  the plaintiff's allegations." *Id.*  Absent a full-fledged evidentiary hearing, disputes in the facts

18  relevant to subject matter jurisdiction are viewed in the light most favorable to the opposing party.

19  *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

20      In a facial attack, "the challenger asserts that the allegations contained in a complaint are

21  insufficient on their face to invoke federal jurisdiction." *Id.* at 1039.  The court "resolves a facial

22  attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as

23  true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

24  allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*,

25  749 F.3d 1117, 1121 (9th Cir. 2014).

26      **B.      Motion to Dismiss under Rule 12(b)(2)**

27      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss an

28  action where it does not have personal jurisdiction over a defendant.  "California's long-arm

statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (citing Cal. Civ. Proc. § 410.10 (West 2004)).  Under the Constitution, personal jurisdiction is permitted by a long-arm statute that does not violate federal due process.  *Id.*  Due process requires sufficient minimum contacts with the forum that "do[] not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation marks omitted).  Personal jurisdiction takes two forms: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  However, this demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  As the Ninth Circuit noted, "we may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal citations and quotations omitted).

### C.    Motion to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for "failure to state a claim upon which relief can be granted."  To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)).  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005).

### D.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend "shall be

freely given when justice so requires."  But district courts have discretion to deny leave to amend due to "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'"  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

Defendant moves to dismiss for four reasons: (1) this Court does not have subject matter jurisdiction over the case and Plaintiff has failed to establish its claims are ripe; (2) this Court lacks personal jurisdiction over Defendant; (3) Plaintiff's infringement claims alleging use of the LegalOn mark fail as a matter of law; and (4) Plaintiff fails to state a plausible infringement or cybersquatting claim.  *See* Mot. at 10-22.  The Court will address of Defendant's arguments below. But as a threshold matter, the Court will first consider if it can take judicial notice of declarations and exhibits attached to the parties' motions.

### A.    Judicial Notice

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The Court may "consider materials that are submitted with and attached to the Complaint. [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  Further, as discussed above, the court may consider extrinsic evidence when deciding factual challenges to jurisdiction under Rule 12(b)(1).  *See Safe Air*, 373 F.3d at 1039.

#### 1.    Defendant's Exhibits

For its ripeness arguments, Defendant requests judicial notice of the facts in a declaration filed in a related case (*LegalForce RAPC WorldWide, P.C. v. LegalOn Technologies, Inc*., Case 3:22-cv-07627-TLT (N.D. Cal.)).  *See* Mot. at 14 n. 11.  Plaintiff does not oppose the request.  *See*

1    *generally*, Opp'n.  Regardless, Defendant's request for judicial notice is **DENIED**.  While the

2    Court may take notice of the declaration's existence, it declines to take notice of the declaration's

3    underlying facts.  *See M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491

4    (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records

5    in another cause so as to supply, without formal introduction of evidence, facts essential to support

6    a contention in a cause then before it.").

### 2.    Plaintiff's Declarations and Exhibits

8        In its opposition, Plaintiff attached two declarations from counsel: (1) Raj Abhyanker,

9    Plaintiff's lawyer in the instant case and (2) Hirofumi Tada, Plaintiff's lawyer in ongoing litigation

10   in Japan.[1]  *See* ECF Nos. 100-1 ("Abhyanker Decl."), 100-3 ("Tada Decl.").  Defendants assert

11   that the declarations attached to Plaintiff's opposition should be disregarded, because they are self-

12   serving and lack foundation.  Reply at 3.  Further, Defendants assert that the Abhyanker

13   Declaration should be disregarded under Federal Rule of Evidence 602 because Mr. Abhyanker

14   does not have personal knowledge of the facts he cites.  *Id*. at 9.

15       Attached to Mr. Abhyanker's declaration were eight exhibits: a press release allegedly

16   issued by Defendant published on BusinessWire ("Ex. 1"); Mr. Nozumu Tsunoda's January 26,

17   2023 deposition ("Ex. 2");  a screenshot of two charts that were discussed at Mr. Tsunoda's

18   deposition ("Ex. 3");  an article in Japanese that included two charts referenced in Mr. Tsunoda's

19   deposition ("Ex. 4"); an excerpt of Mr. Jean-Pierre Biard's January 25, 2023 deposition ("Ex. 5");

20   US Patent and Trademark Office Letters of Protest memoranda ("Ex. 6");  a screenshot that states

21   the website known as legalontechnologies.com is unavailable ("Ex. 7");  and a report by an entity

22   known as DomainTools that allegedly reflects information related to the Internet domain name,

23   "LegalonTechnologies.com" ("Ex. 8").  *See* Abhyanker Decl, ECF No. 100-2.

24       Attached to Mr. Tada's declaration were 16 exhibits: namely, a complaint from a Japanese

25   lawsuit between the parties (Ex. 1); three Japanese articles that were translated by Mr. Tada from

26   Japanese into English ("Exs. 2-4"); screenshots of Defendant's website from different time periods

27

28   _____

[1] At the hearing, Plaintiff asserted that the litigation in Japan has ended but has not provided any
documentation to support these claims.

United States District Court
Northern District of California

("Exs. 5, 9, 11, 16"); public records of U.S. and Japanese trademarks and trademark applications ("Exs. 7-8, 10, 12-13, 14-15"); and a press release on Defendant's web page ("Ex. 6"). *See* Tada Decl., ECF No. 100-4.

As discussed above, the court may consider extrinsic evidence when deciding factual challenges to jurisdiction under Rules 12(b)(1) and 12(b)(2). *See Safe Air*, 373 F.3d at 1039 (considering evidence beyond the complaint when deciding factual attack under Rule 12(b)(1)); *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) (Rule 12(b)(2) challenges regarding personal jurisdiction may rely on evidence outside of the complaint).

In addition, "[t]he Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  The Court also has the power to grant judicial notice *sua sponte*.  Fed. R. Evid. 201(c)(1).

With respect to Plaintiff's two declarations, the Court agrees with Defendant in part.  The Court will disregard certain sections of the Abhyankar Declaration (*e.g*., ¶¶ 8-13, 15, 17, 19, 22, 24, 26-42) where Mr. Abhyanker attributes intent or meaning to certain documents, because he is merely characterizing the evidence and does not have personal knowledge related to the events described.  *See Walker v. Boeing Corp*., 218 F. Supp. 2d 1177, 1188 (C.D. Cal. 2002) (finding testimony lacked foundation where the individual did not have personal knowledge of the subject).  Likewise, the Court will also disregard certain sections of the Tada Declaration (*e.g*, ¶¶ 16, 20, 26-27, 30) for the same reasons.

The Court notes that neither party requested that the Court take judicial notice of the attached exhibits to each declaration.  Regardless, the Court will take judicial notice of Exhibit 6 attached to the Abhyanker Declaration, namely, a letter of protest memoranda provided to the USPTO, and Exhibits 7-8, 10, 12-15 of the Tada Declaration, which are U.S. and Japanese

United States District Court
Northern District of California

trademark filings and applications.  *See United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice is appropriate for records and reports of administrative bodies).

However, the Court declines to take judicial notice of the following exhibits.  Exhibits 7 and 8 of the Abhyanker Declaration are purportedly screenshots of certain websites and a report by an entity known as DomainTools that provides information about an Internet domain name, but these documents are unauthenticated and do not contain facts that are "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *See Soriano v. Countrywide Home Loans, Inc*., No. 09-CV-02415, 2011 WL 1362077, at *10 (N.D. Cal. Apr. 11, 2011) (citing Fed. R. Evid. 201).  Likewise, the Court declines to take notice of Exhibits 5, 9, 11, and 16 of the Tada Declaration, which are screenshots of Defendant's website on specific dates, for the same reasons.  *See id*.  Instead, the Court will take judicial notice of the two websites that Plaintiff relies on for its cybersquatting claim, LegalForce-corp.com and LegalForce-cloud.com, because they are referenced in the second amended complaint, are central to Plaintiff's claims, and neither party disputes the authenticity of the websites.  *See Corinthian Colleges*, 655 F.3d at 999; *Loomis v. Slendertone Distribution, Inc*., 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (noting courts may *sua sponte* take judicial notice of publicly available websites).

As for Exhibit 1 of the Tada Declaration, which is a copy of a Japanese complaint, the Court will take notice of the complaint's existence, but not its underlying facts.  *See M/V Am. Queen*, 708 F.2d at 1491.  Lastly, the Court declines to take notice of Exhibits 2-4, and 6 of the Tada Declaration, which are translated versions of Japanese news articles and a press release.  The translations were done by Mr. Tada and do not appear to be certified.  *See Tada Decl.*  While Defendant did not object to these translations in its briefing, at the hearing, Defendant noted it believed some of the translations are inaccurate.  *See Fleischer Studios, Inc. v. A.V.E.L.A., Inc*., No. CV1408864, 2015 WL 12743879, at *3 (C.D. Cal. May 22, 2015) (typically courts will only take judicial notice of certified translations of material where the authenticity of the documents is not at issue).

### B.      Subject Matter Jurisdiction

#### 1.      Leave to Amend

Defendant first argues that under Ninth Circuit law, the Court was not allowed to grant Plaintiff leave to amend, because the Court had found that Plaintiff's trademark infringement claims were unripe.  Mot. at 2-3; *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir. 1988) ("[W]e must examine the [Plaintiff]'s original complaint to determine whether the claim alleged therein was one over which the district court has jurisdiction.  If jurisdiction was lacking, then the court's various orders, including that granting leave to amend the complaint, were nullities.").

Defendant appears to misunderstand the central holding of *Morongo*.  In the Ninth Circuit, leave to amend is liberally allowed in order to cure jurisdictional defects.  *See Molnar v. Nat'l Broad. Co*., 231 F.2d 684, 686 (9th Cir. 1956) (permitting plaintiff to amend complaint, in appellate court, to cure defective jurisdiction allegations); *Snell v. Cleveland, Inc*. 316 F.3d 822, 828 (9th Cir. 2002) (same).  *Morongo* itself states a similar holding.  *See* 858 F.2d at 1380-81 n.3 ("When the district court has jurisdiction over the action at the outset, but the complaint inadequately alleges jurisdiction, the court may grant leave to amend the defective allegations.")

Further, the factual allegations in *Morongo* are inapposite.  In *Morongo*, the Ninth Circuit considered whether there was a potential basis for subject matter jurisdiction over an Indian tribe's interpleader case.  *Id*. at 1379.  But after evaluating four different statutes, the Ninth Circuit found there was no basis or subject matter jurisdiction and the lower court had lacked jurisdiction from the outset, rendering subsequent motions a "nullity."  *Id*. at 1381-86.  This differs from the instant case, where the Court granted Plaintiff leave to amend, because based on jurisdictional discovery, it may have been possible for Plaintiff to plead subject matter or personal jurisdiction.  *See Nat. Res. Def. Couns. v. Winter*, No. 205CV07513, 2008 WL 11338646, at *4 (C.D. Cal. Apr. 10, 2008).

#### 2.      Ripeness

Defendant next asserts that Plaintiff's claims are unripe because Defendant has not used the marks in the U.S.  Mot. at 13.  Defendant submitted declarations and transcript excerpts to

1    support its argument, as a factual challenge to the SAC. *See* Makman Decl. Further, Defendant

2    asserts simply filing a trademark or using the mark to advertise and sell stock does not constitute

3    trademark infringement. *Id.* at 14. The Court addresses each of these arguments in turn.

4          Regarding ripeness or standing, "[t]he Constitution mandates that prior to [the court's]

5    exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented

6    are 'definite and concrete, not hypothetical or abstract.'" *Thomas v. Anchorage Equal Rts.*

7    *Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citations omitted). "A question is fit for decision

8    when it can be decided without considering contingent future events that may or may not occur as

9    anticipated, or indeed may not occur at all." *Name.Space, Inc. v. Internet Corp. for Assigned*

10   *Names & Numbers*, 795 F.3d 1124, 1132 (9th Cir. 2015) (internal citations and quotation marks

11   omitted). The threat of infringement may be "too remote and unduly speculative" if a defendant

12   did not "clearly intend[] to violate plaintiff's trademarks in the near future." *Id.* at 1133.

13         Further, in a factual attack on jurisdiction, the "court need not presume the truthfulness of

14   the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. "Once the moving party has converted the

15   motion to dismiss into a factual motion by presenting affidavits or other evidence properly before

16   the court, the party opposing the motion must furnish affidavits or other evidence necessary to

17   satisfy its burden of establishing subject matter jurisdiction." *Id.* (citing *Savage v. Glendale Union*

18   *High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

19         First, Defendant argues that Plaintiff's claims are not ripe because Defendant does not use

20   the LegalForce marks in the U.S. Mot. at 13. Defendant asserts that Plaintiff has falsely alleged

21   that Defendant advertises LegalForce products and services in the U.S. since July 2020. *Id.* at 11;

22   SAC ¶ 12. Defendant's declarations directly contradict Plaintiff's assertions and state Defendant

23   had not used the contested mark in U.S. commerce and had not taken any steps to imminently sell,

24   offer, transport, distribute, market, or advertise any products or services with the contested mark.

25   *See* ECF No. 95-1 ("Makman Decl."), ECF No. 95-4 ("Tsunoda Decl.") ¶¶ 20-21. Conversely,

26   Plaintiff argues that its claims are ripe because Defendant already has customers in the U.S., based

27   on an April 2023 press release. Opp'n at 10-11; Abhyanker Decl., Ex. 1.

28         Considering Defendant's declaration alongside Plaintiff's limited evidence, the Court does

United States District Court
Northern District of California

10

United States District Court
Northern District of California

not find Plaintiff's claim is ripe.  A review of the press release reflects two issues with Plaintiff's argument.  First, it is unclear whether the press release is describing Defendant or its U.S. subsidiary.  *See* Abhyanker Decl., Ex. 1.  Second, even if the press release reflected Defendant's activities, the product discussed in the press release is known as "AI Revise."  *See id*.  There is no mention of a LegalForce mark or product in the press release.  *See id*.  Consequently, the Court is unable to conclude that Defendant currently advertises or sells LegalForce products and services in the U.S. using the contested marks.

Defendant next argues that simply filing a trademark application does not establish a ripe trademark infringement claim.  Mot. at 14.  In contrast, Plaintiff asserts its claims are ripe because Defendant had imminent plans to launch its product in the U.S.  Opp'n at 8-10.  Plaintiff relies on two different events to support its assertion that the Defendant had an imminent plan to launch an infringing product.  First, Plaintiff notes that Defendant filed a U.S. trademark application on December 20, 2021.  *Id*. at 8.  Second, Defendant allegedly made statements in June 2022 that it was planning to expand into the U.S. by March 2023.  *Id*. at 9.  For this second event, Plaintiff relies on statements allegedly made by Defendant in (1) a complaint filed by Defendant related to Japanese litigation and (2) Japanese articles translated by Plaintiff's lawyer, Mr. Tada.  *See* Opp'n at 9.

A trademark infringement claim can be brought where "the defendant clearly intended to violate plaintiff's trademarks in the near future."  *See Name.Space, Inc.* 795 F.3d at 1133 (collecting cases); *Nova Wines, Inc. v. Adler Fels Winery LLC,* 467 F. Supp. 2d 965, 970-72 (N.D. Cal. 2006).  For example, in *Nova Wines,* the court granted a preliminary injunction based on imminent trademark infringement.  *Id*. In September 2006, the plaintiff had received an announcement from the defendant, urging consumers to place orders for its wine by September 15, 2006.  *Id*. at 972.  The defendant's wine bottle contained an image that infringed the plaintiff's trademark.  *Id*.  The plaintiff then filed its complaint for trademark infringement on September 29, 2006.  *Id*.

The Court finds Plaintiff's second argument fails due to limited factual support and timing issues.  As an initial point, some of the evidence that Plaintiff relies on (*e.g*., facts from a Japanese

11

United States District Court
Northern District of California

1   complaint and uncertified Japanese translations of press releases or articles) would not typically be

2   considered by the Court under judicial notice (*see supra* Section III(A)(2)).  But even if the Court

3   were to consider them in connection with Defendant's 12(b)(1) motion, Plaintiff's facts do not

4   support a finding that its claims are ripe.  First, Plaintiff fails to provide legal authority that filing a

5   trademark application, without something more, reflects imminent trademark infringement.  *See*

6   Opp'n at 8.  Second, the timing of the Japanese articles suggests any potential launch was not

7   imminent – the articles were published in June 2022 and stated Defendant was considering

8   expanding into the U.S. market in March 2023, about nine months later.  *See* Tada Decl., Exs. 1-4.

9   Moreover, none of the articles reflected Defendant planning to use a LegalForce mark or branding

10  in its future U.S. launch.  *See id.*  On the day that some of the articles were published, Plaintiff

11  filed the instant suit on June 24, 2022.  *See* ECF No. 1.  Defendant's behavior and the timing of

12  these articles differ drastically from cases such as *Nova Wines*, where the defendant was planning

13  to launch an infringing product within weeks of the lawsuit or *Levi Strauss & Co. v. Shilon*, 121

14  F.3d 1309, 1311-12, 1314 (9th Cir. 1997), where the defendant had admitted to already offering to

15  sell counterfeit Levi-branded jeans.  *Cf.* 467 F. Supp. 2d at 972.  Instead, Plaintiff has brought

16  claims that are premature, as the alleged events "may not occur as anticipated, or indeed may not

17  occur at all."  *See Vital Pharms. v. PhD Mktg., Inc*., No. CV 20-6745, 2021 WL 6882435, at *4

18  (C.D. Cal. Mar. 3, 2021) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

19          Lastly, Defendant argues use of an infringing mark while advertising and selling equity

20  shares does not qualify as a "use in commerce" under the Lanham Act, and thus Plaintiff's claims

21  are unripe.  Mot. at 14.  Plaintiff counters that this type of activity is a "use in commerce," and

22  thus its claims are ripe for adjudication.  Opp'n at 6-8.  Both parties fail to cite to any legal

23  authority for their assertions, and Defendant erroneously claims that the Court has already decided

24  this issue in a previous order.  *See id.*; Mot. at 14; Reply at 8.

25          While both parties characterize their arguments as a failure of ripeness or jurisdiction

26  under Federal Rules of Civil Procedure 12(b)(1), the Court finds they are using the wrong

27  standard.  *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 873 (9th Cir.

28  2014) ("Nothing suggests that Congress intended that 'use in commerce' be interpreted as a

jurisdictional requirement, and we conclude that we have subject-matter jurisdiction …"); *Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 F. App'x 677, 679 (9th Cir. 2016) (noting "use in commerce" arguments are properly considered as part of Rule 12(b)(6) challenge rather than Rule 12(b)(1)). Whether Plaintiff has failed to meet its burden to plead a trademark infringement claim based on advertising or selling of equity shares does not affect whether the Court has jurisdiction over this case. *See id.* Accordingly, the Court will construe this argument as Defendant seeking dismissal under Rule 12(b)(6) and will discuss this under Section III(D) of this order. *See Steeped, Inc. v. Nuzee, Inc.*, No. 19-CV-03763, 2019 WL 6251255, at \*2 (N.D. Cal. Nov. 22, 2019).

For the reasons stated above the Court **GRANTS** and **DENIES** in part Defendant's motion to dismiss related to subject matter jurisdiction. Specifically, the Court **GRANTS with prejudice** Defendant's motion as it relates to Plaintiff's unripe trademark claims: (1) Defendant's alleged LegalForce product sales in the U.S. which have not yet occurred and (2) Defendant's alleged plan to launch LegalForce products in the U.S., which was not imminent at the time of this suit. Plaintiff has filed three complaints in this case and the parties have undertaken jurisdictional discovery, but Plaintiff has failed to allege ripe trademark infringement claims based on these facts. *See* ECF Nos. 1, 31, 93. The Court, however, **DENIES** Defendant's motion to dismiss regarding Plaintiff's trademark claims related to use of LegalForce marks in advertising and selling of equity.

### C.    Personal Jurisdiction

Defendant also argues that Plaintiff has failed to establish personal jurisdiction. Mot. at 15-18. Based on a review of the second amended complaint, the Court finds that Plaintiff has failed to allege general jurisdiction but has alleged specific jurisdiction regarding its claims related to advertising and selling of equity.

#### 1.    General Jurisdiction

First, Defendant asserts there the Court does not have general jurisdiction over Defendant, because Defendant is a Japanese corporation, organized under the laws of Japan, with a principal place of business. *See* Mot. 16-17; Makman Decl., Tsunoda Decl. ¶ 9. Moreover, Defendant does

13

1   not have a physical presence in the U.S.  *Id*. ¶¶ 10-19.  Plaintiff claims there is general jurisdiction

2   over Defendant because Defendant is physically present in California and has customers with

3   office locations in California.  Opp'n at 21; SAC ¶¶ 48, 50.  Plaintiff also asserts that Defendant

4   has employees in California and that Defendant has "Infringing Website descriptions" which

5   establish general jurisdiction.  Opp'n at 21; SAC ¶ 52.

6        For a court to have general jurisdiction over a defendant, the defendant must engage in

7   "'continuous and systematic general business contacts,' that 'approximate physical presence' in

8   the forum state.'"  *Mavrix*, 647 F.3d at 1223-24 (internal citations omitted).  "The standard is met

9   only by continuous corporate operations within a state that are thought so substantial and of such a

10  nature as to justify suit against the defendant on causes of action arising from dealings entirely

11  distinct from those activities."  *Id*. at 1224 (internal citations and quotation marks omitted).

12       Here, Plaintiff has failed to provide adequate evidentiary support for its general jurisdiction

13  arguments.  Plaintiff first asserts that Defendant is "physically present" in California.  *See* SAC ¶

14  48.  In response, Defendant submitted a declaration, where Mr. Tsunoda, an executive of

15  Defendant, attested that Defendant does not have a physical presence in California.  *See* Makman

16  Decl., Tsunoda Decl. ¶¶ 9-19.  It is not sufficient for Plaintiff to rely solely on its allegations

17  which "are contradicted by affidavit."  *See Mavrix*, 647 F.3d at 1223.   Yet in its opposition,

18  Plaintiff cited primarily to its complaint, making it difficult to discern what if any evidence it was

19  relying on for its arguments related to physical presence.  *See e.g.,* Opp'n at 20-21.

20       A review of the exhibits attached to Mr. Abhyanker's declaration fares no better.  For

21  example, Plaintiff attached an exhibit of a press release that allegedly showed Defendant had

22  several customers in the U.S.  *See* Abhyanker Decl., Ex. 1.  But as discussed previously *(see supra*

23  Section III(B)(2)), it is unclear whether the press release is referencing Defendant or its U.S.

24  subsidiary.  *See id*.  Even assuming the press release describes Defendant's activities, at most

25  Plaintiff has identified four customers in California, and the complaint as currently pleaded falls

26  short of the showing needed for general jurisdiction.  *See Mavrix*, 647 F.3d at 1226 (noting

27  occasional sales to forum residents by a nonresident defendant "do[es] not suffice to establish

28  general jurisdiction").

Plaintiff also argues that the Court has general jurisdiction because (1) Defendant has five employees in the U.S., (2) Defendant contracted with a company to rent office space in San Francisco, California, (3) Defendant's employees traveled to California, and (4) "Infringing Website descriptions."[2]  *See* Opp'n at 12-14.  But these types of activities do not rise to the level needed to establish general jurisdiction.  *See Mavrix*, 647 F.3d at 1226-27 (rejecting general jurisdiction where the defendant had a "substantial sales force" in the forum state or where the defendant operated an interactive website accessible to residents in the forum state); *Schwarzenegger*, 374 F.3d at 801 (engaging in commerce with residents of the forum state is not sufficient basis for general jurisdiction); *Urica, Inc. v. Pharmaplast, S.A.E.*, No. CV1102476, 2013 WL 12123305, at *5 (C.D. Cal. Jan. 10, 2013) (finding occasional business trips insufficient basis for general jurisdiction).  And in some instances, Plaintiff has misstated the available evidence.  For example, Plaintiff asserted that Defendant has five U.S. employees, but Plaintiff relies on a transcript that reflects at least four of the employees actually worked for Defendant's U.S. subsidiary.  *See* Abhyanker Decl., Ex. 5 at 31:18-20, 34:3-5, 39:25-40:2, 42:2-3.

### 2. Specific Jurisdiction

Second, Defendant argues that the Court does not have specific jurisdiction over Defendant because Defendant did not "purposefully direc[t] its activities at residents of the forum," nor "purposefully avail itself" of the privilege of doing business in California.  Mot. at 17.  In response, Plaintiff raises similar arguments as it did for general jurisdiction, including Defendant's California-based customers and sales, its US-based employees, "Infringing Website Descriptions," and advertising of equity in California.  *See* Opp'n at 11-14, 21; SAC ¶¶ 48, 50, 52-53.

Courts evaluate specific jurisdiction based on a three-pronged test:

(1)  The non-resident defendant must purposefully direct his

---

[2] Plaintiff asserted that the Court has personal jurisdiction based on Defendant's "Infringing Website descriptions."  *See* Opp'n at 21.  Plaintiff failed to define this term and its only citation references paragraph 48 of its second amended complaint, which repeats the allegations. The Court assumes Plaintiff is arguing there is personal jurisdiction based on Defendant's websites, specifically those located at LegalForce-corp.com and LegalForce-Cloud.com.  *See* SAC ¶¶ 22, 85.  In its complaint and declarations attached to its opposition brief, Plaintiff also referenced several other websites, but it is unclear how these other websites directly connect to Plaintiff's claims.

United States District Court
Northern District of California

activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Mavrix*, 647 F.3d at 1227-28. The plaintiff has the burden to prove the first two prongs. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### a.      Purposeful Direction

The first prong of the specific jurisdiction test "refers to both purposeful direction and purposeful availment." *Mavrix*, 647 F.3d at 1228. Courts tend to use the purposeful direction test for tort cases, including those related to trademark infringement. *Id.*; *Yeager v. Airbus Group SE et al.*, No. 8:19-cv-01793, 202 U.S. Dist. LEXIS 124839, at *9-10 (C.D. Cal. Mar. 19, 2020) (collecting cases). The focus of the purposeful direction test is on the "effects" of the defendant's actions in the forum, "whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228 (internal citations omitted). This effects test consists of three parts: (1) the defendant committed an intentional act, (2) the act was expressly aimed at the forum state, and (3) the act caused harm that the defendant knows is likely to be suffered in the forum state. *Id.* (*citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).

Plaintiff fails to satisfy all three components of the purposeful direction test, except for its allegations related to using infringing marks to advertise or sell equity. For its other allegations, while Plaintiff has properly pleaded the first component (*i.e.*, Defendant committed intentional acts), it fails to satisfy the two other components (*i.e.*, express aiming and causing harm likely to be suffered in the forum state).

Generally, Plaintiff meets the first part of the purposeful direction test, by pleading Defendant or its employees committed intentional acts, including creating "infringing" websites,

or advertising equity in California.[3]  *See* SAC ¶¶ 48, 50, 52-53.  But Plaintiff has difficulty satisfying the second and third parts of the purposeful direction test, especially for its website allegations.  *Cf. Mavrix*, 647 F.3d at 1229-30.  For example, in *Mavrix*, the Ninth Circuit found the purposeful direction test was satisfied because the defendant had posted Mavrix's copyrighted photos on the defendant's website, "as part of its exploitation of the California market for its own commercial gain."  *Id*. at 1229.  The defendant's website had a specific focus on Californian industries, specifically celebrity and entertainment news, and many of the visitors to the defendant's website came from California.  *Id*. at 1330.

By comparison, Plaintiff's allegations regarding Defendant's websites fall short of this standard.  Plaintiff asserts that Defendant's websites establish specific jurisdiction, but to support its assertion, it cited back to paragraph 15 of its second amended complaint, which references only Defendant's trademark application.  *See* Opp'n at 21; SAC ¶ 15.   In contrast, Defendant submitted a declaration which states the websites in question are primarily in Japanese and the English version of the website is aimed at English speaking customers in Japan.  *See* Makman Decl., Tsunoda Decl., ¶¶ 26-29.   A review of both LegalForce-corp.com and LegalForce-Cloud.com comports with Defendant's declaration: these are Japanese websites that appear to be directed to individuals in Japan; the English version of the website does not reference California.  And a foreign website, which is not specifically directed to California residents and is primarily in a foreign language, does not constitute purposeful direction.  *See Love v. The Mail on Sunday*, No. CV05-7798, 2006 WL 4046170, at *7 (C.D. Cal. July 14, 2006) (holding foreign websites do not satisfy the effects test).  Likewise, as currently pleaded, it is unclear how creating a foreign website that is directed to customers outside of California would foreseeably cause harm to

---

[3] The Court notes that Plaintiff asserts several facts about Defendant that are contradicted by affidavit (*e.g.*, Defendant sold or advertised LegalForce products in the U.S.) or appear to conflate Defendant with its U.S. subsidiary (*e.g.*, Defendant has employees in the U.S).  *See supra* Sections III(B)(2), III(C)(1).  As a result, the Court will not consider these activities as part of its specific jurisdiction analysis.  *See Mavrix*, 647 F.3d at 1223 ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit"); *Ranza v. Nike, Inc*., 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.").

Plaintiff.  *See Schwarzennegger*, 374 F.3d at 805 (noting Ninth Circuit cases "require 'something more' than mere foreseeability in order to justify the assertion of personal jurisdiction").

Similarly, the Court finds it does not have specific jurisdiction over Defendant based on Plaintiff's cybersquatting allegations.  Plaintiff asserts that Defendant infringed Plaintiff's trademarks by registering a trademarked domain name but does not assert any facts that this behavior was specifically directed to California.[4]  *See Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-02525-BLF, 2014 WL 5773197, at *6 (N.D. Cal. Nov. 5, 2014) (collecting cases*); cf. Rhapsody Int'l Inc. v. Lester*, No. C13–05489 CRB, 2014 WL 709899, at *6–7 (N.D. Cal. Feb. 24, 2014) (finding specific jurisdiction in cybersquatting case where the defendant attempted to extort money from the trademark owner).

The Court finds, however, that Plaintiff has satisfied the purposeful direction test regarding advertising or selling of equity.  *See Mavrix*, 647 F.3d at 1227-28.  As pleaded in the second amended complaint, Defendant intentionally advertised its equity to investors, by using investment materials that included infringing marks.  SAC ¶ 18.  This act was specifically directed to California, because Defendant handed out materials with the infringing marks to investors in California.  *Id.* ¶ 53.  And this caused harm in the forum state, because Defendant was using the contested marks in California.  *Id.*; *Mavrix*, 647 F.3d at 1231 (concluding there was an economic loss by intentional infringement of a plaintiff's intellectual property).

           **b.**     **Claim Arises Out of or Relates to Defendant's Forum Related Activities**

For the second prong of the specific jurisdiction test, the plaintiff must demonstrate that its claims arise out of or relate to the defendant's forum-related activities.  *Schwarzenegger*, 374 F.3d

---

[4] There is case law that suggests if a plaintiff asserts that a defendant intentionally infringed a plaintiff's property rights knowing that the plaintiff was located in a forum state, there is specific jurisdiction.  *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015) (collecting cases).  Here, neither party addressed this type of argument in relation to specific jurisdiction or cited to related legal authority.  In the body of its complaint, Plaintiff asserts that Defendant knew of Plaintiff's trademark rights before registering the website domain names, and appears to rely in part on the knowledge of Daniel Lewis and Paul Drobot, an executive and employee of Defendant's U.S. subsidiary.  *See* SAC ¶¶ 44, 86; Abyanker Decl. Ex. 5 at 42:2-3; 42:17-21.  Plaintiff failed to cite to any legal authority that knowledge of a subsidiary's employees can be imputed to a parent company for purposes of personal jurisdiction, and thus the Court does not find specific jurisdiction here.

at 802. To determine if the plaintiff's claims arise out of or relate to the defendant's forum-related activities, the Ninth Circuit follows a but-for test. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Here, but-for Defendant's use of Plaintiff's mark in its advertising materials for equity, Plaintiff would not have been harmed. The Court does not evaluate Plaintiff's other forum related activities because these activities did not satisfy the first prong of the specific jurisdiction test.

### c.    Reasonableness

Once a plaintiff has met its burden on the first two prongs of the specific jurisdiction test, the burden shifts to the defendant to show why the exercise of jurisdiction would not be reasonable or fair. *See Schwarzeneggar*, 374 F.3d at 802. Here, Defendant failed to argue that the exercise of specific jurisdiction would not be unreasonable or unfair. *See* Mot. at 5; Reply at 17-18. Instead, Defendant argued that there were no facts to support a finding of specific jurisdiction. *See id*. Accordingly, the Court finds that Defendant has failed to carry its burden to show why the Court's exercise of personal jurisdiction over Defendant would not be reasonable or fair, in relation to Plaintiff's claims associated with advertising or selling of equity.

For the reasons stated above the Court **GRANTS** and **DENIES** in part Defendant's motion to dismiss related to personal jurisdiction. Specifically, the Court **GRANTS** Defendant's motion as it relates to Plaintiff's website-based trademark claims and its cybersquatting claim. As discussed above, Plaintiff has filed three complaints in this case and the parties have undertaken jurisdictional discovery, but Plaintiff has failed to allege personal jurisdiction based on these facts. *See* ECF Nos. 1, 31, 93. The Court, however, **DENIES** Defendant's motion to dismiss regarding Plaintiff's trademark claims associated with the advertising and selling of equity.

### D.    Plausibility of Claims and Infringement as a Matter of Law

As an initial point, the Court does not evaluate whether Plaintiff has pleaded plausible claims or infringement as a matter of law related to its unripe trademark claims or its website-based trademark or cybersquatting claims, because the Court finds it does not have subject matter or personal jurisdiction. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778 (2000) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (citation omitted).

But the Court will consider Defendant's arguments related to Plaintiff's remaining trademark claims.

In addition to bringing motions to dismiss based on subject matter and personal jurisdiction, Defendant also brought a motion to dismiss pursuant to Rule 12(b)(6).  Defendant asserts that advertising or selling equity of a private company does not qualify as trademark infringement.[5]  Mot. at 14.  Defendant further avers that Plaintiff generally fails to state a claim as to its first, second, and fourth causes of action because Defendant does not use the contested marks in U.S. commerce.  *Id*. at 18.  And while the Lanham Act has some extraterritorial applications, they do not apply here.  *Id*. at 19.  Conversely, Plaintiff asserts advertising or selling equity does qualify as trademark infringement.  Opp'n at 6-8.  And Plaintiff asserts that Lanham Act should apply to Defendant's international activities.  *Id*. at 7-8.

To prevail on its trademark infringement claims, Plaintiff must show that Defendant used Plaintiff's trademarks "in connection with a sale of goods or services."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005).  A mark is used in commerce "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.  In addition, to apply the Lanham Act extraterritorially, there are three requirements: "(1) the alleged violations must create some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority."  *Love v. Associated Newspapers, Ltd*., 611 F.3d 601, 613 (9th Cir. 2010).

The Court agrees with Defendant on both its equity and extraterritoriality arguments. Here, Plaintiff failed to cite to any legal authority that advertising or selling equity of a private company is connected to a sale of goods or services.  *See* Opp'n at 6-8.  And at the hearing, Plaintiff conceded that it could not find case law in its favor.  By contrast, courts faced with

---

[5] As discussed under Section III(B)(2), Defendant brought this argument under 12(b)(1) but the Court will construe this argument as Defendant seeking dismissal under Rule 12(b)(6), because "use in commerce" is not a jurisdictional requirement.  *See Steeped*, 2019 WL 6251255, at *2.

similar issues have held these types of activities do not qualify as trademark infringement.  *See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 738 (N.D. Tex. 2011) ("Accordingly, to the extent Cottonwood claims that CSFS's investment solicitation activities are advertising for or in connection with the sale of stocks as goods, those claims must fail."); *Int'l Olympic Comm. v. Frayne*, No. 4:15-CV-3277, 2016 WL 3569947, at *3 (S.D. Tex. July 1, 2016) (same).  Likewise, Plaintiff has failed to plead that Defendant is using the LegalOn mark in commerce, related to a sale of goods or services.  *See* SAC ¶¶ 19-21; *Bosley*, 403 F.3d at 677. Further, while Plaintiff asserts extraterritoriality applies, it fails to plead all three necessary elements, including a monetary injury in the U.S.  *See Love*, 611 F.3d at 613.

Accordingly, the Court **GRANTS with prejudice** Defendant's motion to dismiss related to its trademark claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS with prejudice** Defendant's motion to dismiss Plaintiff's second amended complaint without leave to amend, regarding its trademark claims (claims 1, 2, and 4) and cybersquatting claim (claim 3).

**IT IS SO ORDERED.**

Dated: October 18, 2023

_____
TRINA L. THOMPSON
United States District Judge